GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
ERIN M. ADRIAN, ESQ. (SBN: 228718)
(ema@grellas.com)
CHRISTOPHER CIVIL, ESQ. (SBN: 294477)
(cc@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Claimant
YOULIN WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YOULIN WANG, an individual<br><br>Claimant,<br><br>v.<br><br>RICHARD KAHN, an individual; and FORENSIC PROFESSIONALS GROUP USA, INC., a Florida corporation; and DEREK LONGSTAFF, an individual,<br><br>Respondents. | Case No.: 5:20-cv-08033<br><br>PETITION TO ENJOIN ARBITRATION |

Petitioner Youlin Wang ("Wang" or "Petitioner") alleges as follows in support of his Petition under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 206, for an order enjoining as against Petitioner the arbitration brought by Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the "AAA"), Case No. 01-19-0004-1076 (the "Arbitration") and enjoining Derek Longstaff ("Longstaff," and together with the Kahn Respondents, the "Respondents") from purporting to represent or otherwise on behalf of Wang as part of the Arbitration.

## PRELIMINARY STATEMENT

1. Wang is the victim of a multi-faceted scheme concocted and carried out by Kahn, FPG, Wang's former counsel, Longstaff, and other co-conspirators, to defraud him in connection with the over $3 million in proceeds from the sale of residential real estate in California, as well as portions of tax refunds Wang was to receive from the State of California and the U.S. Treasury.

2. After Wang already lost millions of dollars in this scheme, the Kahn Respondents quietly filed the Arbitration against Wang, Longstaff, and Longstaff's former law firm, Guidance Law, A.P.C. ("Guidance Law), in November 2019, alleging claims for breach of a document entitled a Partially Deferred Retainer and Fee Agreement (the "PDRFA"). The PDRFA is an unformed contract that Longstaff fraudulently entered into with the Kahn Respondents, purportedly on Wang's behalf, without Wang's knowledge or authority. On March 25, 2020, the Kahn Respondents amended their demand in the Arbitration to add claims for libel and tortious interference.

3. The Kahn Respondents did not serve Wang with their original pleadings initiating the Arbitration. Longstaff did not provide Wang notice of the Arbitration either. Rather, Longstaff masqueraded as Wang's attorney-in-fact and attorney-at-law in the Arbitration *for over nine months*, even though Wang had not authorized him to do so, did not even know about the Arbitration, and had previously terminated Longstaff as his legal counsel.

Longstaff has even gone so far as to make arbitral admissions on Wang's behalf that are directly contrary to Wang's interests and to file counterclaims on Wang's behalf.

4.      Wang never agreed to arbitrate any dispute with Kahn. The purported contract containing the relevant arbitral clause was never formed. Wang did not sign it or even know about it.

5.      Petitioner seeks an order from this Court enjoining the Kahn Respondents from seeking to arbitrate a dispute between the parties and enjoining Longstaff from purporting to represent or act on behalf of Wang in the pending Arbitration.

## PARTIES

6.      Wang is an individual who resides in and is a citizen of China. At all relevant times, Wang was the sole member of Magnoliadrhomes LLC ("Magnolia"), a California limited liability company, which held title to two residential real estate properties at issue.

7.      Upon information and belief, Longstaff is an individual residing in Santa Clara County, California.

8.      Upon information and belief, Kahn is an individual residing in Homestead, Florida. Upon information and belief, Kahn is the principal of FPG, a Florida corporation, with its principal place of business in Homestead, Florida.

## JURISDICTION

9.      This Court has original jurisdiction over this action under 9 U.S.C. § 203, because this is a civil action concerning an arbitration falling under the Convention on the Enforcement and Recognition of Foreign Arbitral Awards ("NY Convention").

10.     Respondent Longstaff is subject to personal jurisdiction in the State of California because he is a resident of this state.

11.     The Kahn Respondents are subject to personal jurisdiction in the State of California because they have established minimum contacts with the State. The Kahn Respondents directed communications to Longstaff, a California resident, in furtherance of the scheme to defraud Wang of millions of dollars associated with the sale of real property located in California, as well as to defraud Wang of portions of tax refunds from tax returns Wang

filed with both the Internal Revenue Service and the California Franchise Tax Board. Longstaff and Kahn also made false and misleading statements to Guohua "Greg" Xiong ("Xiong"), Wang's brother-in-law and authorized agent. Xiong is also a California resident and received these communications in California. One of the properties at issue was held by Magnolia, a California limited liability company. The PDRFA and the Refund Disbursement Service Agreement ("RDS"), the companion agreement to the PDRFA which contains the arbitration clause, both pertain exclusively to tax filings related to the sale of properties in the State of California. Kahn solicited from Longstaff power of attorney documents purporting to authorize Longstaff to sign the RDS on Wang's behalf. Longstaff fraudulently created these documents in California and appended to them acknowledgements from California notaries. As part of the scheme, the Kahn Respondents also filed fraudulent tax returns for Wang with the California Franchise Tax Board, and directed that the California Franchise Tax Board wire an over $136,000 tax refund for Wang to them directly, which they then misappropriated. Further, in the Arbitration, Kahn alleges that he made several trips to California as part of his purported efforts to carry out the terms of the RDS and PDRFA, Kahn made trips to California.

## **VENUE**

12.     Venue is proper in this district pursuant to 9 U.S.C. § 204, which provides that a party may bring a petition to enjoin arbitration in any district that has jurisdiction over the matter. Here, Longstaff works and resides in this district, the properties that were the subject of the Agreements are located in this district, and a substantial part of the events and omissions giving rise to the relief requested in this Petition occurred in this district.

## **INTRADISTRICT ASSIGNMENT**

13.     Assignment to this division is proper because Longstaff resides in Santa Clara County, the properties that were the subject of the Agreements are located in Santa Clara County, and a substantial part of the events and omissions giving rise to the relief requested in this Petition occurred in Santa Clara County.

///

# BACKGROUND

**A. Background**

1.      Wang developed two new single-family residences in Palo Alto, California, at 3878 Magnolia Drive and at 3880 Magnolia Drive. Wang subsequently transferred 3880 Magnolia Drive to Magnolia.

2.      In October 2017, Wang sold 3880 Magnolia Drive for $4.1M. In May 2018, Magnolia sold 3878 Magnolia Drive for $4.1M.

3.      Because Wang is a foreign national, there was significant tax withholding, over $1 million, from the proceeds of these sales by both the federal government and the State of California pending filing of Wang's tax returns for the calendar year of each sale.

4.      Acting on behalf of Magnolia and Wang, Xiong, as Wang's authorized agent, retained Longstaff to provide legal services to Wang in connection with Wang's tax refunds for the 2017 and 2018 calendar year and to provide legal services to Magnolia in connection with Magnolia's use of proceeds from 3880 Magnolia Drive and 3878 Magnolia Drive.

5.       As part of these legal services, Longstaff introduced Xiong to Joseph Libkey ("Libkey"). Libkey did business through Peak Financial Company ("Peak"), an entity that, upon information and belief, Libkey wholly owned.

6.      Longstaff and Libkey induced Xiong to enter into Deferred Asset Trust and Management Agreement ("DAT") purportedly to obtain certain tax deferral benefits.

7.      But the DAT was instead the beginning of a fraud perpetrated on Xiong and Wang.

8.      The DAT is against public policy and is not a tax deferral vehicle. Neither Libkey nor Longstaff even attempted to obtain any tax benefit for Wang under the DAT.

9.      Instead, the DAT became a vehicle for stealing from Wang. At Libkey's direction, the $3,130,953.66 in proceeds from the sale of 3880 Magnolia Drive were wired into an account established by Peak and Libkey at US Bank in Colorado.

10.     Those funds have never been returned to Wang.

11.     But this was just step one in the fraud perpetrated on Wang.

**B. Longstaff And The Kahn Respondents Enter Into The Forged Agreements**

12. Libkey also introduced Longstaff to Kahn and his associate Luis Bulas-Felix ("Bulas-Felix") as individuals that provided tax services that would help maximize Wang's tax refunds from the withholdings of proceeds from the Magnolia Drive sales held by the U.S. Government and the State of California.

13. Without Wang's or Xiong's knowledge, Longstaff entered into the PDRFA and RDS (collectively, the "Agreements") with the Kahn Respondents, on or about August 16, 2018, and did so under the guise of pretending to be Wang's attorney-in-fact. A true and correct copy of the PDRFA and RDS are attached hereto as Exhibit **A** and Exhibit **B**, respectively.

14. Upon information and belief, prior to executing the PDRFA and RDS, rather than make any attempt to execute the Agreements with Wang or Xiong, Kahn insisted that Longstaff produce a power of attorney authorizing Longstaff to act on Wang's behalf. That would allow Kahn to have the Agreements executed with Longstaff's signature only, while avoiding having Wang or Xiong know about the agreements.

15. Longstaff created a fraudulent power of attorney ("POA") dated November 13, 2017, purportedly from Wang and conferring on Longstaff and Guidance Law broad authority to act on Wang's behalf. Wang did not sign this POA and did not give Longstaff the authority to act on his behalf as stated in the fraudulent POA.

16. Neither Xiong nor Wang authorized Longstaff to sign these agreements and were unaware at the time that these agreements existed.

17. It is not a surprise why the Kahn Respondents would want to work through Longstaff. By working through Longstaff, the Kahn Respondents could secretly enter into a fraudulent and illegal contract without Wang's knowledge.

18. Under the Agreements, Kahn and his associate, Bulas-Felix, were tasked with preparing Wang's 2017 and 2018 tax returns. Wang needed to file returns in the U.S. because of the sale of the Magnolia properties in California. As a foreign national, he was subject to over $1 million in state and federal tax withholding from the proceeds of these sales under the

federal FIRPTA requirements and their state law analogs. Absent other taxable events or complexities, none of which are reflected in the returns that Kahn and Bulas-Felix prepared, the calculation of a FIRPTA refund or state law equivalent is a simple deduction of the mandatory withholding minus any capital gains from the sale.

19. But for this routine tax filing exercise, the Agreements required Wang to pay a *50% contingency fee* on any FIRPTA on the tax refunds that Wang obtained on the returns that Kahn and Bulas-Felix executed.

20. Such a contingency fee is not only unconscionable but also illegal. Under IRS Circular 230, the IRS prohibits practitioners from collecting contingency fees for filing tax returns.

21. Moreover, Kahn and Bulas-Felix deliberately falsified the information in the tax returns to grossly inflate the refund received. They did so by grossly understating the capital gains on the sales of the Magnolia properties by inflating Wang's basis in them. As a result, Wang was overpaid over $200,000 in refunds for 2017 and another over $200,000 in refunds in 2018. The Agreements were structured such that the Kahn Respondents would receive 100% of Wang's refund above a certain dollar threshold. As a result, the Kahn Respondents are claiming 100% of these amounts as well as a portion of the refunds to which Wang was legitimately entitled. The Kahn Respondents have already unlawfully pocketed over $200,000 of Wang's money, including refund amounts that they directed that the California Franchise Tax Board wire directly to them.

22. Once Wang discovered that the Kahn Respondents filed deliberately false tax returns on his behalf, he has moved with alacrity and in good faith to correct these returns. He will be filing amended returns that will subject him to over $400,000 in additional tax liability, as well as interest and possible penalties.

**C. Respondents Continue To Defraud Wang Through The Arbitration**

23. On November 6, 2019, Xiong terminated Longstaff as attorney for Wang and Magnolia.

24. On or around November 20, 2019, the Kahn Respondents initiated the Arbitration. A true and correct copy of the Demand for Arbitration (the "Demand") and the initially filed Claim by the Kahn Respondents (the "Claim") are attached hereto as Exhibits **C** and **D**, respectively.

25. The Claim is asserted against Longstaff, individually and as purported power of attorney for Wang. It alleges a breach of the Agreements for unpaid fees.

26. The Demand itself was calculated to avoid providing proper notice to Wang. Instead of identifying Wang as the arbitration respondent, it lists FPG as the respondent, with FPG's contact information as the notice address for the respondent.

27. The Demand also fabricates the existence of a Florida venue provision in the Agreements as the basis for having the arbitration heard in Miami. The Agreements contain no venue provision.

28. None of the Respondents notified Wang or Xiong that the Arbitration had been filed.

29. Longstaff appeared in the Arbitration on December 10, 2019.

30. Shockingly, and despite obvious conflicts of interest, Longstaff represented himself as appearing on behalf of himself *and* Wang. Longstaff purported to file an answer and counterclaims on behalf of Wang. A true and correct copy of the Answering Statement/Counterclaim filed by Longstaff is attached hereto as Exhibit **E**. He purported to participate in arbitrator selection on behalf of Wang. And he purported to make appearances in the Arbitration on behalf of Wang.

31. On March 25, 2020, the Kahn Respondents filed an Amended Claim in the Arbitration (the "Amended Claim"). A true and correct copy of the Amended Claim is attached hereto as Exhibit **F**. The Amended Claim adds tortious interference and libel claims against Wang, for which the Kahn Respondents seek $10,000,000 in damages.

32. Upon information and belief, Kahn made no attempt to serve the Amended Claim on Wang.

33. In the meantime, over the next several months, Respondents chose an arbitrator, agreed to a scope of discovery and discovery schedule, and set a date for the arbitral hearing, all to the detriment of Wang.

34. In mid-September 2020, Longstaff sent a copy of the Amended Claim to Morgan, Lewis & Bockius LLP ("Morgan Lewis"), former counsel to Magnolia. Upon information and belief, this is the first attempt made by any party to the Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated with Wang. Morgan Lewis explained to AAA that it did not represent Wang with respect to the Arbitration.

35. On October 31, 2020, Wang's counsel, Grellas Shah LLP, provided AAA and the parties to the Arbitration notice that Wang objected to arbitral jurisdiction and that Wang intended to file a petition to enjoin the Arbitration. A true and correct copy of this notice is attached hereto as Exhibit **G**.

36. On November 6, 2020, Bernard D. Beitch, Esq. (the "Arbitrator"), the arbitrator conducting the Arbitration, held a telephonic status conference at which Wang's counsel was requested to be present. Grellas Shah made a limited appearance for the purpose of answering any questions regarding its objections and its intent to seek judicial relief. Wang's counsel made clear that no general appearance was being made and that Wang objected to any purported jurisdiction there. The Arbitrator acknowledged that Wang would be seeking to enjoin the Arbitration but demanded that Wang nevertheless make a general appearance through counsel immediately, and without waiting for any judicial ruling on his petition, so as to avoid any delay to the Arbitration. The Arbitrator further stated that if Wang waited for a judicial ruling before making a general appearance, he would consider imposing sanctions on Wang.

## FIRST COUNT

### (Against The Kahn Respondents)

### (Permanent Injunction Under 9 U.S.C. § 206)

37. Wang repeats and re-alleges paragraphs 1 through 48 hereof, as if fully set forth herein.

38. Wang seeks an order enjoining the Arbitration as to him.

39. Wang is not party to the Agreements, has not consented to Arbitration, and has not consented to the authority of the AAA over him.

40. Wang is a citizen of China. Therefore, under 9 U.S.C. § 206, this Court has the authority to enjoin the Arbitration.

41. Unless the Kahn Respondents are enjoined from pursuing their claims in arbitration, Wang will suffer irreparable harm because he will be forced to arbitrate a dispute he has not agreed to arbitrate. If the arbitration were to proceed, Wang will incur the substantial time and expense in defending itself in the Arbitration, or risk an adverse outcome in those proceedings. Being compelled to arbitrate a dispute where the parties have not agreed to arbitrate constitutes irreparable harm.

42. The balance of equities here tips decidedly in Wang's favor.

43. By reason of the foregoing, the Court should issue an order enjoining arbitration of the dispute between the parties as to Wang.

44. No previous application has been made to this or to any other Court for the relief sought herein and no other provisional remedy has been sought in this or any other Court.

## SECOND COUNT

### (Against The Kahn Respondents)

### (Permanent Injunction Pursuant to 9 U.S.C. § 206)

45. Wang repeats and re-alleges paragraphs 1 through 56 hereof, as if fully set forth herein.

46. In the alternative, Wang seeks an order enjoining the Arbitration as to him only and requiring the Kahn Respondents to initiate a new arbitration of any claims they seek to pursue against Wang.

47. The Kahn Respondents did not provide proper notice to Wang of the Arbitration. In addition, Wang has been fraudulently "represented" in the Arbitration by Longstaff, who lacked authority to represent Wang at any time in these proceedings.

Moreover, Longstaff has at all times had insurmountable conflicts of interest in purporting to represent Wang in the Arbitration.

48. The Arbitration, therefore, has been conducted in violation of AAA rules applicable to the Arbitration, as to Wang. Wang was deprived of the opportunity to challenge venue – which Kahn fraudulently misrepresented as being selected in the Agreements. Wang also was deprived of the opportunity to participate in the selection of an arbitrator, as required under AAA rules.

49. In fact, while the AAA was required to conduct the Arbitration under its International Dispute Resolution Procedures ("IDRP"), the Arbitration has been unlawfully conducted under AAA's Commercial Arbitration Rules. This has a material adverse impact on Wang. For example, under Rule 12.4 of the IDRP, Wang had the right to request that the arbitrator have a different nationality as that of the parties. That is a right that has been taken away from Wang, while facing millions of dollars in potential exposure under the Amended Claim.

50. Wang is a citizen of China. Therefore, pursuant to 9 U.S.C. § 206, this Court has the authority to enjoin the Arbitration if it is not being conducted in accordance with the agreement of the parties.

51. To the extent the Court determines that Wang was a party to the Agreements, for the reasons stated previously, the Arbitration has not been conducted in accordance with the Agreements.

52. Moreover, Wang has been deprived of even the most rudimentary due process protections as part of the Arbitration proceedings.

53. Unless the Kahn Respondents are enjoined from pursuing their claims as against Wang in the pending Arbitration, Wang will suffer irreparable harm because he will have been deprived of basic rights provided under the rules applicable to arbitration under the Agreements. If the Arbitration were to proceed against Wang, Wang will incur the substantial time and expense in defending itself in the Arbitration, or risk an adverse outcome in those

proceedings. Being compelled to arbitrate a dispute as part of proceedings which have violated the underlying rules governing the alleged agreement to arbitrate constitutes irreparable harm.

54. The balance of equities here tips decidedly in Wang's favor.

55. By reason of the foregoing, if the Court finds that the Agreements are binding on Wang, the Court should issue an order enjoining the Arbitration as to Wang and ordering the Kahn Respondents to initiate a new arbitration of any disputes then intend to pursue against Wang.

56. No previous application has been made to this or to any other Court for the relief sought herein and no other provisional remedy has been sought in this or any other Court.

### THIRD COUNT

**(Against Longstaff)**

**(Permanent Injunction Pursuant to 9 U.S.C. § 206)**

57. Wang repeats and re-alleges paragraphs 1 through 68 hereof, as if fully set forth herein.

58. Wang seeks an order enjoining Longstaff from purporting to represent or act on behalf of Wang in the Arbitration or pursue any claims on Wang's behalf in the Arbitration.

59. Longstaff did not have authority to enter into the Agreements on Wang's behalf. He purported to execute the Agreements on Wang's behalf under the auspices of a power of attorney he forged.

60. At the time the Arbitration was initiated, Longstaff had been terminated from any legal representation of Wang.

61. Despite the above facts, Longstaff purported to act as Wang's attorney-in-fact and attorney-at-law in the Arbitration. This unlawful representation has included pursuing claims in Wang's name and making admissions to Wang's detriment.

62. Longstaff, through his fraudulent conduct, has deprived Wang of the right to pursue his interests in the Arbitration, choose what (if any) counterclaims to assert, choose what if any admissions to make or theories to pursue or assert. Longstaff has also deprived

Wang of the opportunity to challenge venue or to participate in the selection of an arbitrator, as required under AAA rules.

63. Wang is a citizen of China. Therefore, pursuant to 9 U.S.C. § 206, this Court has the authority to enjoin the Arbitration if it is not being conducted in accordance with the agreement of the parties or applicable law.

64. To the extent the Court determines that Wang was a party to the Agreements, for the reasons stated previously, the Arbitration has not been conducted in accordance with the Agreements.

65. Moreover, Longstaff's actions have deprived Wang of even the most rudimentary due process protections as part of the Arbitration proceedings.

66. Unless Longstaff is enjoined from purporting to act on Wang's behalf in the pending Arbitration, Wang will suffer irreparable harm because he will have been deprived of basic rights provided under the rules applicable to arbitration under the Agreements and applicable law.

67. The balance of equities here tips decidedly in Wang's favor.

68. By reason of the foregoing, if the Court finds that the Agreements are binding on Wang, the Court should issue an order enjoining Longstaff from purporting to represent or act on Wang's behalf in the Arbitration.

69. No previous application has been made to this or to any other Court for the relief sought herein and no other provisional remedy has been sought in this or any other Court.

///
///
///
///
///
///
///

**PRAYER FOR RELIEF**

Petitioner respectfully requests that this Court:

A. Issue an order enjoining Respondents from prosecuting arbitral proceedings against Wang.

B. In the alternative, issue an order vacating the Arbitration as to Wang and ordering the Kahn Respondents to commence a new arbitration of any claims they intend to pursue against Wang.

C. Issue an order enjoining Longstaff from purporting to represent or act on behalf of Wang in the Arbitration.

D. Granting such other and further relief as permitted by law and as this Court deems just and proper.

Respectfully submitted,

Dated: November 13, 2020

GRELLAS SHAH LLP

By: _____/s/_____
Dhaivat H. Shah, Esq.
Attorneys for Claimant
YOULIN WANG