GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
ERIN M. ADRIAN, ESQ. (SBN: 228718)
(ema@grellas.com)
CHRISTOPHER CIVIL, ESQ. (SBN: 294477)
(cc@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Petitioner
YOULIN WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YOULIN WANG, an individual<br><br>Petitioner,<br><br>v.<br><br>RICHARD KAHN, an individual; and FORENSIC PROFESSIONALS GROUP USA, INC., a Florida corporation; and DEREK LONGSTAFF, an individual,<br><br>Respondents. | Case No.: 5:20-cv-08033<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO ENJOIN ARBITRATION |

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND .......................................................4

    A.    Longstaff Initiates A Conspiracy To Defraud Wang ...................................4

    B.    Wang Is Defrauded Of Over $3 Million ...................................5

    C.    Longstaff And The Kahn Respondents Enter Into
          The Forged Agreement ...................................6

    D.    Respondents Continue To Defraud Want Through
          The Arbitration...................................7

III.  LEGAL ARGUMENT ...................................................... 10

    A.    The Court Should Permanently Enjoin The Arbitration ........................... 10

          1.    This Court Has Authority To Enjoin An
                Arbitration Under The New York Convention
                And The FAA.................................... 10

          2.    The New York Convention's Requirements
                For Arbitral Jurisdiction Cannot Be Met
                Because Wang Was Not Party To An Arbitration
                Agreement ....................................... 11

                a.    An Agreement To Arbitrate Is The
                      Central Requirement Of The New York
                      Convention ...................................... 11

                b.    The Court, Not An Arbitrator,
                      Determines Whether Wang Is Subject
                      to Arbitral Jurisdiction ....................................... 11

                c.    The Kahn Respondents Bear The Burden Of
                      Proving the Existence Of An Agreement
                      To Arbitrate....................................... 12

                d.    The Kahn Respondents Cannot Satisfy Their Burden
                      Of Showing There Was An Agreement
                      To Arbitrate....................................... 13

///

///

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

        3.      Wang Did Not Consent To Arbitral
Jurisdiction Through Longstaff's Conduct
During The Arbitration ................................................................. 14

   B.    If The Court Concludes That Wang Is Subject
To Arbitral Jurisdiction, In The Alternative, The
Arbitration Should Be Permanently Enjoined As
To Wang And The Kahn Respondents Should Be Compelled
To Reinitiate Arbitration In A Manner That Complies
With The New York Convention And Basic Due Process ...................... 15

        1.      The Court Has The Authority To Intervene
When The Conduct Of A Pending Arbitration
Fundamentally Violates Applicable Law ........................................ 15

        2.      The Arbitration Should Be Vacated As
To Wang Because It Has Been Conducted
Without Providing Proper Notice To Wang ................................. 16

        3.      The Arbitration Has Been Conducted in
Violation Of AAA Rules ................................................................. 19

   C.    Longstaff Should Be Enjoined From Purporting
To Represent Wang In the Arbitration ...................................................... 20

IV.    CONCLUSION ..................................................................................................... 21

MPA ISO PETITION TO ENJOIN ARBITRATION
Case No.: 5:20-cv-08033

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*,
   478 F.2d 248 (9th Cir. 1973) ........................................................................ 16, 20

*Allstate Ins. Co. v. Elzanaty*,
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ................................................................ 14

*Allstate Ins. Co. v. OneBeacon Am. Ins. Co.*,
   989 F. Supp. 2d 143 (D. Mass. 2013) ................................................................ 19

*AT & T Tech., Inc. v. Commc'n Workers of Am.*,
   475 U.S. 643 (1986) ........................................................................................... 11

*Balen v. Holland America Line Inc.*,
   583 F.3d 647 (9th Cir. 2009) ............................................................................. 11

*Carpenters 46 Northern California Counties Conference Bd. v. Zcon Builders*,
   96 F.3d 410 (9th Cir. 1996) ............................................................................16-17

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,
   816 F.3d 1208 (9th Cir. 2016)............................................................................ 11

*Chavez v. Bank of America*,
   No. C 10–653 JCS, 2011 WL 4712204 (N.D. Cal. Oct. 7, 2011)........................ 13

*CRT Capital Grp. v. SLS Capital, S.A.*,
   63 F. Supp. 3d 367 (S.D.N.Y. 2014) ................................................................. 11

*DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc.*,
   No. 14-CV-01527-MSK-KMT, 2015 WL 5693560 (D. Colo. Sept. 29, 2015) ...... 10

*Farrell v. Subway Int'l, B.V.*,
   No. 11 Civ. 08 (JFK), 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011) .................. 19

*Ficek v. Southern Pacific Co.*,
   338 F.2d 655 (9th Cir.1964) .............................................................................. 17

*Gelow v. Central Pacific Mortg. Corp.*,
   560 F. Supp. 2d 972 (E.D. Cal. 2008) ............................................................... 12

*Generica Ltd. v. Pharm. Basics, Inc.*,
   125 F.3d 1123 (7th Cir. 1997) ........................................................................... 17

///

MPA ISO PETITION TO ENJOIN ARBITRATION
Case No.: 5:20-cv-08033

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

*Granite Rock Co. v. International Broth. of Teamsters,*
  561 U.S. 287 (2010) ..................................................................................................... 12

*Ingram Micro Inc. v. Signeo Int'l, Ltd.,*
  No. SACV 13-1934-DOC ANX, 2014 WL 3721197 (C.D. Cal. July 22, 2014)... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  No. C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ........................ 11

*Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.,*
  No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000) .............................. 19

*Jiangsu Changlong Chemicals, Co. v. Burlington Bio–Med. & Scientific Corp.,*
  399 F. Supp. 2d 165 (E.D.N.Y. 2005) .................................................................. 17

*Jones v. Flowers,*
  547 U.S. 220 (2006) ............................................................................................... 17

*Millmen Local 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v.*
  *Wells Exterior Trim,* 828 F.2d 1373 (9th Cir. 1987) ............................................ 16

*Mullane v. Central Hanover Bank & Trust Co.,*
  339 U.S. 306 (1950).................................................................................................. 17

*Norcia v. Samsung Telecommunications America, LLC,*
  845 F. 3d 1279 (9th Cir. 2017) .............................................................................. 12

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier,*
  508 F.2d 969 (2d Cir. 1974) ................................................................................... 17

*Republic of Ecuador v. Chevron Corp.,*
  638 F.3d 384 (2d Cir. 2011) ...................................................................................10

*Sanford v. MemberWorks, Inc.,*
  483 F.3d 956 (9th Cir. 2007)................................................................................... 13

*Sesostris SAE v. Transportes Navales SA and M/V Unamuno,*
  727 F. Supp. 737 (D. Mass. 1989) ........................................................................ 17

*Societe Generale de Surveillance, S.A. v. Raytheon European Management and Sys. Co.,*
  643 F.2d 863 (1st Cir. 1981) ..........................................................................14, 17

*Sunshine Min. Co. v. United Steelworkers of Am.,*
  *AFL-CIO, CLC,* 823 F.2d 1289 (9th Cir. 1987) .............................................. 16, 17

//

iv

*Textile Unlimited, Inc. v. ABMHCO. Inc.*,
     240 F.3d 781 (9th Cir. 2001)...................................................................................10

*Three Valleys Mun. Water Dist. v. E. F. Hutton & Co.*,
     925 F.2d 1136 (9th Cir. 1990) ........................................................................11, 12

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
     489 U.S. 468 (1989) ..............................................................................................19

## **Statutes and Regulations**

9 U.S.C. § 206 ................................................................................................... 1, 10

31 C.F.R. § 10.27 .................................................................................................... 6

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Petitioner Youlin Wang ("Wang"), a resident and citizen of China, respectfully submits this memorandum of points and authorities in support of his Petition under Section 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 206, for an order enjoining as against Petitioner the arbitration brought by Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the "AAA"), Case No. 01-19-0004-1076 (the "Arbitration") and enjoining Derek Longstaff ("Longstaff," and together with the Kahn Respondents, the "Respondents") from purporting to represent or otherwise act on behalf of Wang as part of the Arbitration.

## I.    INTRODUCTION

The questions raised by the Petition are as simple as the facts are shocking.  Longstaff forged Wang's signature to purportedly bind Wang to illegal and unconscionable agreements with the Kahn Respondents – which agreements contain an arbitration provision.  Do the forged signatures bind Wang to arbitrate disputes with the Kahn Respondents or must the arbitration be enjoined as to Wang?

And if the answer to that question is that the forged signatures bind Wang, is it permissible for the Kahn Respondents to arbitrate millions of dollars in claims against Wang for nearly a year without ever attempting to notify Wang of the proceeding and then, once Wang finds out about the arbitration, to force Wang to mount a defense in the late-stages of that arbitration proceeding – despite having intentionally deprived Wang of the right to challenge the inappropriate venue, the right to challenge the inappropriate arbitration rules invoked, the right to participate in arbitrator selection, and the right to advocate as to the scope of the arbitration and the scope  and timing of discovery?

As described below, Longstaff and the Kahn Respondents, were part of a lengthy scheme to defraud Wang in connection with the sale of residential properties in Palo Alto, California.

Longstaff, the Kahn Respondents and other co-conspirators persuaded Wang of the validity of a purported tax deferral vehicle for capital gains on the sale of real estate called the

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Deferred Asset Trust and Management Agreement ("DAT"), and induced him to transfer over $3 million in proceeds from the sale of one of Wang's residential properties to an account under one of the co-conspirator's control, from which the money was never seen again. The DAT itself was a sham. It was not a legitimate tax deferral vehicle and the Kahn Respondents, who later filed Wang's 2017 and 2018 tax returns, did not use it in the preparation of Wang's tax returns.

Longstaff and the Kahn Respondents also conspired to defraud Wang, the U.S. government and the State of California regarding the refunds on Wang's 2017 and 2018 tax returns. Because Wang was a foreign national, over a million dollars of proceeds from Wang's sales of these Palo Alto residential properties had been subject to tax withholding pending the filing of his returns. The Kahn Respondents ostensibly undertook to prepare these returns in compliance with the law.

Instead, Longstaff and the Kahn Respondents entered into a secret fee agreement, to which Longstaff signed Wang's name, that gave the Kahn Respondents a contingent fee based on the amount of refunds Wang received. Longstaff purported to derive his authority to enter into this agreement based on a fraudulent power of attorney to which he forged Wang's signature. Then the Kahn Respondents filed deliberately false tax returns that artificially inflated Wang's tax refunds by over $400,000 so as to maximize their contingency fee. The Kahn Respondents have already received several hundred thousand dollars through this scheme. Wang is now in the process of filing amended returns and will need to repay the tax liability, interest and possibly penalties.

In November 2019, the Kahn Respondents initiated the Arbitration against Wang and Longstaff initially to recover hundreds of thousands of additional dollars for what the Kahn Respondents claimed were unpaid contingent fees for the filing of Wang's tax returns. Kahn did not give notice of the Arbitration to Wang. Declaration of Youlin Wang ("Wang Decl.") ¶¶ 9-10.[1] He apparently gave notice to Longstaff – who had already been terminated as

[1] Exhibit A to the Declaration of David I. Siegel is the English language version of the Declaration of Youlin Wang.

Wang's counsel.  Wang Decl. ¶ 7; Declaration of Greg Xiong ("Xiong Decl.") ¶ 6.  Longstaff concealed the existence of the Arbitration from Wang.  Wang Decl. ¶ 9 – 10.

Nonetheless, Longstaff purported to represent Wang in the Arbitration under the guise of being Wang's attorney-in-fact and attorney-at-law. *See* Declaration of David I. Siegel ("Siegel Decl.") ¶ 5, Exhibit C.  He was neither of these things.

Kahn filed the Arbitration in Florida based on misrepresentations to the American Arbitration Association ("AAA") that the underlying agreement had a Florida venue clause. Wang was not given the opportunity to challenge this.  Kahn and Longstaff proceeded in the Arbitration under the AAA Commercial Arbitration Rules, despite that Wang would be entitled to insist upon proceeding under the International Dispute Resolution Procedures ("IDRP").  Wang was not given the opportunity to challenge this either.  Kahn and Longstaff agreed on an arbitrator – with no input from Wang, even though the IDRP rules would have allowed Wang to request an arbitrator from outside the United States or China.  The scope of discovery was set without Wang's input, as was the entire case schedule.

It was only in September 2020 that Longstaff finally sent Wang's then-counsel (with respect to other matters), Morgan, Lewis & Bockius LLP, a copy of the Kahn Respondents' operative claim in the Arbitration.  After obtaining counsel to represent him in these matters, Wang sent notice to the arbitrator of his objection to arbitral jurisdiction.  But at a recent hearing, the arbitrator made clear that unless ordered otherwise, the Arbitration would press forward against Wang – and if Wang did not make a general appearance, he would be subject to sanctions.

The intervention of this Court is an unfortunate necessity.  Under the Federal Arbitration Act – including its provisions relating to the New York Convention – it is the Kahn Respondents' burden to demonstrate that Wang entered into an agreement to arbitrate disputes between the parties.  They cannot meet that burden.  Wang did not sign the agreement from which arbitral jurisdiction purportedly derives.  Longstaff's purported authority to sign Wang's name to that agreement comes from a fraudulent power of attorney with a forged signature.  A forged signature cannot create arbitral jurisdiction.

But, in the alternative, to the extent this Court determines Wang must arbitrate disputes with the Kahn Respondents, then both fundamental principles of due process and the terms of the purported arbitration agreement between the parties require the Kahn Respondents to initiate new arbitration proceedings as against Wang.

To the extent the Kahn Respondents are entitled to arbitrate their claims against Wang, they should be compelled to arbitrate their claims within the terms of the parties' purported agreement and the arbitration rules applicable thereto. Both the FAA and basic due process do not permit the Kahn Respondents to game the system by spending nearly a year purporting to arbitrate claims against Wang without telling him about it and then forcing him to shoehorn himself into that arbitration at the eleventh-hour, deprived of the right to have a say in the most basic aspects of the arbitration (venue, arbitrator selection, scope of arbitral issues, scope of discovery) Wang would have otherwise been afforded under applicable rules.

Finally, regardless of the relief this Court grants Wang as against the Kahn Respondents, Longstaff cannot be permitted to continue his efforts to fraudulently present himself as a representative of Wang in the Arbitration.

Absent the intervention of this Court, the Kahn Respondents' and Longstaff's sham will be allowed to continue and they will be rewarded for their fraud and forgery. The relief requested herein is essential to afford Wang the basic statutory, equitable, and due process rights *any* litigant has – not to be forced to arbitrate claims when his or her signature was forged to bind them to an arbitration agreement and, at a minimum, to be afforded basic due process: timely notice of proceedings, and opportunity to dispute the claims presented, using the applicable rules for arbitration.

For these reasons, Wang respectfully requests that this Court enjoin the Arbitration as to Wang and, if it determines Wang must arbitrate the Kahn Respondents' underlying disputes, order the Kahn Respondents to initiate a new arbitration as against Wang.

## II.    FACTUAL BACKGROUND

### A.    Longstaff Initiates A Conspiracy To Defraud Wang

In or around 2016 and 2017, Wang built two new single-family residences in Palo

Alto, California, at 3878 Magnolia Drive and at 3880 Magnolia Drive.  Wang subsequently transferred 3878 Magnolia Drive to Magnoliadrhomes LLC ("Magnolia").

In October 2017, Wang sold 3880 Magnolia Drive for $4.1M.  In May 2018, Magnolia sold 3878 Magnolia Drive for $4.1M (the two sales, collectively, the "Magnolia Transactions").

Because Wang is a foreign national, there was significant tax withholding, over $1 million, from the proceeds of these sales by both the federal government and the State of California pending filing of Wang's tax returns for the calendar year of each sale (such withholdings, "FIRPTA Withholdings").

Guohua "Greg" Xiong ("Xiong"), as Wang's authorized agent, retained Longstaff to provide legal services to Wang in connection with Wang's tax refunds for the 2017 and 2018 calendar year and to provide legal services to Magnolia in connection with Magnolia's use of proceeds from 3880 Magnolia Drive and 3878 Magnolia Drive.  Wang Decl. ¶ 4-5; Xiong Decl. ¶ 4.

Rather than provide legal services, Longstaff entered into a scheme involving Joseph Libkey ("Libkey") and the Kahn Respondents to defraud Wang at every turn.

**B.      Wang Is Defrauded Of Over $3 Million**

As a first step in his scheme, Longstaff claimed that he had a way for Wang and Magnolia to enjoy valuable tax deferral benefits in connection with the Magnolia Transactions. Longstaff introduced Xiong to Joseph Libkey ("Libkey"), a colleague of Kahn's, who did business through Peak Financial Company ("Peak"), an entity that it appears Libkey wholly owns.  Xiong Decl. ¶ 5.

Longstaff and Libkey induced Xiong to enter into the DAT, which they represented was the mechanism through which Wang and Magnolia could enjoy the promised tax deferral benefits and through which Wang would receive immediate, full return of the funds after one calendar quarter had passed.  Xiong Decl. ¶ 5.

The DAT, however, is against public policy and is not a legal tax deferral vehicle. Instead, it was a vehicle for stealing from Wang.  At Libkey's direction, the $3,130,953.66 in

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1    proceeds from the sale of 3878 Magnolia Drive were wired into an account established by

2    Peak and Libkey at US Bank in Colorado.  Shortly after they were deposited, Libkey withdrew

3    the funds, without authorization, and invested them in Blueprint Investment Fund, a company

4    that he controlled.

5        Despite repeated demands, those funds have never been returned to Wang.

6    **C.    Longstaff And The Kahn Respondents Enter Into The Forged Agreements**

7        Having managed to defraud Wang out of the proceeds of the sale of 3878 Magnolia

8    Drive, Libkey and Longstaff moved on to defrauding Wang, the U.S. Treasury and the State of

9    California out of the FIRPTA Withholdings.

10        Libkey introduced Longstaff to Kahn and his associate Luis Bulas-Felix ("Bulas-

11    Felix").  Kahn and Bulas-Felix purport to provide tax services that would help maximize

12    Wang's tax refunds from the FIRPTA Withholdings.

13        Kahn and Bulas-Felix were tasked with preparing Wang's 2017 and 2018 tax returns.

14    Wang needed to file returns in the U.S. because of the sale of the Magnolia properties in

15    California.  As a foreign national, he was subject to over $1 million in FIRPTA Withholdings.

16    Absent other taxable events or complexities, none of which are reflected in the returns that

17    Kahn and Bulas-Felix prepared, the calculation of a FIRPTA refund or state law equivalent is a

18    simple deduction of the mandatory withholding minus any capital gains from the sale.

19        But without Wang's or Xiong's knowledge, Longstaff entered into the Partially

20    Deferred Retainer and Fee Agreement ("PDRFA") and Refund Disbursement Service

21    Agreement ("RDS," and with the PDRFA, the "Agreements") with the Kahn Respondents, on

22    or about August 16, 2018.  Wang Decl. ¶ 12.  The Agreements purport to give the Kahn

23    Respondents a significant contingent fee interest in Wang's tax refunds.  The Kahn

24    Respondents were entitled to 100% of Wang's refunds above a certain baseline.  Based on the

25    refunds that the Kahn Respondents claimed on Wang's tax returns, this amounted to a nearly

26    50% contingency fee of Wang's total refunds.  Such a contingency fee would not only be

27    unconscionable but also illegal.  Under IRS Circular 230, the IRS prohibits practitioners from

28    collecting contingency fees for filing tax returns.  *See* 31 C.F.R. § 10.27.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

6

1      Rather than make any attempt to execute the Agreements with Wang or Xiong, Kahn

2   and Longstaff worked together under a purported power of attorney authorizing Longstaff to

3   act on Wang's behalf.  This allowed Kahn and Longstaff to execute the Agreements without

4   Wang or Xiong's knowledge.

5      Longstaff had no authority to sign the Agreements on Wang's behalf.  Wang Decl. ¶

6   12.  Longstaff's purported authority came from a fraudulent power of attorney (the "2017

7   POA") dated November 13, 2017 that Longstaff created.  *See* Wang Decl. ¶ 13, Exhibit A.

8   The 2017 POA purportedly conferred on Longstaff broad authority to act on Wang's behalf.

9   Wang did not sign the 2017 POA.  Wang Decl. ¶ 13.  Longstaff literally cut and pasted a

10  signature he thought was Wang's and attached a notarization page from a different document.

11  *See* Declaration of Patricia Fisher ("Fisher Decl.") ¶ 16.

12      But it was not enough for the Kahn Respondents to extract illegal and unconscionable

13  fees from Wang.  They also falsified Wang's tax records to artificially inflate Wang's refund –

14  and thus the Kahn Respondents' contingency fee.  Specifically, Kahn and Bulas-Felix grossly

15  understated the capital gains on the sales of the Magnolia properties by inflating Wang's basis

16  in them.  As a result, the refund Wang received was more than $200,000 greater than it should

17  have been for 2017 and more than $200,000 greater for 2018.  The contingency fees that the

18  Kahn Respondents are claiming represent the entire unlawful refunds obtained from false

19  filings with the IRS and Franchise Tax Board as well as refund amounts that Wang was

20  legitimately owed from the FIRPTA Withholding.  The Kahn Respondents have already

21  unlawfully pocketed over $200,000, including refund amounts that they directed that the

22  California Franchise Tax Board wire directly to them and never remitted to Wang.

23      Once Wang discovered that the Kahn Respondents filed false tax returns on his behalf,

24  he has moved with alacrity and in good faith to correct these returns.  He will be filing

25  amended returns that will subject him to over $400,000 in additional tax liability, as well as

26  interest and possible penalties.

27  **D.    Respondents Continue To Defraud Wang Through The Arbitration**

28      On November 6, 2019, Xiong terminated Longstaff as attorney for Wang and

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

7

Magnolia.  Xiong Decl. ¶ 6; Wang Decl. ¶ 6.

Unbeknownst to Xiong and Wang, through late 2019, Longstaff and the Kahn Respondents appeared to have a dispute relating to the Agreements and amounts allegedly owed by Wang thereunder.  *See* Wang Decl. ¶ 9; Xiong ¶ Decl. 10.  The fraudulent 2017 POA expired, on its terms, on January 31, 2019.  So, Longstaff manufactured *another* fraudulent power of attorney, terminating January 31, 2020 (the "2019 POA").  *See* Siegel Decl. ¶ 5, Exhibit G.  Like before, Longstaff appears to have copied and pasted signatures from another document into the manufactured 2019 POA.  *See* Fisher Decl. ¶ 16.  Moreover, Longstaff falsified a notary acknowledgment to attach to the 2019 POA, as well.  *See* Declaration of Jayesh A. Patel ("Patel Decl.") ¶¶ 4-8.

On or around November 20, 2019, the Kahn Respondents initiated the Arbitration.  *See* Siegel Decl. ¶ 5, Exhibit E.  The initial Arbitration claim was asserted against Longstaff, individually and as purported attorney-in-fact by way of power of attorney for Wang.  *Id.*  It alleges a breach of the Agreements for unpaid fees.  *Id.*  None of the Respondents notified Wang or Xiong that the Arbitration had been filed.  Wang Decl. ¶ 9; Xiong ¶ Decl. 10.

On March 25, 2020, the Kahn Respondents filed an Amended Claim in the Arbitration (the "Amended Claim").  *See* Siegel Decl. ¶ 5, Exhibit D.  The Amended Claim adds tortious interference and libel claims against Wang, for which the Kahn Respondents seek $10,000,000 in damages.  *Id.*

The Amended Claim itself is a transparent fraud.  It alleges that Wang, through Longstaff, tortiously interfered with Kahn's relationship with Bulas-Felix, who Kahn claims will no longer do business with him.  *See* Siegel Decl. ¶ 5, Exhibit D.  Bulas-Felix, conveniently, provided a sworn affidavit supporting Kahn's Amended Claim.  *Id.*  The act of interference alleged is Longstaff sending a complaint about Kahn's company, FPG to the IRS and Longstaff's filing of a counterclaim in the Arbitration.  *Id.*

The entire arbitration exercise reeks in every sense as the next step in the scheme to defraud Wang.  These claims are frivolous to the point of absurdity.  But even absurd claims for $10 million in damages brought in arbitration are dangerous when they are prosecuted

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

against Wang *in absentia*.

Kahn's initial Demand for Arbitration ("Demand") itself was calculated to avoid providing proper notice to Wang.  Instead of identifying Wang as the arbitration respondent, it lists FPG as the respondent, with FPG's contact information as the notice address for the respondent. *See* Siegel Decl. ¶ 5, Exhibit E.

The Demand also fabricates the existence of a Florida venue provision in the Agreements as the basis for having the arbitration heard in Miami.  *See* Siegel Decl. ¶ 5, Exhibit E.  The Agreements contain no venue provision.

Longstaff appeared in the Arbitration on December 10, 2019.  Despite having been terminated and lacking any authority to act on Wang's behalf, Longstaff represented himself as appearing on behalf of himself *and* Wang.  Longstaff purported to file an answer and counterclaims on behalf of Wang.  *See* Siegel Decl. ¶ 5, Exhibit C.  He purported to participate in arbitrator selection on behalf of Wang.  *Id.*  And he purported to make appearances in the Arbitration on behalf of Wang.  *Id.*  The Arbitration filings do not reflect that Longstaff acknowledged his insurmountable conflict of interest.

In the meantime, over the next several months, Respondents chose an arbitrator, agreed to a scope of discovery and discovery schedule, and set a date for the arbitral hearing, all to the detriment of Wang.

In mid-September 2020, Longstaff finally sent a copy of the Amended Claim to Morgan Lewis, Magnolia's former counsel.  Wang Decl. ¶ 8.  Upon information and belief, this is the first attempt made by any party to the Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated with Wang.  Morgan Lewis explained to AAA that it did not represent Wang with respect to the Arbitration.

On October 31, 2020, Wang's counsel, Grellas Shah LLP, provided AAA and the parties to the Arbitration notice that Wang objected to arbitral jurisdiction and that Wang intended to file a petition to enjoin the Arbitration.  *See* Siegel Decl. ¶ 5, Exhibit H.

On November 6, 2020, Bernard D. Beitch, Esq. (the "Arbitrator"), the arbitrator conducting the Arbitration, held a telephonic status conference at which Wang's counsel was

requested to be present.  Grellas Shah made a limited appearance for the purpose of answering

any questions regarding its objections and its intent to seek judicial relief.  Wang's counsel

made clear that no general appearance was being made and that Wang objected to any

purported jurisdiction there.  The Arbitrator acknowledged that Wang would be seeking to

enjoin the Arbitration but demanded that Wang nevertheless make a general appearance

through counsel immediately, and without waiting for any judicial ruling on his petition, so as

to avoid any delay to the Arbitration.  The Arbitrator further stated that if Wang waited for a

judicial ruling before making a general appearance, he would consider imposing sanctions on

Wang.

## III.    LEGAL ARGUMENT

### A.    The Court Should Permanently Enjoin The Arbitration

#### 1.    This Court Has Authority To Enjoin An Arbitration Under the New York Convention and the FAA.

Chapter 2 of the Federal Arbitration Act ("FAA"), which codifies the United Nations

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York

Convention"), governs arbitrations that involve a non-U.S. citizen.  *See* 9 U.S.C. § 206.  Wang

is a citizen of China.  Wang Decl. ¶ 2.  Therefore, the only legal grounds under which Wang

may be compelled to arbitrate is under Chapter 2 of the FAA and the New York Convention.

The FAA empowers federal district courts to enjoin arbitration proceedings.  *See*

*Textile Unlimited, Inc. v. ABMHCO. Inc*., 240 F.3d 781, 784-87 (9th Cir. 2001) (holding that

arbitration proceedings may be enjoined if the moving party meets the requirements for

preliminary injunctive relief); *Republic of Ecuador v. Chevron Corp*., 638 F.3d 384, 391 (2d

Cir. 2011) (stating that courts have the power to enjoin arbitral proceedings governed by the

New York Convention); *DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc.*, No.

14-CV-01527-MSK-KMT, 2015 WL 5693560, at *5 (D. Colo. Sept. 29, 2015) ("[I]t is clear to

this Court that the weight of authority . . . has embraced a more expansive view of federal

jurisdiction under the Convention that includes claims seeking simply to stay an arbitration.");

*CRT Capital Grp. v. SLS Capital, S.A*., 63 F. Supp. 3d 367, 375 (S.D.N.Y. 2014) (holding that

federal district courts have jurisdiction to enjoin arbitration proceeding under the New York Convention).

### 2. The New York Convention's Requirements For Arbitral Jurisdiction Cannot Be Met Because Wang Was Not Party To An Arbitration Agreement.

#### a. An Agreement To Arbitrate Is The Central Requirement Of The New York Convention.

A party seeking to compel arbitration under the New York Convention and Chapter 2 of the FAA must show four things:

> (1) there is an *agreement* in writing within the meaning of the Convention; (2) the *agreement* provides for arbitration in the territory of a signatory of the Convention; (3) the *agreement* arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the *agreement* is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (emphasis added); *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-05609 SI, 2011 WL 2650689, at *2 (N.D. Cal. July 6, 2011).

The core of each element of arbitral jurisdiction is the existence of an agreement to arbitrate. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212-14 (9th Cir. 2016) (holding that there was no arbitral jurisdiction under Chapter 2 of the FAA because the contract containing the arbitration clause was a "mere sham"); *see also AT & T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.").

#### b. The Court, Not An Arbitrator, Determines Whether Wang Is Subject to Arbitral Jurisdiction.

Challenges to the existence of the contract containing an arbitration clause must be resolved by a court. In *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co*, 925 F.2d 1136 (9th Cir. 1990), a party contended that a contract containing an arbitration clause was never formed because the person purporting to execute the contract on its behalf lacked authority.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

The Ninth Circuit held that only a court could determine arbitrability under the circumstances because "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys,* 925 F.2d at 1140-41 (emphasis in original). *See also Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

And the RDS itself states that questions of arbitrability must be decided by a court. *See See* Siegel Decl. ¶ 5, Exhibit F (stating that the "Dispute Clause . . . does not include disputes about the validity, coverage or scope of this Dispute Clause or any part of this Dispute Clause. . . . All such disputes are for a court and not an Arbitrator to decide.").

### c.    The Kahn Respondents Bear The Burden Of Proving the Existence Of An Agreement To Arbitrate.

The Kahn Respondents bear the burden of proving the existence of an agreement to arbitrate. *See Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017) ("As the party seeking to compel arbitration, Samsung bears the burden of proving the existence of the agreement to arbitrate by a preponderance of the evidence.") (citation and internal quotation marks omitted); *Gelow v. Central Pacific Mortg. Corp.*, 560 F. Supp. 2d 972, 978 (E.D. Cal. 2008) ("The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party.").

Where there are genuine disputes of material fact over the existence of a contract as the basis of arbitral jurisdiction, courts cannot resolve the issue as a matter of law and must move summarily to trial:

> Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Three Valleys*, 925 F.2d at 1141 (citation and internal quotation marks omitted); *accord Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("[W]hen one party disputes

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

the making of the arbitration agreement, the Federal Arbitration Act requires that the court proceed summarily to the trial thereof before compelling arbitration under the agreement.") (citation, bracketing and internal quotation marks omitted); *Chavez v. Bank of America*, No. C 10–653 JCS, 2011 WL 4712204, at *12 (N.D. Cal. Oct. 7, 2011) (denying motion to compel arbitration where there was a material dispute of fact over the existence of the agreement and reserving the matter for a bench trial).

### d.    The Kahn Respondents Cannot Satisfy Their Burden Of Showing There Was An Agreement To Arbitrate.

The Kahn Respondents cannot satisfy their burden of showing the existence of an agreement to arbitrate because Wang was not a party to an arbitration agreement.

Wang did not sign the RDS or know about it.  Wang Decl. ¶ 12.  Wang neither agreed or consented to arbitration with Kahn.  Wang Decl. ¶ 12.

Longstaff purported to sign the RDS on Wang's behalf as his purported "POA."  But Wang never gave Longstaff such broad written authority to act as his attorney-in-fact.  Wang Decl. ¶ 13.

Rather, Longstaff purports to derive his authority to sign the RDS on Wang's behalf from a document that is itself fraudulent.  There is a document dated November 13, 2017, that purports to give Longstaff broad authority to act on Wang's behalf and supposedly bears Wang's signature.  As Wang himself attests, however, he never signed this document.  Wang Decl. ¶ 13.  Rather, expert analysis shows that Wang's signature is not authentic and is the product of an amateur cut-and-paste job.  Fisher Decl. ¶ 16.  Further, the notary acknowledgment attached to the fraudulent document is taken from an entirely different document that Wang had notarized on that date.  Patel Decl. ¶ 4-8.

Wang did not sign the RDS.  Wang Decl. ¶ 13.  Longstaff had no authority to sign the RDS on Wang's behalf.  Wang Decl. ¶ 12.  Therefore, Wang never agreed to arbitrate.

Courts commonly enjoin arbitration proceedings where, as here, an arbitration is commenced in the absence of an agreement to arbitrate.  *See Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC ANX, 2014 WL 3721197, at *2 (C.D. Cal. July 22, 2014)

(holding that a district court may enjoin arbitration proceedings that are not governed by a valid and binding arbitration agreement); *see also Societe Generale de Surveillance, S.A. v. Raytheon European Management and Sys. Co*., 643 F.2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant power to compel arbitration where it is present."); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219 (E.D.N.Y. 2013) ("[W]here a court determines that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings.").

### 3. Wang Did Not Consent To Arbitral Jurisdiction Through Longstaff's Conduct During The Arbitration.

Longstaff's conduct during the Arbitration cannot be imputed to Wang and cannot be considered as Wang's consent to arbitrate.

For over nine months after the Arbitration was filed, Wang had no knowledge of its existence. Wang Decl. ¶¶ 9-10. The Kahn Respondents only sent notice of the Arbitration to Longstaff. Longstaff concealed the existence of the Arbitration from Wang. Wang Decl. ¶¶ 9-10; Xiong Decl. ¶ 10.

Instead, Longstaff purported to appear in the Arbitration as Wang's attorney-at-law and attorney-in-fact. At the time he did so, Wang had already terminated Longstaff as his attorney and made clear that he had no authorization to act on Wang's behalf in any capacity. Wang Decl. ¶ 6; Xiong Decl. ¶ 6.

Longstaff engaged in a number of acts purportedly on Wang's behalf, including filing an Answer, asserting Counterclaims, participating in arbitrator selection, and participating in a preliminary conference. Given that Wang did not authorize Longstaff to act on his behalf, none of these acts may be imputed to Wang.

Longstaff and the Kahn Respondents have, apparently, fabricated a second fraudulent document, this time dated February 1, 2019, which purports to give Longstaff broad powers to act as Wang's attorney in fact through early 2020. Presumably this is an attempt to sanction Longstaff's representation of Wang in the Arbitration.

MPA ISO PETITION TO ENJOIN ARBITRATION
Case No.: 5:20-cv-08033

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

This document, however, is not authentic. Wang attests that he never signed it. Wang Decl. ¶ 14. Expert analysis shows that Wang's signature on the power of attorney was cut-and-pasted from another document. Fisher Decl. ¶ 16. Further, there is an Acknowledgement attached to the power of attorney that states that Wang signed the document in the presence of California notary Jayesh Patel in Santa Clara County on February 5, 2019. Wang was not in the United States on that date. Wang Decl. ¶ 14. Mr. Patel provides his sworn declaration that his notary ledger shows that Wang never signed any document in his presence on February 5, and that the Acknowledgement is itself a forgery. Patel Decl. ¶¶ 4-8. That is not the form of Acknowledgement Mr. Patel uses, it is not his signature on the Acknowledgment, and it is not his notary stamp on the Acknowledgment. Patel Decl. ¶¶ 4-8.

**B.**    **If The Court Concludes That Wang Is Subject To Arbitral Jurisdiction, In The Alternative, The Arbitration Should Be Permanently Enjoined As To Wang And The Kahn Respondents Should Be Compelled To Reinitiate Arbitration In A Manner That Complies With The New York Convention And Basic Due Process.**

Fundamentally, the Kahn Respondents did not initiate an arbitration as against Wang. Instead, the Kahn Respondents initiated the Arbitration against Longstaff and happened to include Wang's name in the pleadings. Longstaff and the Kahn Respondents did not tell AAA or the Arbitrator that there was no attempt to provide notice of the proceedings to Wang. They simply proceeded in Wang's absence and pretended he was given notice.

The Arbitration has been conducted for nine months in total secrecy, as to Wang, in a manner calculated to deprive Wang of a fair hearing or the benefit of the protections set forth in the Agreements. Wang Decl. ¶¶ 9-10. Therefore, to the extent this Court determines Wang should be compelled to arbitrate any disputes with the Kahn Respondents, the Court should order such disputes be heard in a newly initiated arbitration that complies with the New York Convention, the terms of the Agreements, and basic due process.

**1.**    **The Court Has The Authority To Intervene When The Conduct Of A Pending Arbitration Fundamentally Violates Applicable Law**

The Ninth Circuit has held that immediate judicial intervention in arbitration proceedings is appropriate to prevent "severe irreparable injury" from errors that "cannot

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1    effectively be remedied on appeal from the final judgment" and that result in "manifest

2    injustice." *See Aerojet-Gen. Corp. v. Am. Arbitration Ass'n,* 478 F.2d 248, 251 (9th Cir. 1973)

3    (holding that in such cases "the courts should be free to prevent a manifest injustice");

4    *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1294 (9th

5    Cir. 1987) (noting that review of nonfinal decisions of an arbitrator are not "precluded" under

6    Ninth Circuit precedent); *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am.,*

7    *AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987) (decisions by an

8    arbitrator prior to the issuance of a final award can be reviewed "should the circumstances

9    warrant").

10          The Ninth Circuit has yet to state with specificity what gives rise to the type of "severe

11    irreparable injury" that justifies immediate judicial intervention in arbitration proceedings. Its

12    ruling in *Aerojet-Gen.*, however, suggests that circumstances involving "partiality on the part

13    of an arbitrator," an arbitrator that "exceeded his authority" or where an arbitration award

14    would be rendered in "manifest disregard of the law" as potential instances that might

15    constitute the kind of "severe irreparable injury" warranting immediate judicial review. *See*

16    *Aerojet-Gen. Corp.,* 478 F.2d at 252.

17          It should be noted that the relief requested herein does not ask the Court to intervene in

18    the Arbitration proceedings themselves. The Kahn Respondents are free to prosecute their

19    claims against Longstaff in the Arbitration, just as Longstaff is free to assert any counterclaims

20    on his own behalf against the Kahn Respondents. That is the nature of the arbitration that has

21    been conducted over most of the last year – a litigation between the Kahn Respondents and

22    Longstaff – and it can remain as such. All Wang asks is that if the Kahn Respondents truly

23    wish to invoke the arbitration provisions of the Agreements, that they follow the terms of the

24    Agreements and applicable law in initiating an arbitration as against Wang.

25          **2.      The Arbitration Should Be Vacated As To Wang Because It Has Been
                     Conducted Without Providing Proper Notice To Wang**

26

27          This Court is empowered to act to ensure that Wang is able to receive a fundamentally

28    fair hearing, which includes receiving proper notice of the proceeding. *See Carpenters 46*

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

16

1   *Northern California Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir.

2   1996) ("Although deference must be given to an arbitrator's decisions concerning procedural

3   issues, it is generally recognized that the courts may consider a claim that a party to

4   an arbitration has been denied a fundamentally fair hearing."); *Jones v. Flowers*, 547 U.S. 220,

5   240 (2006) (holding that the Fourteenth Amendment's Due Process Clause requires "that a

6   State must provide an individual with notice and opportunity to be heard before the State may

7   deprive him of his property.").

8          A fundamentally fair hearing requires that a party to a foreign arbitration be able to

9   present its case.  *See Sunshine Mining Co. v. United Steelworkers of America*, 823 F. 2d 1289,

10  1295 (9th Cir.1987) (A "hearing is fundamentally fair if it meets the 'minimum requirements

11  of fairness").  A hearing meets "the minimal requirements of fairness" if it provides adequate

12  notice, a hearing on the evidence, and an impartial decision by the arbitrator.  *Ficek v.*

13  *Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir. 1964).

14         Under the New York Convention, for notice of arbitration proceedings to be proper, it

15  must meet United States standards of procedural due process.  *See Parsons & Whittemore*

16  *Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 975 (2d Cir.

17  1974) ("This provision essentially sanctions the application of the forum state's standards of

18  due process."); *Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123, 1129-30 (7th Cir.

19  1997) ("[A]n arbitral award should be denied or vacated if the party challenging the award

20  proves that he was not given a meaningful opportunity to be heard as our due process

21  jurisprudence defines it."); *Sesostris SAE v. Transportes Navales SA and M/V Unamuno*, 727

22  F. Supp. 737 (D. Mass. 1989) (refusing enforcement of an arbitral award since a third party

23  had not received proper notice of the arbitration proceedings).

24         Notice must be "reasonably calculated, under all the circumstances, to apprise

25  interested persons of the pendency of the action and afford them an opportunity to present their

26  objections" in order to comply with due process.  *Mullane v. Central Hanover Bank & Trust*

27  *Co.*, 339 U.S. 306, 314 (1950); *see also Jiangsu Changlong Chemicals, Co. v. Burlington Bio–*

28  *Med. & Scientific Corp.,* 399 F. Supp. 2d 165, 168 (E.D.N.Y. 2005) ("To comport with due

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

17

1     process parties to an arbitration must be given notice reasonably calculated to inform them of

2     the proceedings and an opportunity to be heard.").

3           Here, however, Respondents took steps to deliberately ensure that Wang did not

4     receive proper notice, beginning with the Demand for Arbitration.  Instead of identifying

5     Wang as the arbitration respondent, the Demand for Arbitration lists FPG as the respondent,

6     with FPG's contact information as the notice address for the respondent.  The Kahn

7     Respondents made no attempt to serve the Demand for Arbitration or Claim on Wang when

8     they filed the Arbitration in November 2019.  Wang Decl. ¶ 9-10; Xiong Decl. ¶ 10.  They

9     served these documents only on Longstaff, who concealed the existence of the Arbitration for

10    over nine months.  Wang did not, in fact, receive notice of the Arbitration proceeding until

11    Longstaff sent a copy of the Amended Claim to Morgan Lewis, former counsel to Magnolia, in

12    September 2020.  Wang Decl. ¶ 10.  This was the *first* attempt made by any party to the

13    Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated with Wang.

14          Wang thus did not receive proper notice of the arbitration.  By being deprived of proper

15    notice, Wang was not able to participate in the arbitration proceedings until very recently, and

16    as a result has been deprived of being able to fairly participate in selecting the arbitrator and

17    the scope of the discovery process.

18          And the prejudice to Wang was exacerbated by Longstaff's conduct.  Not only did

19    Longstaff conceal the existence of the Arbitration from Wang, but Longstaff also masqueraded

20    as Wang's attorney-in-fact and attorney-at-law for nine months.  But Longstaff was not merely

21    an inept representative.  Wang had already terminated Longstaff – he was not Wang's

22    representative at all.

23          Wang would suffer severe irreparable injury if he were forced to now join the

24    Arbitration that has been going on for almost a year.  Numerous decisions have been made and

25    positions taken, purportedly on Wang's behalf.  Those critical decisions included arbitrator

26    selection, venue of the arbitration, the scope of legal defenses pled, the scope of counterclaims

27    asserted, arbitral admissions in the pleadings, the scope of discovery and scheduling, what

28    discovery to propound and responses to discovery, all done without Wang's consent.  In fact,

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

MPA ISO PETITION TO ENJOIN ARBITRATION
Case No.: 5:20-cv-08033

1  Longstaff – purportedly on Wang's behalf - has affirmed and admitted to the validity of the

2  illegal contingent fee Agreements that he fraudulently signed on Wang's behalf.  *See* Siegel

3  Decl. ¶ 5, Exhibit C.

4      The lack of notice and lack of representation are the kind of "severe irreparable injury"

5  that justifies immediate judicial intervention by this Court.  Accordingly, the Court should at a

6  minimum enjoin the Kahn Respondents from continuing the current Arbitration as to Wang so

7  that a new arbitration may be filed in a manner that comports with due process.

8           **3.      The Arbitration Has Been Conducted in Violation Of AAA Rules**

9      The Arbitration should also be vacated as to Wang because it has been conducted in

10  violation of AAA rules and, therefore, in violation of the terms of the Agreements.  These are

11  incurable violations for which the only remedy is vacating the Arbitration as to Wang.

12      Courts are empowered to ensure that contractual terms found in arbitration agreements

13  which specify the manner in which arbitration is to proceed are fully enforced.  *See Volt Info.*

14  *Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting

15  that enforcing "rules according to the terms of the agreement is fully consistent with the goals

16  of the FAA"); *Allstate Ins. Co. v. OneBeacon Am. Ins. Co.*, 989 F. Supp. 2d 143, 147 (D.

17  Mass. 2013) (holding that if the terms of an arbitration agreement are violated, a court can

18  order arbitration to proceed according to the agreement's terms);  *Farrell v. Subway Int'l,*

19  *B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017, at *4 (S.D.N.Y. Mar. 23, 2011) (staying

20  arbitration on the basis that federal law directs that the court enforce the terms of the parties'

21  agreement); *Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.,* No. 00 C 5257, 2000 WL

22  1724661, at *2 (N.D. Ill. Nov. 20, 2000) (holding that where party is merely seeking to

23  enforce "a benefit explicitly conferred by a provision" of the parties' agreement, the party does

24  not need to wait "until the post-award stage to complain").

25      Here, the arbitration agreement specifies that the arbitration is to be conducted under

26  "the rules of the arbitration administrator in effect when the arbitration is started."  *See* Siegel

27  Decl. ¶ 5, Exhibit F.  The Kahn Respondents initiated the Arbitration with the AAA.  Per AAA

28  rules, the arbitration should be conducted under the AAA's International Dispute Resolution

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    Procedures ("IDRP") because Wang is a Chinese citizen. *See* American Arbitration

2    Association, International Dispute Resolution Procedures, Rule 1 (2014); Wang Decl. ¶ 2.

3    Instead, however, the Arbitration has been unlawfully conducted under AAA's Commercial

4    Arbitration Rules. This has a material adverse impact on Wang, as for example under Rule

5    12.4 of the IDRP, Wang had the right to request that the arbitrator have a different nationality

6    as that of the parties. *See* American Arbitration Association, International Dispute Resolution

7    Procedures, Rule 12 (2014). Wang has been deprived of this right. Other rights have been

8    denied him, such as Wang's right to participate in forum selection, arbitrator selection, and a

9    preliminary hearing to set the scope and timing of discovery as well as time of hearing.

10   Should the Court conclude that the purported arbitration agreement within the RDS is

11   enforceable, at a minimum this Court should enjoin the Kahn Respondents from continuing the

12   Arbitration against Wang so that a new arbitration may be initiated in a manner that ensures

13   that the procedural requirements specified within the RDS (which would have required

14   compliance with AAA rules here) are fully enforced. *See Volt*, 489 U.S. at 479.

**C.    Longstaff Should Be Enjoined From Purporting To Represent Wang In the Arbitration**

17   Longstaff should be permanently enjoined from purporting to act as Wang's attorney-

18   at-law or attorney-in-fact in the Arbitration.

19   As explained above, the Ninth Circuit has held that a court can intervene in a pending

20   arbitration to prevent "severe irreparable injury" and avoid "manifest injustice." *See Aerojet-*

21   *Gen. Corp.,* 478 F.2d at 251.

22   Longstaff's conduct represents an extraordinary act of malfeasance by an attorney. He

23   has already caused significant harm to Wang and cannot be permitted to continue. He actively

24   concealed the existence of the Arbitration from his former client for 9 months while purporting

25   to represent Wang. Wang Decl. ¶ 10. He had no authority to do so and had been terminated as

26   counsel. Wang Decl. ¶ 6; Xiong Decl. ¶ 6. During these 9 months, he has actively prejudiced

27   Wang's legal position in the Arbitration. Wang therefore respectfully submits that permanent

28   injunctive relief is warranted.

Grellas Shah LLP
20400 Stevens Creek Blvd., Suite 280
Cupertino, CA 95014

1

## IV.   CONCLUSION

2         For the reasons stated above, the Kahn Respondents should be permanently enjoined

3   from prosecuting the Arbitration as to Wang and Longstaff should be permanently enjoined

4   from purporting to represent him in the Arbitration.  If the Court concludes that arbitral

5   jurisdiction is proper as to Wang, the Kahn Respondents should in the alternative be enjoined

6   from prosecuting the Arbitration and directed to filing a new arbitration that comports with the

7   requirements of due process.

8

9

10                                               Respectfully submitted,

11   Dated:  November 17, 2020                    GRELLAS SHAH LLP

12                                         By: _____/s/_____

13                                              Dhaivat H. Shah, Esq.
                                                Attorneys for Petitioner
14                                              YOULIN WANG

15

16

17

18

19

20

21

22

23

24

25

26

27

28