GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
ERIN M. ADRIAN, ESQ. (SBN: 228718)
(ema@grellas.com)
CHRISTOPHER CIVIL, ESQ. (SBN: 294477)
(cc@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Petitioner
YOULIN WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YOULIN WANG, an individual<br><br>Petitioner,<br><br>v.<br><br>RICHARD KAHN, an individual; and FORENSIC PROFESSIONALS GROUP USA, INC., a Florida corporation; and DEREK LONGSTAFF, an individual,<br><br>Respondents. | Case No.: 5:20-cv-08033-LHK<br><br>**NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:<br>Time:<br>Judge:        Lucy H. Koh<br>Courtroom:    8<br><br>Date Action Filed:  Nov. 13, 2020 |

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................... 3

II.  FACTUAL BACKGROUND ................................................. 6

    A.   Longstaff Initiates A Conspiracy To Defraud Wang ..................... 6

    B.   Wang Is Defrauded Of Over $3 Million ............................... 7

    C.   Longstaff And The Kahn Respondents Enter Into
       The Forged Agreement .............................................. 7

    D.   Respondents Continue To Defraud Want Through
       The Arbitration ................................................... 9

III. THIS COURT HAS JURISDICTION AND VENUE IS PROPER ..................... 12

IV.  EMERGENCY INJUNCTIVE RELIEF IS WARRANTED ......................... 13

    A.   Wang Is Likely To Succeed On The Merits Of His
       Petition To Enjoin The Arbitration ................................. 13

       1.   Wang is Likely to Prevail in the Petition to Enjoin
          Arbitration Because He Is Not Party To An Arbitration
          Agreement .................................................... 14

          a.   The Court Has Authority To Enjoin An Arbitration
             Under The New York Convention And FAA ................... 14

          b.   The New York Convention's Requirements For Arbitral
             Jurisdiction Cannot Be Met Because Wang Was Not Party
             To An Arbitration Agreement ............................. 14

             i.   An Agreement To Arbitrate Is The Central
                Requirement Of The New York Convention ......... 14

             ii.  The Court, Not An Arbitrator, Determines
                Whether Wang Is Subject to Arbitral
                Jurisdiction ............................................. 15

             iii. The Kahn Respondents Bear The Burden Of
                Proving the Existence Of An Agreement To
                Arbitrate ................................................ 16

             iv.  The Kahn Respondents Cannot Satisfy Their
                Burden Of Showing There Was An Agreement
                To Arbitrate ............................................. 17

///

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

i

           c.    Wang Did Not Consent To Arbitral Jurisdiction Through Longstaff's Conduct During The Arbitration ........................................................ 18

    2.    Wang Is Likely To Prevail In The Petition To Enjoin Arbitration Because The Arbitration Has Not Been Conducted With Due Process ............................................................................................... 19

           a.    The Court Has The Authority To Intervene When The Conduct Of A Pending Arbitration Fundamentally Violates Applicable Law ..................................................... 19

           b.    The Arbitration Has Been Conducted Without Providing Proper Notice To Wang .................................... 19

           c.    The Arbitration Has Been Conducted in Violation Of AAA Rules ..................................................... 22

B.    Wang Will Suffer Irreparable Harm Absent Injunctive Relief ................. 23

C.    The Balance of Hardships Favors Wang .................................................... 23

D.    Enjoining the Arbitration Serves the Public Interest .................................. 24

E.    Wang Will Suffer Irreparable Harm If A Temporary Restraining Order Is Not Granted Pending Hearing On A Motion For Preliminary Injunction ................................................................. 25

F.    A Minimal Bond is Appropriate ................................................................ 26

G.    Wang Has Complied With the Requirements of Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65-1 ........................................... 26

V.    CONCLUSION ....................................................................................................... 27

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

Page

4

*Granite Rock Co. v. International Broth. of Teamsters,*
   561 U.S. 287 (2010) ............................................................ 14

5

6

*Aerojet-Gen. Corp. v. Am. Arbitration Ass'n,*
   478 F.2d 248 (9th Cir. 1973) .............................................. 18

7

*Allstate Ins. Co. v. Elzanaty,*
   929 F. Supp. 2d 199 (E.D.N.Y. 2013) ................................ 16

8

9

*Allstate Ins. Co. v. OneBeacon Am. Ins. Co.,*
   989 F. Supp. 2d 143 (D. Mass. 2013) ................................ 20

10

11

*AT & T Tech., Inc. v. Commc'n Workers of Am.,*
   475 U.S. 643 (1986) ............................................................ 14

12

*Balen v. Holland America Line Inc.,*
   583 F.3d 647 (9th Cir. 2009) .............................................. 14

13

14

*Carpenters 46 Northern California Counties Conference Bd. v. Zcon Builders,*
   96 F.3d 410 (9th Cir. 1996) ................................................ 18

15

16

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC,*
   816 F.3d 1208 (9th Cir. 2016) ............................................ 14

17

18

*Charles Schwab & Co. v. Reaves,*
   No. CV-09-2590-PHX-MHM, 2010 WL 447370 (D. Ariz. Feb. 4, 2010) ........... 23

19

20

*Chavez v. Bank of America,*
   No. C 10–653 JCS, 2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ......................... 15

21

*Connecticut General Life Ins. v. New Images of Beverly Hills,*
   321 F.3d 878 (9th Cir. 2003) .............................................. 25

22

23

*Corner v. Micor, Inc.,*
   436 F.3d 1098 (9th Cir. 2006) ............................................ 23

24

25

*CRT Capital Grp. v. SLS Capital, S.A.,*
   63 F. Supp. 3d 367 (S.D.N.Y. 2014) .................................. 13

26

27

*Disney Enterprises, Inc. v. VidAngel, Inc.,*
   869 F.3d 848 (9th Cir. 2017) .............................................. 12

28

*///*

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

*DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc.*,
   No. 14-CV-01527-MSK-KMT, 2015 WL 5693560,
   (D. Colo. Sept. 29, 2015) ...................................................................... 13

*Farrell v. Subway Int'l, B.V.*,
   No. 11 Civ. 08 (JFK), 2011 WL 1085017 (S.D.N.Y. Mar. 23, 2011) ................. 21

*Ficek v. Southern Pacific Co.*,
   338 F.2d 655 (9th Cir. 1964)............................................................... 19

*Future Domain Corp. v. Trantor Sys. Ltd.*,
   No. C 93 0812 TEH, 1993 WL 270522 (N.D. Cal. May 3, 1993) ................. …..12

*Gelow v. Central Pacific Mortg. Corp.*,
   560 F. Supp. 2d 972 (E.D. Cal. 2008)................................................. 15

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000)............................................................ 24

*Herbert Simms v. Roven*,
   548 F. Supp. 2d 759 (N.D. Cal. 2008) .................................................. 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ...................... 14

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
   No. SACV 13-1934-DOC ANX, 2014 WL 3721197
   (C.D. Cal. July 22, 2014) .................................................................... 16

*Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.*,
   No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000) .............................. 21

*Jones v. Flowers*,
   547 U.S. 220 (2006) ........................................................................... 19

*L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*,
   650 F.2d 1004 (9th Cir. 1981) ............................................................. 12

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
   337 F.3d 125 (2d Cir. 2003)................................................................ 22

*Millmen Local 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells
   Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987)..................................... 18

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)........................................................................... 19

*///*

*Norcia v. Samsung Telecommunications America, LLC,*
    845 F.3d 1279 (9th Cir. 2017)................................................................. 15

*Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier,*
    508 F.2d 969 (2d Cir. 1974)................................................................. 19

*Pension Plan for Pension Trust Fund for Operating Engineer, v. Weidway*
    *Construction, Inc.,* 920 F. Supp. 2d 1034 (N.D. Cal. 2013) .................................. 21

*Republic of Ecuador v. Chevron Corp.,*
    638 F.3d 384 (2d Cir. 2011)................................................................. 13

*Societe Generale de Surveillance, S.A. v.*
    *Raytheon European Management and Sys. Co.,* 643 F.2d 863 (1st Cir. 1981) ..... 16

*Stormans, Inc. v. Selecky,*
    571 F.3d 960 (9th Cir. 2009)................................................................. 22

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001)................................................................. 12

*Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC,*
    823 F.2d 1289 (9th Cir. 1987)............................................................. 18, 19

*Sykes v. Escueta,*
    No. 10–3858 SC, 2010 WL 4942608 (N.D.Cal. Nov. 29, 2010) ..................... 23

*Textile Unlimited, Inc. v. ABMH & Co.,*
    240 F.3d 781, 785 (9th Cir. 2001)....................................................... 11, 12

*Three Valleys Mun. Water Dist. v. E. F. Hutton & Co,*
    925 F.2d 1136 (9th Cir. 1990)............................................................. 14, 15

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.,*
    489 U.S. 468 (1989) ....................................................................... 20, 21

## **Federal Statutes**

9 U.S.C. § 203 ......................................................................................... 12

9 U.S.C. § 204 ......................................................................................... 12

9 U.S.C. § 206 ......................................................................................... 14

///

///

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

2

**Other Authorities**

3    Federal Rule of Civil Procedure 65(c) ................................................................. 26

4    Local Rule 65-1 .................................................................................................... 26

5    31 C.F.R. § 10.27 ................................................................................................... 8

6    11 Federal Practice and Procedure: Civil, § 2948 ............................................... 11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, at a time to be set by the Court, Petitioner Youlin Wang ("Wang" or "Petitioner"), hereby moves under Local Rule 65-1 and Federal Rules of Civil Procedure 65, for:

(1) a temporary restraining order enjoining as against Wang the arbitration brought by Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the "AAA"), Case No. 01-19-0004-1076 (the "Arbitration"); and

(2) a temporary restraining order enjoining Derek Longstaff from taking any actions, making any statements, or otherwise purporting to represent or act on behalf of Wang in the Arbitration; and

(3) an order to show cause why a preliminary injunction should not issue, under Federal Rule of Civil Procedure 65, enjoining the Kahn Respondents, and each of their officers, agents, servants, employees, representatives, associates, related corporate entities, owners, and operators, and/or all persons acting for, on behalf of, or in concert or cooperation with any of them, from prosecuting arbitral proceedings against Wang during the pendency of this action; and

(4) an order to show cause why a preliminary injunction should not issue, under Federal Rule of Civil Procedure 65, enjoining Longstaff from taking any actions, making any statements, or otherwise purporting to represent or act on behalf of Wang in the Arbitration.

Good cause exists for issuance of a temporary restraining order and order to show cause for entry of a preliminary injunction in this case because Wang faces imminent, irreparable harm.  Absent a temporary restraining order, Wang must either participate in the Arbitration and arbitrate claims that he did not contractually agree to arbitrate, or risk suffering unspecified monetary and/or non-monetary sanctions from arbitrator in the Arbitration. Moreover, Wang has demonstrated a likelihood of prevailing in his Petition to Enjoin.

Counsel for Wang provided Respondents with notice of its intent to file the Motion for

a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction on

November 19, 2020 via email under Local Rule 65-1(b).  Wang is also today emailing

Respondents with a copy of the petition in the above-entitled action as well as a copy of this

motion and all related papers in support thereof.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points

and Authorities, the Declaration of Youlin Wang in Support of Petitioner's  Motion for a

Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, the

Declaration of David I. Siegel in Support of Petitioner's Motion for a Temporary Restraining

Order and Order to Show Cause re Preliminary Injunction, the Declaration of Dhaivat H. Shah

in Support of Petitioner's Motion for a Temporary Restraining Order and Order to Show

Cause re Preliminary Injunction the Declaration of Guohua "Greg" Xiong in Support of

Petitioner's  Motion for a Temporary Restraining Order and Order to Show Cause re

Preliminary Injunction, the Declaration of Patricia Fisher in Support of Petitioner's Motion for

a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction, the

Declaration of Jayesh A. Patel in Support of Petitioner's Motion for a Temporary Restraining

Order and Order to Show Cause re Preliminary Injunction, any of the evidence attached to the

above-titled declarations and on file with the Court, any evidence that may be presented in

support of the motion during the hearing, and on any such other written and oral argument

presented to the Court.

Respectfully submitted,

Dated:  November 20, 2020                    GRELLAS SHAH LLP

By:  ___/S/_____
          Dhaivat H. Shah, Esq.
          Attorneys for Petitioner
          YOULIN WANG

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Wang seeks a Temporary Restraining Order and Order to Show Cause enjoining as against Wang the arbitration brought by Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the "AAA"), Case No. 01-19-0004-1076 (the "Arbitration") and enjoining Derek Longstaff ("Longstaff," and together with the Kahn Respondents, the "Respondents") from purporting to represent or otherwise act on behalf of Wang as part of the Arbitration.  Wang faces irreparable harm in the Arbitration absent immediate injunctive relief.

## I.    INTRODUCTION[1]

Longstaff and the Kahn Respondents were part of a lengthy conspiracy to defraud Wang in connection with the sale of residential properties in Palo Alto, California.

In the guise of offering a vehicle for tax deferral, Longstaff and other co-conspirators induced Wang to transfer over $3 million in proceeds from the sale of one of Wang's residential properties to an account under one of the co-conspirator's control, from which the money was never seen again.

Longstaff and the Kahn Respondents also conspired to defraud Wang, the U.S. government and the State of California regarding the refunds on Wang's 2017 and 2018 tax returns.  Longstaff and the Kahn Respondents entered into a secret fee agreement, to which Longstaff signed Wang's name, that gave the Kahn Respondents a contingent fee based on the amount of refunds Wang received on returns filed by the Kahn Respondents.  Longstaff purported to derive his authority to enter into this agreement based on a fraudulent power of attorney to which he forged Wang's signature.  Then the Kahn Respondents filed deliberately false tax returns that artificially inflated Wang's tax refunds to maximize their contingent fee. The Kahn Respondents have already received several hundred thousand dollars through this

---

[1] Petitioner's Introduction and Factual Background sections are taken from and are substantially similar to the corresponding sections of its Memorandum of Points and Authorities in Support of Petition to Enjoin Arbitration.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    scheme.  Wang is now in the process of filing amended returns and will need to repay the tax

2    liability, interest and possibly penalties.

3         In November 2019, the Kahn Respondents initiated the Arbitration against Wang and

4    Longstaff initially to recover hundreds of thousands of additional dollars for what the Kahn

5    Respondents claimed were unpaid contingent fees for the filing of Wang's tax returns.  Kahn

6    did not give notice of the Arbitration to Wang.  He apparently gave notice to Longstaff – who

7    had already been terminated as Wang's counsel.   Longstaff concealed the existence of the

8    Arbitration from Wang.

9         Nonetheless, Longstaff purported to represent Wang in the Arbitration under the guise

10   of being Wang's attorney-in-fact and attorney-at-law. He was neither of these things.

11        Respondents have conducted the Arbitration in a manner that violates the terms of the

12   underlying agreement containing the arbitration clause, in violation of the applicable rules of

13   the American Arbitration Association ("AAA"), and in a manner that violates Wang's rights

14   under AAA rules and applicable law.

15        It was only in September 2020 that Longstaff finally sent Wang's then-counsel (with

16   respect to other matters), Morgan, Lewis & Bockius LLP ("Morgan Lewis"), a copy of the

17   Kahn Respondents' operative claim in the Arbitration.  After obtaining counsel to represent

18   him in these matters, Wang sent notice to the arbitrator of his objection to arbitral jurisdiction.

19   But at a recent hearing, the arbitrator made clear that unless ordered otherwise, the Arbitration

20   would press forward against Wang – and if Wang did not make a general appearance, he

21   would be subject to sanctions.

22        The intervention of this Court is an unfortunate necessity.  Under the Federal

23   Arbitration Act – including its provisions relating to the New York Convention – it is the Kahn

24   Respondents' burden to demonstrate that Wang entered into an agreement to arbitrate disputes

25   between the parties.  They cannot meet that burden.  Wang did not sign the agreement from

26   which arbitral jurisdiction purportedly derives.  Longstaff's purported authority to sign

27   Wang's name to that agreement comes from a fraudulent power of attorney with a forged

28   signature.  A forged signature cannot create arbitral jurisdiction.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

4

1    But, in the alternative, to the extent this Court determines Wang must arbitrate disputes

2    with the Kahn Respondents, the Kahn Respondents must be compelled to initiate new

3    arbitration proceedings as against Wang.

4    Both the FAA and basic due process do not permit the Kahn Respondents to game the

5    system by spending nearly a year purporting to arbitrate claims against Wang without telling

6    him about it and then forcing him to shoehorn himself into that arbitration at the eleventh-

7    hour, deprived of the right to have a say in the most basic aspects of the arbitration (venue,

8    arbitrator selection, scope of arbitral issues, scope of discovery) Wang would have otherwise

9    been afforded under applicable rules.

10    Finally, regardless of the relief this Court grants Wang as against the Kahn

11    Respondents, Longstaff cannot be permitted to continue his efforts to fraudulently present

12    himself as a representative of Wang in the Arbitration.

13    Absent the intervention of this Court, the Kahn Respondents' and Longstaff's sham

14    will be allowed to continue and they will be rewarded for their fraud and forgery.  The relief

15    requested herein is essential to afford Wang the basic statutory, equitable, and due process

16    rights *any* litigant has – not to be forced to arbitrate claims when his or her signature was

17    forged to bind them to an arbitration agreement and, at a minimum, to be afforded basic due

18    process: timely notice of proceedings, and opportunity to dispute the claims presented, using

19    the applicable rules for arbitration.

20    Wang filed his Petition to Enjoin Arbitration on November 13, 2020.  It is not possible

21    to wait, however, for a final judgment on the merits of Wang's Petition.  The Arbitrator is

22    indifferent to Wang's objections to arbitral jurisdiction and Wang's intent to seek relief from a

23    federal district court.  The Arbitrator has instructed Wang's counsel that Wang should not wait

24    for a federal district court to rule on this issue because it would cause delay to the Arbitration.

25    Rather, the Arbitrator has stated that unless Wang makes a general appearance in the

26    Arbitration he will consider imposing sanctions on Wang.

27

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

2

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

## II.    FACTUAL BACKGROUND

### A.    Longstaff Initiates A Conspiracy To Defraud Wang

In or around 2016 and 2017, Wang built two new single-family residences in Palo Alto, California, at 3878 Magnolia Drive and at 3880 Magnolia Drive.  Wang subsequently transferred 3878 Magnolia Drive to Magnoliadrhomes LLC ("Magnolia").

In October 2017, Wang sold 3880 Magnolia Drive for \$4.1M.  In May 2018, Magnolia sold 3878 Magnolia Drive for \$4.1M (the two sales, collectively, the "Magnolia Transactions").

Because Wang is a foreign national, there was significant tax withholding, over \$1 million, from the proceeds of these sales by both the federal government and the State of California pending filing of Wang's tax returns for the calendar year of each sale (such withholdings, "FIRPTA Withholdings").

Guohua "Greg" Xiong ("Xiong"), as Wang's authorized agent, retained Longstaff to provide legal services to Wang in connection with Wang's tax refunds for the 2017 and 2018 calendar year and to provide legal services to Magnolia in connection with Magnolia's use of proceeds from 3880 Magnolia Drive and 3878 Magnolia Drive.  Declaration of Youlin Wang ("Wang Decl.") ¶¶ ¶ 4-5[2]; Declaration of Guohua "Greg" Xiong ("Xiong Decl.") ¶ 4.

Rather than provide legal services, Longstaff entered into a scheme involving Joseph Libkey ("Libkey") and the Kahn Respondents to defraud Wang at every turn.

### B.    Wang Is Defrauded Of Over \$3 Million

As a first step in his scheme, Longstaff claimed that he had a way for Wang and Magnolia to enjoy valuable tax deferral benefits in connection with the Magnolia Transactions. Longstaff introduced Xiong to Libkey, a colleague of Kahn's, who did business through Peak Financial Company ("Peak"), an entity that it appears Libkey wholly owns.  Xiong Decl. ¶ 5.

Longstaff and Libkey induced Xiong to enter into the DAT, which they represented was the mechanism through which Wang and Magnolia could enjoy the promised tax deferral

---

[2] Exhibit A to the Declaration of David I. Siegel is the English language version of the Declaration of Youlin Wang.

MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

1    benefits and through which Wang would receive immediate, full return of the funds after one

2    calendar quarter had passed.  Xiong Decl. ¶ 5.

3          The DAT, however, is against public policy and is not a legal tax deferral vehicle.

4    Instead, it was a vehicle for stealing from Wang.  At Libkey's direction, the $3,130,953.66 in

5    proceeds from the sale of 3878 Magnolia Drive were wired into an account established by

6    Peak and Libkey at US Bank in Colorado.  Shortly after they were deposited, Libkey withdrew

7    the funds, without authorization, and invested them in Blueprint Investment Fund, a company

8    that he controlled.

9          Despite repeated demands, those funds have never been returned to Wang.

10   **C.    Longstaff And The Kahn Respondents Enter Into The Forged Agreements**

11         Having managed to defraud Wang out of the proceeds of the sale of 3878 Magnolia

12   Drive, Libkey and Longstaff moved on to defrauding Wang, the U.S. Treasury and the State of

13   California out of the FIRPTA Withholdings.

14         Libkey introduced Longstaff to Kahn and his associate Luis Bulas-Felix ("Bulas-

15   Felix").  Kahn and Bulas-Felix purport to provide tax services that would help maximize

16   Wang's tax refunds from the FIRPTA Withholdings.

17         Kahn and Bulas-Felix were tasked, by Longstaff, with preparing Wang's 2017 and

18   2018 tax returns.  Wang needed to file returns in the U.S. because of the sale of the Magnolia

19   properties in California.  As a foreign national, he was subject to over $1 million in FIRPTA

20   Withholdings.  Absent other taxable events or complexities, none of which are reflected in the

21   returns that Kahn and Bulas-Felix prepared, the calculation of a FIRPTA refund or state law

22   equivalent is a simple deduction of the mandatory withholding minus any capital gains from

23   the sale.

24         But without Wang's or Xiong's knowledge, Longstaff entered into the Partially

25   Deferred Retainer and Fee Agreement ("PDRFA") and Refund Disbursement Service

26   Agreement ("RDS," and with the PDRFA, the "Agreements") with the Kahn Respondents, on

27   or about August 16, 2018.  Wang Decl. ¶ 12.  The Agreements purport to give the Kahn

28   Respondents a significant contingent fee interest in Wang's tax refunds.  The Kahn

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

7

Respondents were entitled to 100% of Wang's refunds above a certain baseline. Based on the refunds that the Kahn Respondents claimed on Wang's tax returns, this amounted to a nearly 50% contingency fee of Wang's total refunds. Such a contingency fee would not only be unconscionable but also illegal. Under IRS Circular 230, the IRS prohibits practitioners from collecting contingency fees for filing tax returns. *See* 31 C.F.R. § 10.27.

Rather than make any attempt to execute the Agreements with Wang or Xiong, Kahn and Longstaff worked together under a purported power of attorney authorizing Longstaff to act on Wang's behalf. This allowed Kahn and Longstaff to execute the Agreements without Wang or Xiong's knowledge.

Longstaff had no authority to sign the Agreements on Wang's behalf. Wang Decl. ¶ 12. Longstaff's purported authority came from a fraudulent power of attorney (the "2017 POA") dated November 13, 2017, that Longstaff created. *See* Wang Decl. ¶ 13, Exhibit A. The 2017 POA purportedly conferred on Longstaff broad authority to act on Wang's behalf. Wang did not sign the 2017 POA. Wang Decl. ¶ 13. Longstaff literally cut and pasted a signature he thought was Wang's and attached a notarization page from a different document. *See* Declaration of Patricia Fisher ("Fisher Decl.") ¶ 16.

But it was not enough for the Kahn Respondents to extract illegal and unconscionable fees from Wang. They also falsified Wang's tax records to artificially inflate Wang's refund – and thus the Kahn Respondents' contingency fee. Specifically, Kahn and Bulas-Felix grossly understated the capital gains on the sales of the Magnolia properties by inflating Wang's basis in them. As a result, the refund Wang received was more than $200,000 greater than it should have been for 2017 and more than $200,000 greater for 2018. The contingency fees that the Kahn Respondents are claiming represent the entire unlawful refunds obtained from false filings with the IRS and Franchise Tax Board as well as refund amounts that Wang was legitimately owed from the FIRPTA Withholding. The Kahn Respondents have already unlawfully pocketed over $200,000, including refund amounts that they directed that the California Franchise Tax Board wire directly to them and never remitted to Wang.

Once Wang discovered that the Kahn Respondents filed false tax returns on his behalf,

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

he has moved with alacrity and in good faith to correct these returns. He will be filing amended returns that will subject him to over $400,000 in additional tax liability, as well as interest and possible penalties.

**D.    Respondents Continue To Defraud Wang Through The Arbitration**

On November 6, 2019, Xiong terminated Longstaff as attorney for Wang and Magnolia. Xiong Decl. ¶ 6; Wang Decl. ¶ 6.

Unbeknownst to Xiong and Wang, through late 2019, Longstaff and the Kahn Respondents appeared to have a dispute relating to the Agreements and amounts allegedly owed by Wang thereunder. *See* Wang Decl. ¶ 9; Xiong ¶ Decl. 10. The fraudulent 2017 POA expired, on its terms, on January 31, 2019. So, Longstaff manufactured *another* fraudulent power of attorney, terminating January 31, 2020 (the "2019 POA"). *See* Declaration of David I. Siegel ("Siegel Decl.") ¶ 5, Exhibit G. Like before, Longstaff appears to have copied and pasted signatures from another document into the manufactured 2019 POA. *See* Fisher Decl. ¶ 16. Moreover, Longstaff falsified a notary acknowledgment to attach to the 2019 POA, as well. *See* Declaration of Jayesh A. Patel ("Patel Decl.") ¶¶ 4-8.

On or around November 20, 2019, the Kahn Respondents initiated the Arbitration. *See* Siegel Decl. ¶ 5, Exhibit E. The initial Arbitration claim was asserted against Longstaff, individually and as purported attorney-in-fact by way of power of attorney for Wang. *Id.* It alleges a breach of the Agreements for unpaid fees. *Id.* None of the Respondents notified Wang or Xiong that the Arbitration had been filed. Wang Decl. ¶ 9; Xiong ¶ Decl. 10.

On March 25, 2020, the Kahn Respondents filed an Amended Claim in the Arbitration (the "Amended Claim"). *See* Siegel Decl. ¶ 5, Exhibit D. The Amended Claim adds tortious interference and libel claims against Wang, for which the Kahn Respondents seek $10,000,000 in damages. *Id.*

The Amended Claim itself is a transparent fraud. It alleges that Wang, through Longstaff, tortiously interfered with Kahn's relationship with Bulas-Felix, who Kahn claims will no longer do business with him. *See* Siegel Decl. ¶ 5, Exhibit D. Bulas-Felix, conveniently, provided a sworn affidavit supporting Kahn's Amended Claim. *Id.* The act of

9

interference alleged is Longstaff sending a complaint about Kahn's company, FPG to the IRS and Longstaff's filing of a counterclaim in the Arbitration.  *Id.*

The entire arbitration exercise reeks in every sense as the next step in the scheme to defraud Wang.  These claims are frivolous to the point of absurdity.  But even absurd claims for $10 million in damages brought in arbitration are dangerous when they are prosecuted against Wang *in absentia*.

Kahn's initial Demand for Arbitration ("Demand") itself was calculated to avoid providing proper notice to Wang.  Instead of identifying Wang as the arbitration respondent, it lists FPG as the respondent, with FPG's contact information as the notice address for the respondent. *See* Siegel Decl. ¶ 5, Exhibit E.

The Demand also fabricates the existence of a Florida venue provision in the Agreements as the basis for having the arbitration heard in Miami.  *See* Siegel Decl. ¶ 5, Exhibit E.  The Agreements contain no venue provision.

Longstaff appeared in the Arbitration on December 10, 2019.  Despite having been terminated and lacking any authority to act on Wang's behalf, Longstaff represented himself as appearing on behalf of himself *and* Wang.  Longstaff purported to file an answer and counterclaims on behalf of Wang.  *See* Siegel Decl. ¶ 5, Exhibit C.  He purported to participate in arbitrator selection on behalf of Wang.  *Id.*  And he purported to make appearances in the Arbitration on behalf of Wang.  *Id.*  The Arbitration filings do not reflect that Longstaff acknowledged his insurmountable conflict of interest.

In the meantime, over the next several months, Respondents chose an arbitrator, agreed to a scope of discovery and discovery schedule, and set a date for the arbitral hearing, all to the detriment of Wang.

In mid-September 2020, Longstaff finally sent a copy of the Amended Claim to Morgan Lewis, Magnolia's former counsel.  Wang Decl. ¶ 8.  Upon information and belief, this is the first attempt made by any party to the Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated with Wang.  Morgan Lewis explained to AAA that it did not represent Wang with respect to the Arbitration.

10

1   On October 31, 2020, Wang's counsel, Grellas Shah LLP, provided AAA and the

2   parties to the Arbitration notice that Wang objected to arbitral jurisdiction and that Wang

3   intended to file a petition to enjoin the Arbitration.  *See* Siegel Decl. ¶ 5, Exhibit I.

4   On November 6, 2020, Bernard D. Beitch, Esq. (the "Arbitrator"), the arbitrator

5   conducting the Arbitration, held a telephonic status conference at which Wang's counsel was

6   requested to be present.  Declaration of Dhaivat H. Shah ("Shah Decl.") ¶ 3.  Grellas Shah

7   made a limited appearance for the purpose of answering any questions regarding its objections

8   and its intent to seek judicial relief.  Shah Decl. ¶ 3.  Wang's counsel made clear that no

9   general appearance was being made and that Wang objected to any purported jurisdiction

10  there.  Shah Decl. ¶ 4.  The Arbitrator acknowledged that Wang would be seeking to enjoin the

11  Arbitration but demanded that Wang nevertheless make a general appearance through counsel

12  immediately, and without waiting for any judicial ruling on his petition, so as to avoid any

13  delay to the Arbitration.  Shah Decl. ¶ 5.  The Arbitrator further stated that if Wang waited for

14  a judicial ruling before making a general appearance, he would consider imposing sanctions on

15  Wang.  Shah Decl. ¶ 8.  The Arbitrator will be holding another telephonic status conference on

16  December 3, 2020.  Shah Decl. ¶ 7.

17  **III.    This Court Has Jurisdiction And Venue Is Proper.**

18  This Court has original jurisdiction over this action because this is a civil action

19  concerning an arbitration falling under the Convention on the Enforcement and Recognition of

20  Foreign Arbitral Awards ("NY Convention").  *See* 9 U.S.C. § 203 ("An action or proceeding

21  falling under the Convention shall be deemed to arise under the laws and treaties of the United

22  States").

23  Venue is also proper in this district.  *See* 9 U.S.C. § 204 ("An action or proceeding over

24  which the district courts have jurisdiction pursuant to section 203 . . . may be brought in any

25  such court in which save for the arbitration agreement an action or proceeding with respect to

26  the controversy between the parties could be brought"); *see also Textile Unlimited, Inc. v.*

27  *A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (holding that petitions regarding arbitration

28  can be brought in any district that has jurisdiction to hear the dispute, notwithstanding any

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

contractual provisions in the arbitration agreement designated where arbitration itself is to occur).

## IV. Emergency Injunctive Relief Is Warranted

The standard for obtaining a temporary restraining order is identical to the standard for obtaining a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The requirements for a temporary restraining order are, however, less rigid since a temporary restraining order's duration is shorter than a preliminary injunction. *See L.A. Unified Sch. Dist. v. U.S. Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981).

Wang must show: 1) a likelihood of success on the merits; (2) the possibility of irreparable injury; (3) a balance of hardships favoring the moving party; and (4) that public policy favors such an order. *See Textile*, 240 F.3d at 786 (applying the preliminary injunction standards to enjoin an arbitration).

The Ninth Circuit also recognizes an alternative formulation that the moving party can meet its burden by "demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Textile*, 240 F.3d at 786.

### A. Wang Is Likely To Succeed On The Merits Of His Petition To Enjoin The Arbitration

A likelihood of success on the merits is the most important factor when considering whether to grant a temporary restraining order or a preliminary injunction. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Wang must show only likely, rather than certain, success. *See Future Domain Corp. v. Trantor Sys. Ltd*., No. C 93 0812 TEH, 1993 WL 270522, at *4 (N.D. Cal. May 3, 1993) ("It is well established that a party seeking a preliminary injunction must present a prima facie case but need not show that it is certain to win.") (citing Wright and Miller, *11 Federal Practice and Procedure: Civil*, § 2948 at 452). Wang is likely to succeed on the merits of his Petition.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

**1.     Wang is Likely to Prevail in the Petition to Enjoin Arbitration Because He Is Not Party To An Arbitration Agreement.**

   **a.     The Court Has Authority To Enjoin An Arbitration Under The New York Convention And FAA.**

Chapter 2 of the Federal Arbitration Act ("FAA"), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), governs arbitrations that involve a non-U.S. citizen.  *See* 9 U.S.C. § 206.  Wang is a citizen of China.  Wang Decl. ¶ 2.  Therefore, the only legal grounds under which Wang may be compelled to arbitrate is under Chapter 2 of the FAA and the New York Convention.

The FAA empowers federal district courts to enjoin arbitration proceedings.  *See Textile*, 240 F.3d at 784-87 (holding that arbitration proceedings may be enjoined if the moving party meets the requirements for preliminary injunctive relief); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (stating that courts have the power to enjoin arbitral proceedings governed by the New York Convention); *DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc.*, No. 14-CV-01527-MSK-KMT, 2015 WL 5693560, at *5 (D. Colo. Sept. 29, 2015) ("[I]t is clear to this Court that the weight of authority . . . has embraced a more expansive view of federal jurisdiction under the Convention that includes claims seeking simply to stay an arbitration."); *CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 375 (S.D.N.Y. 2014) (holding that federal district courts have jurisdiction to enjoin arbitration proceeding under the New York Convention).

   **b.     The New York Convention's Requirements For Arbitral Jurisdiction Cannot Be Met Because Wang Was Not Party To An Arbitration Agreement.**

        **i.     An Agreement To Arbitrate Is The Central Requirement Of The New York Convention.**

A party seeking to compel arbitration under the New York Convention and Chapter 2 of the FAA must show four things:

(1) there is an *agreement* in writing within the meaning of the Convention; (2) the *agreement* provides for arbitration in the territory of a signatory of the Convention; (3) the *agreement* arises out of a legal relationship, whether contractual or not, which is

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

13

considered commercial; and (4) a party to the *agreement* is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc*., 583 F.3d 647, 654–55 (9th Cir. 2009) (emphasis added); *accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-05609 SI, 2011 WL 2650689, at *2 (N.D. Cal. July 6, 2011).

The core of each element of arbitral jurisdiction is the existence of an agreement to arbitrate. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212-14 (9th Cir. 2016) (holding that there was no arbitral jurisdiction under Chapter 2 of the FAA because the contract containing the arbitration clause was a "mere sham"); *see also AT & T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.").

### ii.      The Court, Not An Arbitrator, Determines Whether Wang Is Subject to Arbitral Jurisdiction.

Challenges to the existence of the contract containing an arbitration clause must be resolved by a court.  In *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co*, 925 F.2d 1136 (9th Cir. 1990), a party contended that a contract containing an arbitration clause was never formed because the person purporting to execute the contract on its behalf lacked authority. The Ninth Circuit held that only a court could determine arbitrability under the circumstances because "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate." *Three Valleys,* 925 F. 2d at 1140-41 (emphasis in original).  *Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

And the RDS itself states that questions of arbitrability must be decided by a court.  *See See* Siegel Decl. ¶ 5, Exhibit F (stating that the "Dispute Clause . . . does not include disputes about the validity, coverage or scope of this Dispute Clause or any part of this Dispute Clause. . . . All such disputes are for a court and not an Arbitrator to decide.").

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

### iii.    The Kahn Respondents Bear The Burden Of Proving the Existence Of An Agreement To Arbitrate.

The Kahn Respondents bear the burden of proving the existence of an agreement to arbitrate. *See Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) ("As the party seeking to compel arbitration, Samsung bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.") (citation and internal quotation marks omitted); *Gelow v. Central Pacific Mortg. Corp.*, 560 F. Supp. 2d 972, 978 (E.D. Cal. 2008) ("The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party.").

Where there are genuine disputes of material fact over the existence of a contract as the basis of arbitral jurisdiction, courts cannot resolve the issue as a matter of law and must move summarily to trial:

> Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

*Three Valleys*, 925 F.2d at 1141 (citation and internal quotation marks omitted); *accord Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) ("[W]hen one party disputes the making of the arbitration agreement, the Federal Arbitration Act requires that the court proceed summarily to the trial thereof before compelling arbitration under the agreement.") (citation, bracketing and internal quotation marks omitted); *Chavez v. Bank of America*, No. C 10–653 JCS, 2011 WL 4712204, at *12 (N.D. Cal. Oct. 7, 2011) (denying motion to compel arbitration where there was a material dispute of fact over the existence of the agreement and reserving the matter for a bench trial).

### iv.    The Kahn Respondents Cannot Satisfy Their Burden Of Showing There Was An Agreement To Arbitrate.

The Kahn Respondents cannot satisfy their burden of showing the existence of an agreement to arbitrate because Wang was not a party to an arbitration agreement.

Wang did not sign the RDS or know about it.  Wang Decl. ¶ 12.  Wang neither agreed

or consented to arbitration with Kahn.  Wang Decl. ¶ 12.

Longstaff purported to sign the RDS on Wang's behalf as his purported "POA."  But Wang never gave Longstaff such broad written authority to act as his attorney-in-fact.  Wang Decl. ¶ 13.

Rather, Longstaff purports to derive his authority to sign the RDS on Wang's behalf from a document that is itself fraudulent.  There is a document dated November 13, 2017, that purports to give Longstaff broad authority to act on Wang's behalf and supposedly bears Wang's signature.  As Wang himself attests, however, he never signed this document.  Wang Decl. ¶ 13.  Rather, expert analysis shows that Wang's signature is not authentic and is the product of an amateur cut-and-paste job.  Fisher Decl. ¶ 16.  Further, the notary acknowledgment attached to the fraudulent document is taken from an entirely different document that Wang had notarized on that date.

Wang did not sign the RDS.  Wang Decl. ¶ 13.  Longstaff had no authority to sign the RDS on Wang's behalf.  Wang Decl. ¶ 12.  Therefore, Wang never agreed to arbitrate.

Courts commonly enjoin arbitration proceedings where, as here, an arbitration is commenced in the absence of an agreement to arbitrate.  *See Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC ANX, 2014 WL 3721197, at \*2 (C.D. Cal. July 22, 2014) (holding that a district court may enjoin arbitration proceedings that are not governed by a valid and binding arbitration agreement); *see also Societe Generale de Surveillance, S.A. v. Raytheon European Management and Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant power to compel arbitration where it is present."); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 219 (E.D.N.Y. 2013) ("[W]here a court determines that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings.").

### c.    Wang Did Not Consent To Arbitral Jurisdiction Through Longstaff's Conduct During The Arbitration.

Longstaff's conduct during the Arbitration cannot be imputed to Wang and cannot be

16

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

considered as Wang's consent to arbitrate.

For over nine months after the Arbitration was filed, Wang had no knowledge of its existence. Wang Decl. ¶¶ 9-10. The Kahn Respondents only sent notice of the Arbitration to Longstaff. Longstaff concealed the existence of the Arbitration from Wang. Wang Decl. ¶¶ 9-10; Xiong Decl. ¶ 10.

Instead, Longstaff purported to appear in the Arbitration as Wang's attorney-at-law and attorney-in-fact. At the time he did so, Wang had already terminated Longstaff as his attorney and made clear that he had no authorization to act on Wang's behalf in any capacity. Wang Decl. ¶ 6; Xiong Decl. ¶ 6.

Longstaff engaged in a number of acts purportedly on Wang's behalf, including filing an Answer, asserting Counterclaims, participating in arbitrator selection, and participating in a preliminary conference. Given that Wang did not authorize Longstaff to act on his behalf, none of these acts may be imputed to Wang.

Longstaff and the Kahn Respondents have, apparently, fabricated a second fraudulent document, this time dated February 1, 2019, which purports to give Longstaff broad powers to act as Wang's attorney in fact through early 2020. Presumably this is an attempt to sanction Longstaff's representation of Wang in the Arbitration.

This document, however, is not authentic. Wang attests that he never signed it. Wang Decl. ¶ 14. Expert analysis shows that Wang's signature on the power of attorney was cut-and-pasted from another document. Fisher Decl. ¶ 16. Further, there is an Acknowledgement attached to the power of attorney that states that Wang signed the document in the presence of California notary Jayesh Patel in Santa Clara County on February 5, 2019. Wang was not in the United States on that date. Wang Decl. ¶ 14. Mr. Patel provides his sworn declaration that his notary ledger shows that Wang never signed any document in his presence on February 5, and that the Acknowledgement is itself a forgery. Patel Decl. ¶¶ 4-8. That is not the form of Acknowledgement Mr. Patel uses, it is not his signature on the Acknowledgment, and it is not his notary stamp on the Acknowledgment. Patel Decl. ¶¶ 4-8.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

1

2        **2.        Wang Is Likely To Prevail In The Petition To Enjoin Arbitration Because**
         **The Arbitration Has Not Been Conducted With Due Process.**

3

4        **a.        The Court Has The Authority To Intervene When The**
                    **Conduct Of A Pending Arbitration Fundamentally Violates**
5                   **Applicable Law**

6        The Ninth Circuit has held that immediate judicial intervention in arbitration

7    proceedings is appropriate to prevent "severe irreparable injury" from errors that "cannot

8    effectively be remedied on appeal from the final judgment" and that result in "manifest

9    injustice." *See Aerojet-Gen. Corp. v. Am. Arbitration Ass'n,* 478 F.2d 248, 251 (9th Cir. 1973)

10   (holding that in such cases "the courts should be free to prevent a manifest injustice");

11   *Sunshine Min. Co. v. United Steelworkers of Am., AFL-CIO, CLC*, 823 F.2d 1289, 1294 (9th

12   Cir. 1987) (noting that review of nonfinal decisions of an arbitrator are not "precluded" under

13   Ninth Circuit precedent); *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am.,*

14   *AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987) (decisions by an

15   arbitrator prior to the issuance of a final award can be reviewed "should the circumstances

16   warrant").

17       The Ninth Circuit has yet to state with specificity what gives rise to the type of "severe

18   irreparable injury" that justifies immediate judicial intervention in arbitration proceedings. Its

19   ruling in *Aerojet-Gen.*, however, suggests that circumstances involving "partiality on the part

20   of an arbitrator," an arbitrator that "exceeded his authority" or where an arbitration award

21   would be rendered in "manifest disregard of the law" as potential instances that might

22   constitute the kind of "severe irreparable injury" warranting immediate judicial review. *See*

23   *Aerojet-Gen. Corp.,* 478 F.2d at 252.

24       **b.        The Arbitration Has Been Conducted Without Providing Proper**
                    **Notice To Wang**
25

26       This Court is empowered to act to ensure that Wang is able to receive a fundamentally

27   fair hearing, which includes receiving proper notice of the proceeding. *See Carpenters 46*

28   *Northern California Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

18

1996) ("Although deference must be given to an arbitrator's decisions concerning procedural issues, it is generally recognized that the courts may consider a claim that a party to an arbitration has been denied a fundamentally fair hearing."); *Jones v. Flowers*, 547 U.S. 220, 240 (2006) (holding that the Fourteenth Amendment's Due Process Clause requires "that a State must provide an individual with notice and opportunity to be heard before the State may deprive him of his property").

A fundamentally fair hearing requires that a party to a foreign arbitration be able to present its case. *See Sunshine Mining Co. v. United Steelworkers of America*, 823 F.2d 1289, 1295 (9th Cir.1987) (A "hearing is fundamentally fair if it meets the 'minimum requirements of fairness"). A hearing meets "the minimal requirements of fairness" if it provides adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir. 1964). Under the New York Convention, for notice of arbitration proceedings to be proper, it must meet United States standards of procedural due process. *See Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 975 (2d Cir. 1974) ("This provision essentially sanctions the application of the forum state's standards of due process."). Notice must be "reasonably calculated, under all the circumstances, to apprise interested persons of the pendency of the action and afford them an opportunity to present their objections" in order to comply with due process. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, however, Respondents took steps to deliberately ensure that Wang did not receive proper notice, beginning with the Demand for Arbitration. Instead of identifying Wang as the arbitration respondent, the Demand for Arbitration lists FPG as the respondent. The Kahn Respondents made no attempt to serve the Demand for Arbitration or Claim on Wang when they filed the Arbitration in November 2019. Wang Decl. ¶ 9-10; Xiong Decl. ¶ 10. They served these documents only on Longstaff, who concealed the existence of the Arbitration for over nine months. Wang did not, in fact, receive notice of the Arbitration proceeding until Longstaff sent a copy of the Amended Claim to Morgan Lewis, former counsel to Magnolia, in September 2020. Wang Decl. ¶ 10. This was the *first* attempt made

19

by any party to the Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated with Wang. Wang thus did not receive proper notice of the arbitration.

And the prejudice to Wang was exacerbated by Longstaff's conduct. Not only did Longstaff conceal the existence of the Arbitration from Wang, but Longstaff also masqueraded as Wang's attorney-in-fact and attorney-at-law for nine months. But Longstaff was not merely an inept representative. Wang had already terminated Longstaff – he was not Wang's representative at all.

Wang would suffer severe irreparable injury if he were forced to now join the Arbitration that has been going on for almost a year. Numerous decisions have been made and positions taken, purportedly on Wang's behalf. Those critical decisions included arbitrator selection, venue of the arbitration, the scope of legal defenses pled, the scope of counterclaims asserted, arbitral admissions in the pleadings, the scope of discovery and scheduling, what discovery to propound and responses to discovery, all done without Wang's consent. In fact, Longstaff – purportedly on Wang's behalf - has affirmed and admitted to the validity of the illegal contingent fee Agreements that he fraudulently signed on Wang's behalf. *See* Siegel Decl. ¶ 5, Exhibit C.

The lack of notice and lack of representation are the kind of "severe irreparable injury" that justifies immediate judicial intervention by this Court. Accordingly, the Court should at a minimum enjoin the Kahn Respondents from continuing the current Arbitration as to Wang so that a new arbitration may be filed in a manner that comports with due process.

    c.  **The Arbitration Has Been Conducted in Violation Of AAA Rules**

Courts are empowered to ensure that contractual terms found in arbitration agreements which specify the manner in which arbitration is to proceed are fully enforced. *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that enforcing "rules according to the terms of the agreement is fully consistent with the goals of the FAA"); *Allstate Ins. Co. v. OneBeacon Am. Ins. Co.*, 989 F. Supp. 2d 143, 147 (D. Mass. 2013) (holding that if the terms of an arbitration agreement are violated, a court can

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    order arbitration to proceed according to the agreement's terms); *Farrell v. Subway Int'l,*

2    *B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017, at *4 (S.D.N.Y. Mar. 23, 2011) (staying

3    arbitration on the basis that federal law directs that the court enforce the terms of the parties'

4    agreement); *Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.,* No. 00 C 5257, 2000 WL

5    1724661, at *2 (N.D. Ill. Nov. 20, 2000) (holding that where party is merely seeking to

6    enforce "a benefit explicitly conferred by a provision" of the parties' agreement, the party does

7    not need to wait "until the post-award stage to complain").

8        Here, the arbitration agreement specifies that the arbitration must be conducted under

9    "the rules of the arbitration administrator in effect when the arbitration is started." *See* Siegel

10    Decl. ¶ 5, Exhibit F. The Kahn Respondents initiated the Arbitration with the AAA. Per AAA

11    rules, the arbitration should be conducted under the AAA's International Dispute Resolution

12    Procedures ("IDRP") because Wang is a Chinese citizen. *See* American Arbitration

13    Association, International Dispute Resolution Procedures, Rule 1 (2014); Wang Decl. ¶ 2.

14    Instead, however, the Arbitration has been unlawfully conducted under AAA's Commercial

15    Arbitration Rules. This has a material adverse impact on Wang, as for example under Rule

16    12.4 of the IDRP, Wang had the right to request that the arbitrator have a different nationality

17    as that of the parties. *See* AAA IDRP Rule 12 (2014). Wang has been deprived of this right.

18    Other rights have been denied him, such as Wang's right to participate in forum selection,

19    arbitrator selection, and a preliminary hearing to set the scope and timing of discovery as well

20    as time of hearing.

21        At a minimum, this Court should enjoin the Kahn Respondents from continuing the

22    Arbitration against Wang so that a new arbitration may be initiated in a manner that ensures

23    that the procedural requirements specified within the RDS (which would have required

24    compliance with AAA rules here) are fully enforced. *See Volt*, 489 U.S. at 479.

25   **B.**    **Wang Will Suffer Irreparable Harm Absent Injunctive Relief.**

26        Being forced to arbitrate claims that are not subject to arbitration constitutes irreparable

27    harm. *See Pension Plan for Pension Trust Fund for Operating Engineer, v. Weidway*

28    *Construction, Inc.*, 920 F. Supp. 2d 1034, 1041, 1049 (N.D. Cal. 2013) (finding irreparable

1    harm from being forced to arbitrate non-arbitrable claims); *Herbert Simms v. Roven*, 548 F.

2    Supp. 2d 759, 766 (N.D. Cal. 2008) (same); *Sykes v. Escueta,* No. 10–3858 SC,  2010 WL

3    4942608, at *4 (N.D.Cal. Nov. 29, 2010) (finding that failure to stay the arbitration in that case

4    would leave plaintiff with "no adequate remedy at law to recover the monetary and human

5    capital it would expend defending itself in arbitration); *see also  Merrill Lynch Inv. Managers*

6    *v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003) ("[M]ovant would be irreparably harmed

7    by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for

8    which any award would not be enforceable").

9        If the Court does not issue a temporary restraining order and preliminary injunction,

10    Wang will be forced to participate in a non-arbitrable dispute.  As such, injunctive relief is

11    necessary in order to prevent Wang from further suffering irreparable harm.

12    **C.        The Balance of Hardships Favors Wang.**

13        To determine whether the balance of hardships favors the moving party, courts must

14    "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*,

15    571 F.3d 960, 988 (9th Cir. 2009).

16        The balance of hardships favors Wang.  Wang never agreed to arbitrate any disputes

17    with the Kahn Respondents.  Purported arbitral jurisdiction was premised on fraud and forged

18    documents.  Without provisional relief, Wang will be forced to spend time and resources in a

19    proceeding that has no jurisdiction over him and in which he should never have been sued.

20    And the Arbitration itself does not comport with even minimum standards of due process.  It

21    has been prosecuted against Wang *in absentia*, affording Wang no opportunity to exercise

22    basic rights, such as his right to participate in arbitrator and venue selection.  The Arbitration

23    does not even comply with AAA rules.

24        By contrast, there is no hardship to Respondents from enjoining the Arbitration until

25    such time as the Court can rule on Wang's Petition and determine whether a permanent

26    injunction should issue.  If the Court ultimately denies the Petition, at most the Kahn

27    Respondents will be temporarily delayed in prosecuting their claims in Arbitration.  As for

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

MOTION FOR TRO AND OSC RE PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

1   Longstaff, it is unclear what hardship he could possibly suffer from being enjoined from

2   purporting to act as Wang's attorney-in-fact or attorney-in-law.

3       The balance of equities therefore favors granting a preliminary injunction.

4   **D.  Enjoining the Arbitration Serves the Public Interest.**

5       There is no public policy in favor of forcing parties to arbitrate where there was never

6   an agreement to arbitrate.  "The federal policy favoring arbitration does not apply to the

7   determination of whether there is a valid agreement to arbitrate between the parties; instead

8   ordinary contract principles determine who is bound."  *Corner v. Micor, Inc*., 436 F.3d 1098,

9   1104 n.11 (9th Cir. 2006) (declining to apply the liberal federal policy favoring arbitration

10  where the question is whether a party is bound to arbitration instead of whether a particular

11  issue is arbitrable); *Charles Schwab & Co. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL

12  447370, at *8 (D. Ariz. Feb. 4, 2010) (granting preliminary injunction and holding that public

13  policy supported injunctive relief because there was no agreement to arbitrate)*.*

14      Enjoining the Arbitration serves the public interest because it honors the rule that the

15  arbitration device is a powerful tool of dispute resolution between willing parties while

16  preventing an abusive and unjust exercise of arbitral jurisdiction.  Moreover, it is in the

17  public's interest to protect due process, which have been denied to Wang thus far in the

18  Arbitration.

19  **E.  Wang Will Suffer Irreparable Harm If A Temporary Restraining Order Is Not Granted Pending Hearing On A Motion For Preliminary Injunction.**

20

21      Exigent circumstances especially necessitate a temporary restraining order.  If the

22  Arbitration is allowed to proceed while the Court considers a preliminary injunction, the

23  Respondents will continue to prejudice Wang's rights in a manner that is incurable.

24      First, during the November 6, 2020, Arbitration status conference, the arbitrator

25  insisted that Wang make a general appearance in the Arbitration on or before December 3,

26  2020, or face sanctions.  Shah Decl. ¶ 8.  The arbitrator stated that Wang should not wait for a

27  judicial ruling on a petition to enjoin the Arbitration and he did so at his peril.  Shah Decl. ¶¶

28  5, 8.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1    This leaves Wang in an untenable position. Either he appears in the Arbitration by

2    December 3, 2020, potentially waiving rights to challenge arbitrability and suffering the

3    recognized irreparable harm of participating in an arbitration of a non-arbitrable dispute or he

4    risks suffering unspecified monetary and/or non-monetary sanctions.

5    Second, emergency relief is necessary to prevent Longstaff from inflicting further harm

6    upon Wang. Longstaff has already made numerous decisions that would otherwise be binding

7    on Wang, and that are directly contrary to Wang's interests. The most recent episode was

8    revealed at the November 6, 2020, status conference, where the Kahn Respondents' counsel

9    stated that Longstaff served discovery responses containing "admissions" that Longstaff had

10   authority to represent Wang in the Arbitration. Shah Decl. ¶ 6. It is unclear what other

11   statements and "admissions" Longstaff has made on Wang's behalf or however many more he

12   will make prior to a hearing on preliminary injunctive relief.

13   Third, if the Arbitration is not stayed pending ruling on the Motion, and if this Court

14   ultimately determines that Wang must participate in the Arbitration, Wang's ability to defend

15   himself will be severely compromised.

16   According to the Arbitration Scheduling Order, written discovery requests were

17   required to have been served on October 29, 2020. Expert disclosures, witness disclosures,

18   and exhibit lists are all due by January 2, 2021. Depositions must be completed by February 1,

19   2021. Under this schedule, nearly all, if not all, discovery will be completed by the time the

20   Motion is heard.

21   Thus, only a temporary restraining order can give Wang necessary interim protection

22   while the Court determines whether a preliminary injunction should issue.

23   **F.    A Minimal Bond is Appropriate**

24   Federal Rule of Civil Procedure 65(c) provides that a temporary restraining order

25   and/or preliminary injunction will only issue "if the movant gives security in an amount that

26   the court considers proper to pay the costs and damages sustained by any party found to have

27   been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The amount of the bond is

28   within the discretion of this Court. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Cir. 2000).  Where there is no evidence that the enjoined or restrained party will suffer material harm as a result of the injunction, the Court may set the bond amount at zero. *See Connecticut General Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

The facts of this case warrant only a minimal bond because there is no evidence that Respondents will suffer a material harm from a temporary restraining order and preliminary injunction.  At most, it will stay the arbitration for the period required for this Court to rule on the Petition.  The bond should therefore be zero or a nominal amount.

**G.    Wang Has Complied With the Requirements of Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65-1**

Wang has fully complied with Rule 65 of the Federal Rules of Civil Procedure and Local Rule 65-1 for issuance of a Temporary Restraining Order and an Order to Show Cause why a preliminary injunction should not issue.  Wang has submitted declarations and other evidence showing that he will be irreparably harmed without an order granting its Motion.  Wang has also fully complied with the notice requirements of Local Rule 65-1.  Counsel for Wang provided Respondents with notice of the Motion for a Temporary Restraining Order and Order to Show Cause regarding Preliminary Injunction.

**V.    CONCLUSION**

For the above reasons, Wang asks this Court to grant his Motion for Temporary Restraining Order and Order to Show Cause enjoining the Kahn Respondents from continuing the Arbitration as against Wang and enjoining Longstaff from purporting to represent or otherwise act on behalf of Wang.

Respectfully submitted,

Dated:  November 20, 2020          GRELLAS SHAH LLP

By:    /S/
                                                Dhaivat H. Shah, Esq.
                                                Attorneys for Petitioner
                                                YOULIN WANG

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014