GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
ERIN M. ADRIAN, ESQ. (SBN: 228718)
(ema@grellas.com)
CHRISTOPHER CIVIL, ESQ. (SBN: 294477)
(cc@grellas.com)
SURYA KUNDU, ESQ. (SBN: 308099)
(sk@grellas.com)

20400 Stevens Creek Blvd, Suite 280
Cupertino, CA  95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Petitioner
YOULIN WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YOULIN WANG, an individual<br><br>Petitioner,<br><br>v.<br><br>RICHARD KAHN, an individual; and FORENSIC PROFESSIONALS GROUP USA, INC., a Florida corporation; and DEREK LONGSTAFF, an individual,<br><br>Respondents. | Case No.: 5:20-cv-08033-LHK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  April 8, 2021<br>Time:           1:30 PM<br>Judge:          Lucy H. Koh<br>Courtroom:      8<br><br>Date Action Filed:  Nov. 13, 2020 |

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

# TABLE OF CONTENTS

Page

I.  STATEMENT OF ISSUES ............................................................. 1

II.  INTRODUCTION ..................................................................... 3

III.  FACTUAL BACKGROUND ......................................................... 5

    A.  Longstaff Initiates A Conspiracy To Defraud Wang ..................................... 5
    B.  Wang Is Defrauded Of Over $3 Million ........................................... 6
    C.  Longstaff And The Kahn Respondents Enter Into
        The Forged Agreement .......................................................... 6
    D.  Respondents Continue To Defraud Wang Through
        The Arbitration .................................................................. 8

IV.  THIS COURT HAS JURISDICTION AND VENUE IS PROPER ......................... 10

V.  A PRELIMINARY INJUNCTION IS WARRANTED ................................... 10

    A.  Wang Is Likely To Succeed On The Merits Of His
        Petition To Enjoin The Arbitration Because He Is Not A
        Party To Any Agreement To Arbitrate .......................................... 11

        1.  Wang Is Likely To Prevail In The Petition To
            Enjoin Arbitration Because He Is Not Party To An
            Arbitration Agreement ..................................................... 11

            a.  The Court Has Authority To Enjoin An
                Arbitration Under The New York Convention
                And FAA ........................................................... 11

            b.  The New York Convention's Requirements
                For Arbitral Jurisdiction Cannot Be Met Because
                Wang Was Not Party To An Arbitration Agreement ............. 12

                i.  An Agreement To Arbitrate Is The Central
                    Requirement Of The New York Convention ............... 12

                  ii.  The Court, Not An Arbitrator,
                    Determines Whether Wang Is Subject
                    To Arbitral Jurisdiction ................................. 13

                iii.  The Kahn Respondents Cannot Satisfy
                    Their Burden Of Showing There Was An Agreement
                    To Arbitrate ............................................. 13

            c.  Wang Did Not Consent To Arbitral
                Jurisdiction Through Longstaff's Conduct
                During The Arbitration ........................................... 14

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

i

B.   Wang Will Suffer Irreparable Harm Absent Injunctive Relief ........................ 16

   1.   Wang Faces Irreparable Harm From Having
      To Arbitrate Non-Arbitrable Claims .................................................... 17

   2.   Wang Faces Irreparable Harm Because
      The Arbitration Has Not Been Conducted
      With Due Process ............................................................................... 18

      a.   A Court Has The Ability To Intervene
         When An Arbitration Irreparably
         Injures A Party By Depriving Him Of
         Due Process .............................................................................. 18

      b.   The Arbitration Is Fundamentally
         Unfair Because Wang Has Not Been
         Provided Proper Notice ............................................................ 19

      c.   This Fundamentally Unfair Arbitration
         Has Been Conducted In Violation Of
         AAA Rules ................................................................................ 21

C.   The Balance Of Hardships Favors Wang ............................................. 23

D.   Enjoining The Arbitration Serves The Public Interest ...................................... 23

F.   A Minimal Bond Is Appropriate ........................................................ 24

VI.   CONCLUSION ................................................................................................. 24

Grellas Shah LLP
20400 Stevens Creek Blvd., Suite 280
Cupertino, CA 95014

## TABLE OF AUTHORITIES

### Cases

Page

*Aerojet-Gen. Corp. v. Am. Arbitration Ass'n,*

    478 F.2d 248 (9th Cir. 1973) ......................................................................... 3, 16, 17, 19

*Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...................................... 14

*Allstate Ins. Co. v. OneBeacon Am. Ins. Co.,*

    989 F. Supp. 2d 143 (D. Mass. 2013) .......................................................................... 21

*Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935 (9th Cir. 1987) ............................ 10, 11

*AT & T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643 (1986) .................................. 12

*Balen v. Holland America Line Inc.*, 583 F.3d 647 (9th Cir. 2009) ........................................ 12

*Carpenters 46 Northern California Counties Conference Bd. v.*

    *Zcon Builders*, 96 F.3d 410 (9th Cir. 1996) .......................................................... 18, 19

*Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*,

    816 F.3d 1208 (9th Cir. 2016) ............................................................................... 2, 12

*Charles Schwab & Co. v. Reaves*,

    No. CV-09-2590-PHX-MHM, 2010 WL 447370 (D. Ariz. Feb. 4, 2010) .......... 23, 24

*Connecticut General Life Ins. v. New Images of Beverly Hills*,

    321 F.3d 878 (9th Cir. 2003)........................................................................................ 24

*Corner v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006) ..................................................... 23, 24

*CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367 (S.D.N.Y. 2014) ................. 11, 12

*Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ............................. 11

*DynaResource de Mexico, S.A. de C.V. v. Goldgroup Res., Inc.*,

    No. 14-CV-01527-MSK-KMT, 2015 WL 5693560 (D. Colo. Sept. 29, 2015) .... 11, 12

*Farrell v. Subway Int'l, B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017

    (S.D.N.Y. Mar. 23, 2011) ......................................................................................... 21

*Ficek v. Southern Pacific Co.,* 338 F.2d 655 (9th Cir. 1964) ................................................. 20

///

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

*Future Domain Corp. v. Trantor Sys. Ltd.*,

    No. C 93 0812 TEH, 1993 WL 270522 (N.D. Cal. May 3, 1993) ............................ 11

*Gelow v. Central Pacific Mortg. Corp.*, 560 F. Supp. 2d 972 (E.D. Cal. 2008).................... 13

*Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355 (Fed. Cir. 2011) .................... 22

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ........................................ 24

*Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287 (2010) ...................... 13

*Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759 (N.D. Cal. 2008) .............................. 17

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC ANX,

2014 WL 3721197 (C.D. Cal. July 22, 2014) ........................................... 14, 17, 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,

    No. C 09-05609 SI, 2011 WL 2650689 (N.D. Cal. July 6, 2011) ............................ 12

*Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.*,

    No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000) .................................. 21

*Jones v. Flowers*, 547 U.S. 220 (2006) ........................................................................ 18, 19

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*,

    341 F.3d 987 (9th Cir. 2003) ................................................................................ 18

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*,

    107 F.3d 979 (2d Cir. 1997) ................................................................................ 17

*McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*,

    105 F.3d 1192 (8th Cir. 1997) ........................................................................ 17, 18

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125 (2d Cir.2003) .................. 17, 18

*Millmen Local 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v.*

    *Wells Exterior Trim*, 828 F.2d 1373 (9th Cir. 1987) ............................................ 19

*Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152 (9th Cir. 2016) ............................ 18

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .................................. 20

*Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017) ....... 13

*PaineWebber, Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990) .............................................. 18

///

iv

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

*Parsons & Whittemore Overseas Co., Inc. v.*

   *Societe Generale de L'Industrie du Papier*, 508 F.2d 969 (2d Cir. 1974) .................. 20

*Pension Plan for Pension Tr. Fund for Operating Engineers v.*

   *Weldway Const., Inc*., 920 F. Supp. 2d 1034 (N.D. Cal. 2013) .....................2, 3, 16, 17

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,*

   204 F.3d 867 (9th Cir. 2000) ........................................................... 16

*Republic of Ecuador v. Chevron Corp*., 638 F.3d 384 (2d Cir. 2011) .................................... 11

*Societe Generale de Surveillance, S.A. v.*

   *Raytheon European Management and Sys. Co*., 643 F.2d 863 (1st Cir. 1981) .......... 14

*Stormans, Inc. v. Selecky*, 571 F.3d 960 (9th Cir. 2009) ........................................ 23

*Sunshine Mining Co. v. United Steelworkers of Am*.,

   823 F.2d 1289 (9th Cir. 1987) ........................................ 18, 19, 20

*Textile Unlimited, Inc. v. A..BMH & Co*, 240 F.3d 781 (9th Cir. 2001)............. 2, 10, 11, 17, 23

*Three Valleys Mun. Water Dist. v. E. F. Hutton & Co*, 925 F.2d 1136 (9th Cir. 1990) ....... 2, 13

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,

   489 U.S. 468 (1989) ..................................................................... 21

*World Grp. Sec. v. Ko,* No. C035055 MJJ(EDL),

   2004 WL 1811145 (N.D. Cal. Feb. 11, 2004) .................................... 17, 22

**Other Authorities**

Wright and Miller, *11 Federal Practice and Procedure: Civil*, § 2948 ................................. 11

3 Federal Procedure, L.Ed. § 4:31 ........................................ 18

**Statutes And Rules**

31 C.F.R. § 10.27 ............................................................. 7

9 U.S.C. § 203 ................................................................ 10

9 U.S.C. § 204 ................................................................ 10

9 U.S.C. § 206 ................................................................ 11

AAA IDRP Rule 12 (2014) ........................................ 22

Federal Rule of Civil Procedure 65(c) ................................ 24

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

v

1

2

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

3

4

5

6

7

8

     **PLEASE TAKE NOTICE** that on April 8, 2021 at 1:30 p.m., or as soon thereafter as may be heard, in Courtroom 8 on the 4th Floor of the above-entitled Court, Petitioner Youlin Wang ("Wang" or "Petitioner"), will and hereby moves under Local Rule 7-2 and Federal Rules of Civil Procedure 65, for a preliminary injunction as against Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents").

9

10

11

12

13

     Specifically, Wang seeks an order enjoining the arbitration brought by Richard Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn, the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the "AAA"), Case No. 01-19-0004-1076 (the "Arbitration"), as against Wang, during the pendency of this action.

14

15

16

                               Respectfully submitted,

17

  Dated:  December 7, 2020            GRELLAS SHAH LLP

18

19

20

By:   /S/                            
          Dhaivat H. Shah, Esq.
          Attorneys for Petitioner
          YOULIN WANG

21

22

23

24

25

26

27

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

## MEMORANDUM OF POINTS AND AUTHORITIES

Wang seeks a Preliminary Injunction enjoining the arbitration brought by Richard

Kahn ("Kahn") and Forensic Professionals Group USA, Inc. ("FPG," and together with Kahn,

the "Kahn Respondents") in Miami, Florida, before the American Arbitration Association (the

"AAA"), Case No. 01-19-0004-1076 (the "Arbitration"), as against Wang.  Absent a

preliminary injunction, Wang will face irreparable harm between now and the time that a

judgment is rendered in Wang's pending Petition to Enjoin Arbitration ("Petition").

## I.    STATEMENT OF ISSUES

**1.    Does Wang Present A Likelihood of Success on the Merits?**  Yes, the Federal

Arbitration Act empowers federal district courts to enjoin arbitration proceedings.  *See Textile*

*Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 784–87 (9th Cir. 2001) (holding that

arbitration proceedings may be enjoined if the moving party meets the requirements for

preliminary injunctive relief).  Moreover, arbitral jurisdiction cannot exist absent an agreement

to arbitrate.  *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors*, *LLC*, 816 F.3d 1208, 1212–14

(9th Cir. 2016) (holding that there was no arbitral jurisdiction under Chapter 2 of the FAA

because the contract containing the arbitration clause was a "mere sham").  And challenges to

the existence of the contract containing an arbitration clause must be resolved by a court.  *See*

*Three Valleys Mun. Water Dist. v. E. F. Hutton & C*o, 925 F.2d 1140–41 (9th Cir. 1990).

Here, the Kahn Respondents cannot meet their burden of proving an agreement to arbitrate

because the underlying agreements containing the purported arbitration clause were never

signed by Wang.  They were, instead, signed by Derek Longstaff purporting to operate under a

forged power of attorney.

**2.    Will Wang Suffer Irreparable Harm Absent Injunctive Relief?**  Yes, being forced

to arbitrate non-arbitrable claims is *per se* irreparable harm.  Wang will be forced to waste

money and human capital to arbitrate non-arbitrable claims during the pendency of these

proceedings.  *See Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway*

*Const., Inc*., 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013) ("[A] party is irreparably harmed by

incurring costs arbitrating a dispute that the court has concluded in non-arbitrable.").  Further,

Wang will suffer the irreparable of harm of participating in a proceeding that does not offer him due process. *See Aerojet-Gen. Corp. v. Am. Arbitration Ass'n,* 478 F.2d 248, 251 (9th Cir. 1973).

**3.     Does the Balance of Equities Tip in Wang's Favor?**  Yes, without provisional relief, Wang will be forced to spend time and resources in a proceeding that has no jurisdiction over him and in which he should never have been sued.  Further, Wang has been deprived of even minimal due process in the Arbitration proceedings, with the Arbitration having been prosecuted against Wang *in absentia* and without notice.  On the other hand, the Kahn Respondents will suffer no hardship if an injunction is granted.  At worst, if the Petition is denied, there will be a temporary delay in the Arbitration.

**4**.     **Would the Requested Injunction Serve the Public Interest?**  Yes, the requested injunction serves the public interest because it honors the rule that the arbitration device is a powerful tool of dispute resolution between willing parties while preventing an abusive and unjust exercise of arbitral jurisdiction.  Moreover, it is in the public's interest to protect due process, which have been denied to Wang thus far in the Arbitration.

## II.     INTRODUCTION

There is a pending Petition to permanently enjoin the Arbitration for lack of arbitral jurisdiction.  The question of arbitrability is one that only a court may decide.  Wang seeks preliminary injunctive relief to avoid irreparable harm while the Court answers that question.

Wang is likely to succeed on the merits of his Petition.  There was never an agreement to arbitrate between the Kahn Respondents and Wang.  The purported contract containing the arbitration clause never came into existence.  Derek Longstaff ("Longstaff"), Wang's former attorney, purported to sign the contract on Wang's behalf based on a fraudulent power of attorney document to which Wang's signature was forged.  Wang was not made aware of the purported contract or the arbitration clause until after arbitration proceedings were well underway.

Yet Wang faces irreparable harm absent a preliminary injunction during the pendency of the Petition proceeding.

MOTION FOR PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

1       First, the courts have long recognized that if a party is forced to arbitrate a matter that

2 is not subject to arbitration, that in itself is irreparable harm warranting an injunction of the

3 arbitration proceedings.  If an injunction is denied here, Wang will suffer the very harm the

4 law is designed to prevent.  Wang will be forced to expend time and resources in the

5 Arbitration in a non-arbitrable dispute.  Further, there is no forum in which Wang can seek

6 reimbursement for the considerable costs, time, and burden expended in an arbitral proceeding

7 that lacks jurisdiction and from which any award will be unenforceable.

8       Second, the manifest and continuing absence of due process in the Arbitration is an

9 irreparable harm that cries out for injunctive relief.  Our jurisprudence clearly defines

10 arbitration as a system based on the consent of the parties to resolve disputes outside of the

11 judicial system.  Wang had no knowledge of the purported contract containing the arbitration

12 clause and did not agree to arbitrate.  The Kahn Respondents did not serve Wang with the

13 arbitration demand when they first filed it in November 2019.  In fact, the Kahn Respondents

14 identified one of their own as the respondent in the arbitration and identified their own address

15 as the place for notice to be sent.  Wang had no notice or opportunity to participate in the

16 Arbitration for over 9 months.  Wang is a Chinese citizen and the international rules of the

17 American Arbitration Association ("AAA") apply, yet the Arbitration has proceeded under its

18 domestic rules.  Wang has had no opportunity to participate in venue selection.  Wang has had

19 no opportunity to participate in arbitrator selection or challenges either which, under AAA's

20 international rules, would have allowed Wang to request that the arbitrator be a non-U.S.

21 national.  The scope, limits and timeline for discovery have been decided in Wang's absence

22 and the ordered deadlines leave Wang no meaningful opportunity to present claims or defenses

23 in the Arbitration.

24       Both the Federal Arbitration Act and basic due process do not permit the Kahn

25 Respondents to game the system by spending nearly a year purporting to arbitrate claims

26 against Wang without telling him about it and then forcing him to shoehorn himself into that

27 arbitration at the eleventh-hour, deprived of the right to have a say in the most basic aspects of

28 the arbitration (venue, arbitrator selection, scope of arbitral issues, scope of discovery) Wang

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

would have otherwise had.

The permanent injunction sought in the Petition is essential to afford Wang the basic statutory, equitable, and due process rights *any* litigant has — not to be forced to arbitrate claims when his or her signature was forged on a document that purportedly binds them to an arbitration agreement and, at a minimum, to be afforded basic and fundamental due process: timely notice of proceedings, and opportunity to dispute the claims presented, using the correct applicable rules for arbitration. The preliminary injunctive relief sought in this Motion is essential to avoid irreparable harm while the critical concerns raised by the Petition are litigated in front of this Court — the only forum with jurisdiction to determine these issues.

### III. FACTUAL BACKGROUND

### A. Longstaff Initiates A Conspiracy To Defraud Wang

In or around 2016 and 2017, Wang built two new single-family residences in Palo Alto, California, at 3878 Magnolia Drive and at 3880 Magnolia Drive. Wang subsequently transferred 3878 Magnolia Drive to Magnoliadrhomes LLC ("Magnolia").

In October 2017, Wang sold 3880 Magnolia Drive for $4.1M. In May 2018, Magnolia sold 3878 Magnolia Drive for $4.1M (the two sales, collectively, the "Magnolia Transactions").

Because Wang is a foreign national, there was significant tax withholding, over $1 million, from the proceeds of these sales by both the federal government and the State of California pending filing of Wang's tax returns for the calendar year of each sale (such withholdings, "FIRPTA Withholdings").

Guohua "Greg" Xiong ("Xiong"), as Wang's authorized agent, retained Longstaff to provide legal services to Wang in connection with Wang's tax refunds for the 2017 and 2018 calendar year and to provide legal services to Magnolia in connection with Magnolia's use of proceeds from 3880 Magnolia Drive and 3878 Magnolia Drive. Declaration of Youlin Wang ("Wang Decl.") ¶ 5[1]; Declaration of Guohua "Greg" Xiong ("Xiong Decl.") ¶ 4.

---

[1] Exhibit A to the Declaration of David I. Siegel is the English language version of the Declaration of Youlin Wang.

MOTION FOR PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    Rather than provide legal services, Longstaff entered into a scheme involving Joseph

2    Libkey ("Libkey") and the Kahn Respondents to defraud Wang at every turn.

3    **B.    Wang Is Defrauded Of Over $3 Million**

4    As a first step in his scheme, Longstaff claimed that he had a way for Wang and

5    Magnolia to enjoy valuable tax deferral benefits in connection with the Magnolia Transactions.

6    Longstaff introduced Xiong to Libkey, a colleague of Kahn's, who did business through Peak

7    Financial Company ("Peak"), an entity that it appears Libkey wholly owns.  Xiong Decl. ¶ 5.

8    Longstaff and Libkey induced Xiong, Wang's agent, to enter into an agreement called

9    the "Deferred Asset Trust" ("DAT"), which they represented was the mechanism through

10   which Wang and Magnolia could enjoy the promised tax deferral benefits and through which

11   Wang would receive immediate, full return of the funds from the sale of 3778 Magnolia Drive

12   after one calendar quarter had passed.  Xiong Decl. ¶ 5.

13   The DAT, however, is against public policy and is not a legal tax deferral vehicle.

14   Instead, it was a vehicle for stealing from Wang.  At Libkey's direction, the $3,130,953.66 in

15   proceeds from the sale of 3878 Magnolia Drive were wired into an account established by

16   Peak and Libkey at US Bank in Colorado.  Shortly after they were deposited, Libkey withdrew

17   the funds, without authorization, and invested them in Blueprint Investment Fund, a company

18   that he controlled, each act being contrary to the language of the DAT.

19   Despite repeated demands, those funds have never been returned to Wang.

20   **C.    Longstaff And The Kahn Respondents Enter Into The Forged Agreements**

21   Having managed to defraud Wang out of the proceeds of the sale of 3878 Magnolia

22   Drive, Libkey and Longstaff moved on to defrauding Wang, the U.S. Treasury and the State of

23   California out of the FIRPTA Withholdings.

24   Libkey introduced Longstaff to Kahn and his associate Luis Bulas-Felix ("Bulas-

25   Felix").  Kahn and Bulas-Felix purport to provide tax services that would help maximize

26   Wang's tax refunds from the FIRPTA Withholdings.

27   Kahn and Bulas-Felix were tasked, by Longstaff, with preparing Wang's 2017 and

28   2018 tax returns.  Wang needed to file returns in the U.S. because of the sale of the Magnolia

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

6

MOTION FOR PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK

1    properties in California.  As a foreign national, he was subject to over $1 million in FIRPTA

2    Withholdings.  Absent other taxable events or complexities, none of which are reflected in the

3    returns that Kahn and Bulas-Felix prepared, the calculation of a FIRPTA refund or state law

4    equivalent is a simple deduction of the mandatory withholding minus any capital gains from

5    the sale.

6         But without Wang's or Xiong's knowledge, Longstaff entered into the Partially

7    Deferred Retainer and Fee Agreement ("PDRFA") and Refund Disbursement Service

8    Agreement ("RDS," and with the PDRFA, the "Agreements") with the Kahn Respondents, on

9    or about August 16, 2018.  Wang Decl. ¶ 12.  The Agreements purport to give the Kahn

10   Respondents a significant contingent fee interest in Wang's tax refunds.  The Kahn

11   Respondents were entitled to 100% of Wang's refunds above a certain baseline.  Based on the

12   refunds that the Kahn Respondents claimed on Wang's tax returns, this amounted to a nearly

13   50% contingency fee of Wang's total refunds.  Such a contingency fee would not only be

14   unconscionable but also illegal.  Under IRS Circular 230, the IRS prohibits practitioners from

15   collecting contingency fees for filing tax returns.  *See* 31 C.F.R. § 10.27.

16        Rather than make any attempt to execute the Agreements with Wang or Xiong, Kahn

17   and Longstaff worked together under a purported power of attorney authorizing Longstaff to

18   act on Wang's behalf.  This allowed Kahn and Longstaff to execute the Agreements without

19   Wang or Xiong's knowledge.

20        Longstaff had no authority to sign the Agreements on Wang's behalf.  Wang Decl. ¶

21   12.  Longstaff's purported authority came from a fraudulent power of attorney (the "2017

22   POA") dated November 13, 2017, that Longstaff created.  *See* Wang Decl. ¶ 13, Exhibit A.

23   The 2017 POA purportedly conferred on Longstaff broad authority to act on Wang's behalf.

24   Wang did not sign the 2017 POA.  Wang Decl. ¶ 14.  Longstaff literally cut and pasted a

25   signature he thought was Wang's and attached a notarization page from a different document.

26   *See* Siegel Decl. Ex. I at ¶ 16, Declaration of Patricia Fisher previously filed as Dkt. 14-1

27   ("Siegel Ex. I Fisher Decl.").

28        But it was not enough for the Kahn Respondents to extract illegal and unconscionable

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

7

1   fees from Wang.  They also falsified Wang's tax records to artificially inflate Wang's refund

2   — and thus the Kahn Respondents' contingency fee.  Specifically, Kahn and Bulas-Felix

3   grossly understated the capital gains on the sales of the Magnolia properties by inflating

4   Wang's basis in them.  As a result, the refund Wang received was more than $200,000 greater

5   than it should have been for 2017 and more than $200,000 greater for 2018.  The contingency

6   fees that the Kahn Respondents are claiming represent the entire unlawful refunds obtained

7   from false filings with the IRS and Franchise Tax Board as well as refund amounts that Wang

8   was legitimately owed from the FIRPTA Withholding.  The Kahn Respondents have already

9   unlawfully pocketed over $200,000, including refund amounts that they directed that the

10  California Franchise Tax Board wire directly to them and never remitted to Wang.

11          Once Wang discovered that the Kahn Respondents filed false tax returns on his behalf,

12  he has moved with alacrity and in good faith to correct these returns.  He will be filing

13  amended returns that will subject him to over $400,000 in additional tax liability, as well as

14  interest and possible penalties.

15  **D.      Respondents Continue To Defraud Wang Through The Arbitration**

16          On November 6, 2019, Xiong terminated Longstaff as attorney for Wang and

17  Magnolia.  Xiong Decl. ¶ 6; Wang Decl. ¶ 6.

18          Unbeknownst to Xiong and Wang, through late 2019, Longstaff and the Kahn

19  Respondents appeared to have a dispute relating to the Agreements and amounts allegedly

20  owed by Wang thereunder.  *See* Wang Decl. ¶¶ 8–10; Xiong ¶ Decl. 10.  The fraudulent 2017

21  POA expired, on its terms, on January 31, 2019.  So, Longstaff manufactured *another*

22  fraudulent power of attorney, terminating January 31, 2020 (the "2019 POA").  *See*

23  Declaration of David I. Siegel ("Siegel Decl.") ¶ 5, Exhibit G.  Like before, Longstaff appears

24  to have copied and pasted signatures from another document into the manufactured 2019 POA.

25  *See* Siegel Ex. I Fisher Decl. ¶ 16.  Moreover, Longstaff falsified a notary acknowledgment to

26  attach to the 2019 POA, as well.  *See* Siegel Decl. Exhibit J at ¶¶ 4–8., Declaration of Jayesh

27  A. Patel previously filed as Dkt. 14-2 ("Siegel Ex. J Patel Decl.").

28          On or around November 20, 2019, the Kahn Respondents initiated the Arbitration.  *See*

**MOTION FOR PRELIMINARY INJUNCTION**
Case No.: 5:20-cv-08033-LHK

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    Siegel Decl. ¶ 5, Exhibit E.  The initial Arbitration claim was asserted against Longstaff,

2    individually and as purported attorney-in-fact by way of power of attorney for Wang.  *Id.*  It

3    alleges a breach of the Agreements for unpaid fees.  *Id.*  None of the Respondents notified

4    Wang or Xiong that the Arbitration had been filed.  Wang Decl. ¶ 9; Xiong ¶ Decl. 10.

5         On March 25, 2020, the Kahn Respondents filed an Amended Claim in the Arbitration

6    (the "Amended Claim").  *See* Siegel Decl. ¶ 5, Exhibit D.  The Amended Claim adds tortious

7    interference and libel claims against Wang, for which the Kahn Respondents seek $10,000,000

8    in damages.  *Id.*

9         Kahn's initial Demand for Arbitration ("Demand") itself was calculated to avoid

10   providing proper notice to Wang.  Instead of identifying Wang as the arbitration respondent, it

11   lists FPG as the respondent, with FPG's contact information as the notice address for the

12   respondent.  *See* Siegel Decl. ¶ 5, Exhibit E.

13        The Demand also fabricates the existence of a Florida venue provision in the

14   Agreements as the basis for having the arbitration heard in Miami.  *See* Siegel Decl. ¶ 5,

15   Exhibit E.  The Agreements contain no venue provision.

16        Longstaff appeared in the Arbitration on December 10, 2019.  Despite having been

17   terminated and lacking any authority to act on Wang's behalf, Longstaff represented himself as

18   appearing on behalf of himself *and* Wang.  Longstaff purported to file an answer and

19   counterclaims on behalf of Wang.  *See* Siegel Decl. ¶ 5, Exhibit C.  He purported to participate

20   in arbitrator selection on behalf of Wang.  *Id.*  And he purported to make appearances in the

21   Arbitration on behalf of Wang.  *Id.*  The Arbitration filings do not reflect that Longstaff

22   acknowledged his insurmountable conflict of interest.

23        In the meantime, over the next several months, Respondents chose an arbitrator, agreed

24   to a scope of discovery and discovery schedule, and set a date for the arbitral hearing, all to the

25   detriment of Wang.

26        In mid-September 2020, Longstaff finally sent a copy of the Amended Claim to

27   Morgan Lewis, Magnolia's former counsel.  Wang Decl. ¶ 8.  This is the first attempt made by

28   any party to the Arbitration to provide a copy of any Arbitration pleadings to anyone affiliated

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

9

1    with Wang.

2    **IV.    This Court Has Jurisdiction And Venue Is Proper.**

3            This Court has original jurisdiction over this action because this is a civil action

4    concerning an arbitration falling under the Convention on the Enforcement and Recognition of

5    Foreign Arbitral Awards ("NY Convention").  *See* 9 U.S.C. § 203 ("An action or proceeding

6    falling under the Convention shall be deemed to arise under the laws and treaties of the United

7    States.").

8            Venue is also proper in this district.  *See* 9 U.S.C. § 204 ("An action or proceeding over

9    which the district courts have jurisdiction pursuant to section 203 . . . may be brought in any

10   such court in which save for the arbitration agreement an action or proceeding with respect to

11   the controversy between the parties could be brought"); *see also Textile Unlimited, Inc. v.*

12   *A..BMH & Co.*, 240 F.3d 781, 785 (9th Cir. 2001) (holding that petitions regarding arbitration

13   can be brought in any district that has jurisdiction to hear the dispute, notwithstanding any

14   contractual provisions in the arbitration agreement designated where arbitration itself is to

15   occur).

16   **V.    A Preliminary Injunction Is Warranted**

17            The Court must issue a preliminary injunction if it finds the following elements: 1) a

18   likelihood of success on the merits; (2) the possibility of irreparable injury; (3) a balance of

19   hardships favoring the moving party; and (4) that public policy favors such an order.  *See*

20   *Textile*, 240 F.3d at 786 (applying the preliminary injunction standards to enjoin an

21   arbitration).

22            The Ninth Circuit also recognizes an alternative formulation that the moving party can

23   meet its burden by "demonstrating either (1) a combination of probable success on the merits

24   and the possibility of irreparable injury or (2) that serious questions are raised and the balance

25   of hardships tips sharply in its favor."  *Textile*, 240 F.3d at 786 (internal quotations omitted).

26   Both formulations operate on a sliding scale — the stronger the showing of one factor, the less

27   the party need prove on the second. *See Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935,

28

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

937 (9th Cir. 1987) ("These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.") (internal quotations omitted).

**A.    Wang Is Likely To Succeed On The Merits Of His Petition To Enjoin The Arbitration Because He Is Not A Party To Any Agreement To Arbitrate**

A likelihood of success on the merits is the most important factor when considering whether to grant a temporary restraining order or a preliminary injunction. *See Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Wang must show only likely, rather than certain, success. *See Future Domain Corp. v. Trantor Sys. Ltd.*, No. C 93 0812 TEH, 1993 WL 270522, at *4 (N.D. Cal. May 3, 1993) ("It is well established that a party seeking a preliminary injunction must present a prima facie case but need not show that it is certain to win.") (citing Wright and Miller, *11 Federal Practice and Procedure: Civil*, § 2948 at 452). Wang is likely to succeed on the merits of his Petition.

**1.    Wang is Likely to Prevail In The Petition To Enjoin Arbitration Because He Is Not Party To An Arbitration Agreement.**

**a.    The Court Has Authority To Enjoin An Arbitration Under The New York Convention And FAA.**

Chapter 2 of the Federal Arbitration Act ("FAA"), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), governs arbitrations that involve a non-U.S. citizen. *See* 9 U.S.C. § 206. Wang is a citizen of China. Wang Decl. ¶ 2. Therefore, assuming a valid agreement to arbitrate, the only legal grounds under which Wang may be compelled to arbitrate is under Chapter 2 of the FAA and the New York Convention.

The FAA empowers federal district courts to enjoin arbitration proceedings. *See Textile*, 240 F.3d at 784–87 (holding that arbitration proceedings may be enjoined if the moving party meets the requirements for preliminary injunctive relief); *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 (2d Cir. 2011) (stating that courts have the power to enjoin arbitral proceedings governed by the New York Convention); *DynaResource de Mexico, S.A.*

*de C.V. v. Goldgroup Res., Inc.*, No. 14-CV-01527-MSK-KMT, 2015 WL 5693560, at *5 (D. Colo. Sept. 29, 2015) ("[I]t is clear to this Court that the weight of authority . . . has embraced a more expansive view of federal jurisdiction under the Convention that includes claims seeking simply to stay an arbitration."); *CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 375 (S.D.N.Y. 2014) (holding that federal district courts have jurisdiction to enjoin arbitration proceeding under the New York Convention).

> **b.    The New York Convention's Requirements For Arbitral Jurisdiction Cannot Be Met Because Wang Was Not Party To An Arbitration Agreement.**

> **i.    An Agreement To Arbitrate Is The Central Requirement Of The New York Convention.**

A party seeking to compel arbitration under the New York Convention and Chapter 2 of the FAA must show four things:

> (1) there is an *agreement* in writing within the meaning of the Convention; (2) the *agreement* provides for arbitration in the territory of a signatory of the Convention; (3) the *agreement* arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the *agreement* is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Balen v. Holland America Line Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009) (emphasis added). *Accord. In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-05609 SI, 2011 WL 2650689, at *2 (N.D. Cal. July 6, 2011).

The core of each element of arbitral jurisdiction is the existence of an agreement to arbitrate. *See Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1212–14 (9th Cir. 2016) (holding that there was no arbitral jurisdiction under Chapter 2 of the FAA because the contract containing the arbitration clause was a "mere sham"). If no such valid agreement exists — a party cannot be forced to abdicate his right to litigate. *AT & T Tech., Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.").

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii.     **The Court, Not An Arbitrator, Determines Whether Wang Is Subject To Arbitral Jurisdiction.**

Challenges to the existence of the contract containing an arbitration clause must be resolved by a court.  In *Three Valleys Mun. Water Dist. v. E. F. Hutton & Co*, 925 F.2d 1136 (9th Cir. 1990), a party contended that a contract containing an arbitration clause was never formed because the person purporting to execute the contract on its behalf lacked authority. The Ninth Circuit held that only a court could determine arbitrability under the circumstances because "a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate."  *Id.* at 1140–41 (emphasis in original); *accord Granite Rock Co. v. International Broth. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide.").

And the RDS itself states that questions of arbitrability must be decided by a court.  *See See* Siegel Decl. ¶ 5, Exhibit F (stating that the "Dispute Clause . . . does not include disputes about the validity, coverage or scope of this Dispute Clause or any part of this Dispute Clause. . . . All such disputes are for a court and not an Arbitrator to decide.").

iii.    **The Kahn Respondents Cannot Satisfy Their Burden Of Showing There Was An Agreement To Arbitrate.**

The Kahn Respondents bear the burden of proving the existence of an agreement to arbitrate.  *See Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) ("As the party seeking to compel arbitration, Samsung bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.") (citation and internal quotation marks omitted); *Gelow v. Central Pacific Mortg. Corp.*, 560 F. Supp. 2d 972, 978 (E.D. Cal. 2008) ("The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party."). The Kahn Respondents cannot satisfy their burden of showing the existence of an agreement to arbitrate because Wang was not a party to an arbitration agreement.

The facts are clear:

Wang did not sign the RDS or know about it.  Wang Decl. ¶ 12.  Wang neither agreed

13

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

1    nor consented to arbitration with Kahn.  Wang Decl. ¶ 12.

2         Longstaff purported to sign the RDS on Wang's behalf as his purported "POA."  But

3    Wang's retention of Longstaff was limited in its scope. He had never given Longstaff such

4    broad written authority to act as his attorney-in-fact.  Wang Decl. ¶¶ 14, 16.

5         Rather, Longstaff purports to derive his authority to sign the RDS on Wang's behalf

6    from a document that is itself fraudulent.  There is a document dated November 13, 2017, that

7    purports to give Longstaff broad authority to act on Wang's behalf and supposedly bears

8    Wang's signature.  As Wang himself attests, however, he never signed this document.  Wang

9    Decl. ¶ 16.  Rather, expert analysis shows that Wang's signature is not authentic and is the

10   product of an amateur cut-and-paste job.  Siegel Ex. I Fisher Decl. ¶ 16.  Further, the notary

11   acknowledgment attached to the fraudulent document is taken from an entirely different

12   document that Wang had notarized on that date.

13        Wang did not sign the RDS.  Wang Decl. ¶ 12.  Longstaff had no authority to sign the

14   RDS on Wang's behalf.  Wang Decl. ¶¶ 14, 16.  Therefore, Wang never agreed to arbitrate —

15   and any appearance of an agreement is fraudulent and a sham orchestrated by Longstaff.

16        Where there is no agreement to arbitrate, arbitration should be enjoined.  *See Ingram*

17   *Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13-1934-DOC ANX, 2014 WL 3721197, at *2

18   (C.D. Cal. July 22, 2014) (holding that a district court may enjoin arbitration proceedings that

19   are not governed by a valid and binding arbitration agreement); *see also Societe Generale de*

20   *Surveillance, S.A. v. Raytheon European Management and Sys. Co.*, 643 F.2d 863, 868 (1st

21   Cir. 1981) ("[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is

22   the concomitant power to compel arbitration where it is present."); *Allstate Ins. Co. v.*

23   *Elzanaty*, 929 F. Supp. 2d 199, 219 (E.D.N.Y. 2013) ("[W]here a court determines that the

24   parties have not entered into a valid and binding arbitration agreement, the court has the

25   authority to enjoin the arbitration proceedings.").

26         c.    **Wang Did Not Consent To Arbitral Jurisdiction Through Longstaff's Conduct During The Arbitration.**

27

28   Longstaff's conduct during the Arbitration cannot be imputed to Wang and cannot be

14

considered as Wang's consent to arbitrate.

For over nine months after the Arbitration was filed, Wang had no knowledge of its existence. Wang Decl. ¶¶ 9–10. The Kahn Respondents only sent notice of the Arbitration to Longstaff. Longstaff concealed the existence of the Arbitration from Wang. Wang Decl. ¶¶ 9–10; Xiong Decl. ¶ 10.

Instead, Longstaff purported to appear in the Arbitration as Wang's attorney-at-law and attorney-in-fact. At the time he did so, Wang had already terminated Longstaff as his attorney and made clear that he had no authorization to act on Wang's behalf in any capacity. Wang Decl. ¶¶ 6–7; Xiong Decl. ¶ 6.

Longstaff engaged in a number of acts purportedly on Wang's behalf, including filing an Answer, asserting Counterclaims, participating in arbitrator selection, and participating in a preliminary conference. Given that Wang did not authorize Longstaff to act on his behalf, none of these acts may be imputed to Wang.

Longstaff and the Kahn Respondents have, apparently, fabricated a second fraudulent document, this time dated February 1, 2019, which purports to give Longstaff broad powers to act as Wang's attorney in fact through early 2020. Presumably this is an attempt to sanction Longstaff's representation of Wang in the Arbitration.

This document, however, is not authentic. Wang attests that he never signed it. Wang Decl. ¶ 16. Expert analysis shows that Wang's signature on the purported power of attorney was cut-and-pasted from another document. Siegel Ex. I Fisher Decl. ¶ 16. Further, there is an Acknowledgement attached to the power of attorney that states that Wang signed the document in the presence of California notary Jayesh Patel in Santa Clara County on February 5, 2019. Wang was not in the United States on that date. Wang Decl. ¶ 17. Mr. Patel provides his sworn declaration that his notary ledger shows that Wang never signed any document in his presence on February 5, and that the Acknowledgement is itself a forgery. Siegel Ex. J Patel Decl. ¶¶ 4–8. That is not the form of Acknowledgement Mr. Patel uses, it is not his signature on the Acknowledgment, and it is not his notary stamp on the Acknowledgment. Siegel Ex. J Patel Decl. ¶¶ 4–8.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

**B.      Wang Will Suffer Irreparable Harm Absent Injunctive Relief.**

Wang faces irreparable harm in the Arbitration while he waits for a ruling on the Petition.  The Arbitration has a current hearing date of April 2021.[2]  The initial case management conference before this Court is not until February 2021.  While the parties litigate the Petition under the normative times that such a matter will be decided in this Court, the Arbitration is hurtling towards a hearing and award on non-arbitrable claims, obtained in a manner overshadowed by fraud.  And as Wang is dragged into defending himself in a forum to which he never agreed and resulting in an unenforceable award, he will be forced to expend substantial time and money, while forgoing the rights to proper process to which he is entitled. *See Pension Plan for Pension Tr. Fund for Operating Engineers v. Weldway Const., Inc*., 920 F. Supp. 2d 1034, 1049 (N.D. Cal. 2013) ("[A] party is irreparably harmed by incurring costs arbitrating a dispute that the court has concluded is non-arbitrable.").

Two factors — the likelihood of success on the merits and irreparable harm — "represent two points on a sliding scale." *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).  When a party has made a strong showing of likely success, they need show little irreparable harm, and vice versa.  *Id*.  As is shown in Section V. A., above, Wang has a strong likelihood of success on the merits of the Petition.  But even a slight showing should have sufficed because of the irreparable harm Wang faces.

Allowing this Arbitration to proceed, over Wang's arbitrability and due process objections, will result in grave irreparable harm — first, through the expenditure of considerable resources and time that will not be compensable through any other means, and, because there will be no recompense for Wang having to litigate the merits in an arbitral proceeding that has been carried out in a manner fundamentally unfair to him.  *See Aerojet-*

---

[2] Wang has applied for leave of the Arbitrator to file a motion to stay the arbitration proceedings pending a ruling on the Petition.  The Arbitrator has not ruled on the application or confirmed that he will allow such a motion but he has stated that he is not inclined to continue his April 2021 hearing date unless this Court issues an injunction.

*Gen. Corp. v. Am. Arbitration Ass'n,* 478 F.2d 248, 251 (9th Cir. 1973) (sanctioning immediate judicial intervention in arbitral proceedings on due process grounds).

### 1.    Wang Faces Irreparable Harm From Having To Arbitrate Non-Arbitrable Claims

Forcing Wang to participate in an arbitration will result in wasted time, resources and monies that cannot be recouped if the arbitration is later vacated.  There is no legal mechanism under the FAA for a monetary award to reimburse Wang for these costs.  *See*, *e.g.*, *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("[T]he time and resources Maryland would expend in arbitration is not compensable by any monetary award of attorneys' fees or damages pursuant to the provisions of the Agreement or the Arbitration Act.").

Accordingly, courts within this circuit have repeatedly held that when a party risks being forced to arbitrate fundamentally non-arbitrable issues, the associated unnecessary expenses *do* constitute an irreparable injury warranting injunctive relief.  *See Textile*, 240 F.3d at 786 (confirming preliminary injunction based on district court's finding that plaintiff would suffer irreparable harm if arbitration were not stayed); *Pension Plan*, 920 F. Supp. 2d at 1049 (holding that costs incurred in arbitrating non-arbitrable claims are irreparable); *Ingram*, 2014 WL 3721197, at *4 ("Irreparable injury is shown because, absent the injunction, a party would have to expend time and resources defending itself in arbitration."); *Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008) (finding irreparable harm and staying the arbitration because "[p]laintiff has no adequate remedy at law to recover the monetary and human capital it would expend defending itself in arbitration"); *World Grp. Sec. v. Ko, No. C035055 MJJ(EDL),* 2004 WL 1811145, at *7 (N.D. Cal. Feb. 11, 2004) ("Plaintiff has shown that it will suffer irreparable harm by having to arbitrate [defendant's] claims in the absence of a clear agreement to do so, contrary to arbitration jurisprudence.").

Courts nationwide agree.  *See e.g., Merrill Lynch Inv. Managers v. Optibase, Ltd*., 337 F.3d 125, 129 (2d Cir.2003) (per curiam) (holding that forcing a non-signatory to an arbitration agreement to expend time and resources to arbitrate would constitute irreparable

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

harm.); *McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P.*, 105 F.3d 1192, 1194 (8th Cir. 1997) ("If a court has concluded that a dispute is non-arbitrable, prior cases uniformly hold that the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award.").

This point of law is so well-established that courts describe the risk of having to arbitrate non-arbitrable claims as ***per se*** irreparable harm.  *See, e.g.*, *Ingram*, 2014 WL 3721197, at *4 ("Forcing a party to submit to arbitration, when it did not agree to do so, constitutes per se irreparable harm.") (citing 3 Fed. Proc., L.Ed. § 4:31); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990) (holding that the harm absent a preliminary injunction was "*per se* irreparable" because "[a] reluctant party has a right to a judicial determination of his obligation to arbitrate"), *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).

### 2. Wang Faces Irreparable Harm Because The Arbitration Has Not Been Conducted With Due Process

#### a. A Court Has the Ability to Intervene When an Arbitration Irreparably Injures a Party by Depriving Him of Due Process

Every party in a dispute is entitled to enjoy a right to fundamental due process — even in an arbitration proceeding.  *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 998 (9th Cir. 2003) (noting that the vacatur and modification provisions within the Arbitration Act are "designed to preserve due process.").  Due process is fulfilled when "the parties receive[] a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (internal citations omitted).  A fundamentally fair hearing necessitates that "each of the parties to the dispute [be given] an adequate opportunity to present its evidence and arguments." *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987).  A party forced to undergo an arbitration proceeding lacking in due process suffers an irreparable injury.

This Court is empowered to act to ensure that Wang is able to receive a fundamentally

1    fair hearing, which includes receiving proper notice of the proceeding.  *See Carpenters 46*

2    *Northern California Counties Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir.

3    1996) ("Although deference must be given to an arbitrator's decisions concerning procedural

4    issues, it is generally recognized that the courts may consider a claim that a party to

5    an arbitration has been denied a fundamentally fair hearing."); *Jones v. Flowers*, 547 U.S. 220,

6    240 (2006) (holding that the Fourteenth Amendment's Due Process Clause requires "that a

7    State must provide an individual with notice and opportunity to be heard before the State may

8    deprive him of his property").

9         The Ninth Circuit has held that immediate judicial intervention in arbitration

10   proceedings is appropriate to prevent "severe irreparable injury" from errors that "cannot

11   effectively be remedied on appeal from the final judgment" and that result in "manifest

12   injustice."  *See Aerojet-Gen.,* 478 F.2d at 251 (holding that in such cases "the courts should be

13   free to prevent a manifest injustice"); *Sunshine Min. Co.* 823 F.2d at 1294 (noting that review

14   of non-final decisions of an arbitrator are not "precluded" under Ninth Circuit precedent);

15   *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior*

16   *Trim*, 828 F.2d 1373, 1377 (9th Cir. 1987) (decisions by an arbitrator prior to the issuance of a

17   final award can be reviewed "should the circumstances warrant").  Circumstances showing

18   that an arbitration has been conducted in "manifest disregard of the law" warrant judicial

19   intervention precisely to prevent such a "severe irreparable injury." *Aerojet-Gen. Corp.,* 478

20   F.2d at 252.

21        Without judicial intervention in the form of a preliminary injunction, Wang will be

22   forced to participate in an arbitration that fundamentally unfair, conducted with manifest

23   disregard to the law, and in abject deprivation of Wang's rights under the law and under the

24   AAA arbitration rules.

25         **b.      The Arbitration Is Fundamentally Unfair Because Wang Has Not
              Been Provided Proper Notice**
26

27        A fundamentally fair hearing requires that a party to a foreign arbitration be able to

28   present its case. *See Sunshine Mining Co.* 823 F.2d at 1295 (A "hearing is fundamentally fair

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

19

1    if it meets the 'minimum requirements of fairness").  A hearing meets "the minimal

2    requirements of fairness" if it provides adequate notice, a hearing on the evidence, and an

3    impartial decision by the arbitrator.  *Ficek v. Southern Pacific Co.,* 338 F.2d 655, 657 (9th Cir.

4    1964).  Under the New York Convention, for notice of arbitration proceedings to be proper, it

5    must meet United States standards of procedural due process.  *See Parsons & Whittemore*

6    *Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier*, 508 F.2d 969, 975 (2d Cir.

7    1974) ("This provision essentially sanctions the application of the forum state's standards of

8    due process.").  Notice must be "reasonably calculated, under all the circumstances, to apprise

9    interested persons of the pendency of the action and afford them an opportunity to present their

10    objections" in order to comply with due process.  *Mullane v. Central Hanover Bank & Trust*

11    *Co.*, 339 U.S. 306, 314 (1950).

12        Here, however, Respondents took steps to ensure that Wang did not receive proper

13    notice, beginning with the Demand for Arbitration.  Instead of identifying Wang as the

14    arbitration respondent, the Demand for Arbitration lists FPG as the respondent.  The Kahn

15    Respondents made no attempt to serve the Demand for Arbitration or Claim on Wang when

16    they filed the Arbitration in November 2019.  Wang Decl. ¶ 9–10; Xiong Decl. ¶ 10.  They

17    served these documents only on Longstaff, a separate respondent, who concealed the existence

18    of the Arbitration for over nine months.

19        Wang did not, in fact, receive notice of the Arbitration proceeding until Longstaff sent

20    a copy of the Amended Claim to Morgan Lewis, former counsel to Magnolia, in September

21    2020.  Wang Decl. ¶ 8.  This was the *first* attempt made by any party to the Arbitration to

22    provide a copy of any Arbitration pleadings to anyone affiliated with Wang.  Wang thus did

23    not receive proper notice of the arbitration.

24        And the prejudice to Wang was exacerbated by Longstaff's conduct.  Not only did

25    Longstaff conceal the existence of the Arbitration from Wang, but Longstaff also masqueraded

26    as Wang's attorney-in-fact and attorney-at-law for nine months.  But Longstaff was not merely

27    an inept representative.  Wang had already terminated Longstaff — he was not Wang's

28    representative at all.

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

Wang would suffer severe irreparable injury if he were forced to now join the Arbitration that has been going on for almost a year.  Numerous decisions have been made and positions taken, purportedly on Wang's behalf.  Those critical decisions included arbitrator selection, venue of the arbitration, the scope of legal defenses pled, the scope of counterclaims asserted, arbitral admissions in the pleadings, the scope of discovery and scheduling, what discovery to propound and responses to discovery, all done without Wang's consent.  In fact, Longstaff — purportedly on Wang's behalf — has affirmed and admitted to the validity of the illegal contingent fee Agreements that he fraudulently signed on Wang's behalf.  *See* Siegel Decl. ¶ 5, Exhibit C.

The lack of notice and lack of representation are the kind of "severe irreparable injury" that justifies immediate judicial intervention by this Court.  Accordingly, the Court should at a minimum enjoin the Kahn Respondents from continuing the current Arbitration as to Wang so that a new arbitration may be filed in a manner that comports with due process.

### c.    This Fundamentally Unfair Arbitration Has Been Conducted in Violation Of AAA Rules

Courts are empowered to ensure that contractual terms found in arbitration agreements which specify the manner in which arbitration is to proceed are fully enforced.  *See Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that enforcing "rules according to the terms of the agreement is fully consistent with the goals of the FAA"); *Allstate Ins. Co. v. OneBeacon Am. Ins. Co.*, 989 F. Supp. 2d 143, 147 (D. Mass. 2013) (holding that if the terms of an arbitration agreement are violated, a court can order arbitration to proceed according to the agreement's terms);  *Farrell v. Subway Int'l, B.V.*, No. 11 Civ. 08 (JFK), 2011 WL 1085017, at *4 (S.D.N.Y. Mar. 23, 2011) (staying arbitration on the basis that federal law directs that the court enforce the terms of the parties' agreement); *Jefferson–Pilot Life Ins. Co. v. LeafRe Reinsurance Co.,* No. 00 C 5257, 2000 WL 1724661, at *2 (N.D. Ill. Nov. 20, 2000) (holding that where party is merely seeking to enforce "a benefit explicitly conferred by a provision" of the parties' agreement, the party does not need to wait "until the post-award stage to complain.").

Here, the arbitration agreement specifies that the arbitration must be conducted under

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

"the rules of the arbitration administrator in effect when the arbitration is started."  *See* Siegel

Decl. ¶ 5, Exhibit F.  The Kahn Respondents initiated the Arbitration with the AAA.  Per AAA

rules, the arbitration should be conducted under the AAA's International Dispute Resolution

Procedures ("IDRP") because Wang is a Chinese citizen.  *See* American Arbitration

Association, International Dispute Resolution Procedures, Rule 1 (2014); Wang Decl. ¶ 2.

Instead, however, the Arbitration has been unlawfully conducted under AAA's Commercial

Arbitration Rules.  This has a material adverse impact on Wang, as for example under Rule

12.4 of the IDRP, Wang had the right to request that the arbitrator have a different nationality

as that of the parties.  *See* AAA IDRP Rule 12 (2014).  Wang has been deprived of this right.

Other rights have been denied him as well.  For example, the Kahn Respondents filed

the Arbitration in Florida and fraudulently represented to the AAA that the RDS had a forum

selection clause designating Florida as the venue for disputes.  *Compare* Siegel Decl. Ex. E at

¶ 5 *with* Siegel Decl. Ex F at pp. 4, 6.  Had Wang been given proper notice, he would have had

the right to challenge the Kahn Respondents' misrepresentation and argue for alternative

venue.  But he was denied that right.  Courts have held that being deprived of even this one

right — to challenge venue selection — constitutes irreparable harm. *See, e.g., Gen. Protecht

Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1364 (Fed. Cir. 2011) (deprivation of a choice

of forum to which one is entitled constitutes an irreparable harm); *World Grp. Sec.,* 2004 WL

1811145, at *7 (holding that plaintiff "will suffer irreparable harm by being deprived of its

choice of forum if the [ ] claims are arbitrated.").

But the list of rights denied to Wang is greater.  He was deprived of the right to

participate in arbitrator selection and a preliminary hearing to set the scope and timing of

discovery as well as time of hearing.  The cumulative effect of these denials has been to place

Wang at a constant disadvantage and permanently deprived of any measure designed to bring

equitability into the arbitral arena.  Each of these issues affect his ability to receive fair

treatment in the arbitration — an injury that cannot be corrected if the arbitration proceeds

without pause and without judicial oversight.  *See id.*

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

**C.      The Balance Of Hardships Favors Wang.**

To determine whether the balance of hardships favors the moving party, courts must "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 571 F.3d 960, 988 (9th Cir. 2009).  To obtain a preliminary injunction based on the balance of hardships, a party "need[] only to show that serious questions were raised." *Textile,* 240 F.3d at 787.  In light of the many grievous questions raised about the fundamental unfairness of the arbitration proceedings, the balance of hardships clearly favors Wang.

As discussed above, Wang never agreed to arbitrate any disputes with the Kahn Respondents.  Purported arbitral jurisdiction was premised on fraud and forged documents.  Without provisional relief, Wang will be forced to spend time and resources in a proceeding that has no jurisdiction over him and in which he should never have been sued.  And the Arbitration itself does not comport with even minimum standards of due process.  It has been prosecuted against Wang *in absentia*, affording Wang no opportunity to exercise basic rights, such as his right to participate in arbitrator and venue selection.  The Arbitration does not even comply with AAA rules.

By contrast, there is no hardship to Respondents from enjoining the Arbitration until such time as the Court can rule on the Petition and determine whether a permanent injunction should issue.  If the Court ultimately denies the Petition, at most the Kahn Respondents will be temporarily delayed in prosecuting their claims in Arbitration.  As for Longstaff, it is unclear what hardship he could possibly suffer from being enjoined from purporting to act as Wang's attorney-in-fact or attorney-in-law.

The balance of equities therefore favors granting a preliminary injunction.

**D.      Enjoining The Arbitration Serves The Public Interest.**

There is no public policy in favor of forcing parties to arbitrate where there was never an agreement to arbitrate.  "The federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." *Corner v. Micor, Inc*., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006) (declining to apply the liberal federal policy favoring arbitration

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD., SUITE 280
CUPERTINO, CA 95014

where the question is whether a party is bound to arbitration instead of whether a particular issue is arbitrable); *Charles Schwab & Co. v. Reaves*, No. CV-09-2590-PHX-MHM, 2010 WL 447370, at *8 (D. Ariz. Feb. 4, 2010) (granting preliminary injunction and holding that public policy supported injunctive relief because there was no agreement to arbitrate).

Enjoining the Arbitration serves the public interest because it honors the rule that the arbitration device is a powerful tool of dispute resolution between willing parties while preventing an abusive and unjust exercise of arbitral jurisdiction.  Moreover, it is in the public's interest to protect due process, which have been denied to Wang thus far in the Arbitration.

## F.    A Minimal Bond Is Appropriate

Federal Rule of Civil Procedure 65(c) provides that a preliminary injunction will only issue "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The amount of the bond is within the discretion of this Court.  *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000).  Where there is no evidence that the enjoined or restrained party will suffer material harm as a result of the injunction, the Court may set the bond amount at zero.  *See Connecticut General Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

The facts of this case warrant only a minimal bond because there is no evidence that Respondents will suffer a material harm from a preliminary injunction.  At most, it will stay the Arbitration for the period required for this Court to rule on the Petition.  The bond should therefore be zero or a nominal amount.

## VI.    CONCLUSION

For the above reasons, Wang asks this Court to grant his Motion for a Preliminary Injunction enjoining the Kahn Respondents from continuing the Arbitration as against Wang.

Respectfully submitted,

Dated:  December 7, 2020              GRELLAS SHAH LLP

By:  _/S/_____
     Dhaivat H. Shah, Esq.

24

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Attorneys for Petitioner
YOULIN WANG

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY INJUNCTION
Case No.: 5:20-cv-08033-LHK