1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

YOULIN WANG,

               Plaintiff,

     v.

RICHARD KAHN, et al.,

               Defendants.

Case No. 20-CV-08033-LHK

**ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE**

Re: Dkt. No. 48

18

19

20

21

22

Before the Court is Respondents' Richard Kahn and Forensic Professionals Group USA (collectively, "Kahn Respondents") motion to vacate the preliminary injunction and to dismiss for lack of personal jurisdiction, subject matter jurisdiction and venue (hereafter, "motion to vacate preliminary injunction and dismiss"). ECF No. 48 ("Mot.").[1] Having considered the briefing, the

23

24

25

26

27

28

---

[1] Kahn Respondents' 45-page motion to vacate preliminary injunction and dismiss does not comply with Civil Local Rules 7-2(b) and 3-4(c)(2). Civil Local Rule 7-2(b) requires that the notice of motion and the points and authorities in support of the motion be contained in one document with the same pagination for a total of no more than 25 pages. *See* Civ. L.R. 7-2(b). Civil Local Rule 3-4(c)(2) requires that footnote font size must be 12 point type or larger. The Court will strike Kahn Respondents' future filings that do not comply with the Civil Local Rules. *See* Civ. L.R. 1-4.

1

relevant law, and the record in this case, the Court DENIES Kahn Respondents' motion to vacate preliminary injunction and dismiss.

## I.      BACKGROUND

### A.  Factual Background

Petitioner Youlin Wang ("Wang") retained Derek Longstaff ("Longstaff") through Guohua "Greg" Xiong ("Xiong"), Wang's brother in law and authorized agent, to provide legal services in connection with tax refunds that Wang sought for the sale of two properties in Palo Alto, California in 2017 and 2018.  ECF No. 1 ("Pet.") at 4-5.  Longstaff then allegedly entered into a scheme with Respondents Richard Kahn ("Kahn") and Forensic Professionals Group USA ("FPG") (collectively, "Kahn Respondents") to defraud Wang through use of an illegal tax deferral vehicle.  *Id.* at 5-6.  Kahn Respondents also allegedly entered into an agreement with Longstaff that provided Kahn Respondents with a contingent fee interest in Wang's tax refunds, consisting of two separate documents, the Partially Deferred Retainer and Fee Agreement ("PDRF agreement"), and the Refund Disbursement Service Agreement ("RDS agreement").  *Id.* at 1, 3, 5-6.  This was accomplished through an allegedly fraudulent power of attorney authorizing Longstaff to act on Wang's behalf.  *Id.* at 5.  Kahn Respondents also allegedly increased their contingency fees by inflating Wang's tax refunds.  *Id.* at 6.

On November 6, 2019, Longstaff was terminated as counsel for Wang.  *Id.*  In late 2019, Longstaff and Kahn Respondents had a dispute related to their agreement and the amount Wang owed Kahn Respondents.  *Id.* at 6-7.  Wang was not informed of this dispute.  *Id.*  On November 20, 2019, Kahn Respondents initiated arbitration in Florida against Longstaff over unpaid fees.  *Id.* at 7.  The initial arbitration claim by Kahn Respondents was asserted against Longstaff, both individually and as purported "attorney-in-fact by way of power of attorney for Wang."  *Id.*  On March 25, 2020, Kahn Respondents filed an amended arbitration claim seeking $10,000,000 in damages for tortious interference and libel claims against Wang.  *Id.*

Wang alleges that he was never informed of these proceedings.  Wang further alleges that

2

United States District Court
Northern District of California

Longstaff has continued to purport to act on Wang's behalf in the arbitration, despite the fact that Longstaff has no authority to represent Wang. *Id.* at 7-8. In mid-September 2020, Wang was made aware of the arbitration proceedings. *Id.* at 7-8. On October 31, 2020, Wang's counsel provided notice to the arbitrator and the parties in arbitration that Wang objected to arbitral jurisdiction and that Wang intended to file a petition to enjoin the arbitration. *Id.* at 8. On November 6, 2020, Bernard Beitch, the arbitrator, conducted a telephonic conference at which Wang's counsel made a limited appearance for the purpose of raising objections and answering any questions. *Id.*

**B. Procedural History**

On November 13, 2020, Wang filed a petition to enjoin the arbitration and prevent Longstaff from acting on behalf of Wang in the arbitration ("Petition"). ECF No. 1. On November 18, 2020, Wang filed a memorandum of points and authorities in support of the Petition. ECF No. 10.

On November 20, 2020, Wang filed against Kahn Respondents and Longstaff a motion for a temporary restraining order and to show cause re preliminary injunction. ECF No. 14. The Court denied this motion on November 24, 2020.

On December 7, 2020, Wang filed a motion for preliminary injunction ("motion for PI") against Kahn Respondents. ECF No. 23. Opposition to the motion for PI was due by December 21, 2020. On December 24, 2020, Kahn, appearing pro se, requested an extension of time to January 29, 2021 to hire local counsel and respond to the motion for PI. ECF No. 26. On December 29, 2020, the Court granted Kahn's request to extend time. ECF No. 31.

On January 15, 2021, counsel Douglas Everett Klein made an appearance on behalf of Kahn Respondents. ECF No. 35. On January 25, 2021, the parties stipulated to an extension of time to February 12, 2021 for Kahn Respondents to oppose the motion for PI, which the Court granted. ECF Nos. 36, 37. Kahn Respondents failed to file an opposition by February 12, 2021. Wang filed a reply on the stipulated deadline of February 26, 2021. ECF No. 43.

United States District Court
Northern District of California

On April 5, 2021, nearly four months after Wang filed the motion for PI, the Court granted the motion for PI against Kahn Respondents, who failed to oppose the motion despite two deadline extensions.  ECF No. 45.

On April 28, 2021, Kahn Respondents filed the instant motion to vacate preliminary injunction and dismiss.  ECF No. 48.  On July 19, 2021, Wang filed an opposition. ECF No. 58 ("Opp'n").  Kahn Respondents failed to file a reply.

Kahn Respondents also sought judicial notice of three documents: (1) a California state court complaint filed, in part, against Kahn Respondents; (2) a California state court complaint filed against other alleged participants in the alleged scheme to defraud Wang; and (3) a document filed by Kahn in the Florida arbitration proceeding.  ECF No. 49.  The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  Each of these documents is a public court filing and is therefore the proper subject of judicial notice.  *Id.; Global Inds. Investment Ltd. v. Chung*, No. 19-CV-07670-LHK, 2020 WL 5355968, at *4 (N.D. Cal. Sept. 7, 2020) ("These materials include filings in arbitration proceedings.")

Accordingly, the Court GRANTS Kahn Respondents' unopposed request for judicial notice.  However, the Court does not take judicial notice of disputed facts therein.  *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks omitted), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 60

Under Rule 60(b), the Court may grant a motion for relief from judgment only upon a

4

showing of (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief.  Fed. R. Civ. P. 60(b); *see also School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Rule 60(b) provides for reconsideration only upon a showing of (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief." (cleaned up)).

### B. Federal Rule of Civil Procedure 54(b)

Under Federal Rule of Civil Procedure 54(b) and its own inherent power, a district court may modify or set aside an interlocutory order prior to entry of a final judgement.  *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).  The district court may also alter or amend a judgment under Rule 59(e).  *Id.*  To determine "whether a motion requesting the district court to reconsider its preliminary injunction should be treated as a motion for reconsideration under Rule 59 or a motion for dissolution or modification under Rule 54" the district court "must look beyond the motion's caption to its substance."  *Id.* (citation omitted).

### C. Civil Local Rule 7-9

Under Civil Local Rule 7-9, "a litigant dissatisfied with an interlocutory ruling" must seek leave of the court before filing a motion for reconsideration.  *Meas*, 681 F. Supp. 2d at 1143.Civil Local Rule 7-9 specifies the requirements for such a motion.  The moving party must show "reasonable diligence in bringing the motion" as well as one of the following:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

5

United States District Court
Northern District of California

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

**D. Motion to Dismiss Under Rule 12(b)(1)[2]**

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Although lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction," the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  The court "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack.  *Id.*

---

[2] Kahn Respondents also appear to move under Rule 12(h)(3), which states "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *See* Mot. at 27.  Because Kahn Respondents' motion under Rule 12(b)(1) is for dismissal based on lack of subject matter jurisdiction, Rules 12(h)(3) and 12(b)(1) present the same question here. For ease of reference, the Court refers only to Rule 12(b)(1) hereafter.

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

2    12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v.*

3    *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

4    **E.  Motion to Dismiss Under Rule 12(b)(2)**

5    In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

6    12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

7    burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

8    Cir. 2019). " Where, as here, the defendant's motion is based on written materials rather than an

9    evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

10   withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

11   (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

12   However, this standard "is not toothless," and the party asserting jurisdiction "cannot

13   simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650

14   (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).  Thus,

15   courts may consider declarations and other evidence outside the pleadings to determine whether it

16   has personal jurisdiction. *See id.*  At this stage of the proceeding, "uncontroverted allegations in

17   plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

18   contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*,

19   374 F.3d at 800).  On the other hand, courts "may not assume the truth of allegations in a pleading

20   which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

21   1223 (9th Cir. 2011).

22   **F.  Motion to Dismiss Under Rule 12(b)(3)**

23   Under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss a

24   complaint for improper venue.  Once the defendant has challenged the propriety of venue in a

25   given court, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v.*

26   *Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  When considering a motion to

7

dismiss for improper venue, a court may consider facts outside of the pleadings. *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

Pursuant to 28 U.S.C. § 1406(a), if the court determines that venue is improper, the court must either dismiss the action or, if it is in the interests of justice, transfer the case to a district or division in which it could have been brought. Whether to dismiss for improper venue, or alternatively to transfer venue to a proper court, is a matter within the sound discretion of the district court. *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992).

### G. Motion to Transfer Venue

A motion to transfer venue from one district to another is governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Generally, the party seeking transfer bears the burden of showing that transfer is appropriate. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (noting the moving party failed to meet its burden of showing the alternate forum "was the more appropriate forum for the action").

Under the plain text of the statute, the moving party must make two showings in order to justify transfer. First, the transferee forum must be one in which the case "might have been brought." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960). "In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

Second, provided the case could have been brought in the proposed transferee forum, the movant must persuade the court that considerations of "convenience of parties and witnesses" and "the interest of justice" weigh in favor of transfer. *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014). The Ninth Circuit has identified a number of specific but non-exhaustive factors which "the court may consider" in analyzing those overarching statutory considerations: "(1) the location where the relevant agreements were negotiated and executed, (2)

8

United States District Court
Northern District of California

United States District Court
Northern District of California

the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, ... (8) the ease of access to sources of proof," (9) "the presence of a forum selection clause," if any; and (10) "the relevant public policy of the forum state, if any."  *Jones*, 211 F.3d at 498-99.

A district court is not restricted to the pleadings on a motion to transfer and may consider "undisputed facts supported by affidavits, depositions, stipulations, or other relevant documents." *FastCap, LLC v. Snake River Tool Co., LLC*, No. 15-CV-02764-JSC, 2015 WL 6828196, at *2 (N.D. Cal. Nov. 6, 2015).  Section 1404(a) affords the court significant discretion to transfer the case based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

### H.  Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

9

III.   **DISCUSSION**

Kahn Respondents move to vacate the preliminary injunction and to dismiss for (1) lack of subject matter jurisdiction, (2) personal jurisdiction, and (3) improper venue.  In the alternative, Kahn Respondents move to vacate the order granting the preliminary injunction on the basis of mistake, inadvertence, surprise or excusable neglect under Rule 60(b).  Lastly, Kahn Respondents seek to transfer this matter to the United States District Court for the Southern District of Florida.

Before addressing each of Kahn Respondents' arguments in turn, the Court first analyzes which rule governs the instant motion.

A.   **The Instant Motion is a Motion for Reconsideration.**

Kahn Respondents' instant motion seeks relief under Federal Rule of Civil Procedure 60(b), which empowers district courts to relieve "a party or its legal representative from a final judgment, order, or proceeding" for one of six enumerated reasons.  However, Rule 60(b) does not apply to "judgments, orders, or proceedings that are not final decisions within the meaning of 28 U.S.C. § 1291, which generally cannot be appealed immediately."  *Meas v. City & Cnty. of San Francisco*, 681 F. Supp. 2d 1128, 1143 (N.D. Cal. 2010).  An order granting a motion for a preliminary injunction is not a final decision, it is an interlocutory order.  *See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("a preliminary injunction is not a 'final judgment, order, or proceeding' that may be addressed by a motion under Rule 60(b)."); *see also Securities and Exchange Commission v. Christian Stanley, Inc.*, CV 11–7147–GHK (MANx), 2012 WL 13012497 (C.D. Cal. Apr. 3, 2012) ("Rule 60(b) is not the appropriate vehicle through which Defendant can request dissolution of the preliminary injunction."); *see also* 28 U.S.C. § 1292(a)(1) (providing that appellate jurisdiction exists over interlocutory orders such as the granting of an injunction.).  Thus, Kahn Respondents cannot obtain relief from an order granting a preliminary injunction under Rule 60.

Instead, to determine the proper treatment of the instant motion, the Court "must look beyond the motion's caption to its substance."  *Credit Suisse First Boston Corp.*, 400 F.3d at 1124.

10

United States District Court
Northern District of California

1    In these circumstances, courts decide whether Federal Rule of Civil Procedure 54 or Rule 59

2    applies.  Federal Rule of Civil Procedure 54(b) requires that the party seeking to dissolve or

3    modify the preliminary injunction show "that a significant change in facts or law warrants revision

4    or dissolution of the injunction."  *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

5    Conversely, "the purpose of a motion to reconsider under [Rule] 59(e) is to relitigate the original

6    issue." *Credit Suisse First Boston*, 400 F.3d at 1124 (cleaned up).

7    Wang argues that the instant motion cannot be construed as a motion under Rule 54(b)

8    because (1) the instant motion fails to identify any new material facts or change in law to warrant

9    modifying or dissolving the preliminary injunction, and (2) Kahn Respondents could have raised

10   all the arguments in the instant motion "at the time the injunction was imposed."  Opp'n 6-8.

11   Kahn Respondents never responded to Wang's argument because Kahn Respondents failed to file

12   a reply in support of the instant motion.

13   Regardless, the Court agrees with Wang.  Kahn Respondents' arguments in the instant

14   motion are nearly identical to Kahn Respondents' statement in the parties' initial joint case

15   management statement filed before the Court issued the preliminary injunction.  *See* ECF No. 41

16   (stating that the Court lacks subject matter and personal jurisdiction, and that venue is improper).

17   The instant motion identifies no new facts or law that occurred *after* the imposition of the

18   preliminary injunction.  Thus, the instant motion cannot be brought pursuant to Rule 54(b).

19   Accordingly, the Court construes Kahn Respondents' motion to vacate preliminary

20   injunction and dismiss as a motion for reconsideration.  *See Aevoe Corp. v. AE Tech. Co.*, No.

21   2:12–cv–0053–GMN–RJJ, 2012 WL 760692, at *2-3 (D. Nev. Mar. 7, 2012) (applying "the

22   motion for reconsideration standard under Rule 59(e) to the . . . motion to determine whether or

23   not to vacate or deny the preliminary injunction.").  Below the Court considers Kahn

24   Respondents' arguments under the motion for reconsideration standard then addresses Kahn

25   Respondents' subject matter, personal jurisdiction, and improper venue arguments.

26   **B.  Kahn Respondents Fail to Meet Civil Local Rule 7-9's Requirements for**

27                                                    11

28   ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
     INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
     JURISDICTION AND VENUE

United States District Court
Northern District of California

**Reconsideration.**

Motions for reconsideration are governed by Civil Local Rule 7-9, which provides that, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Here, Kahn Respondents did not seek leave of Court before filing the instant motion. The instant motion is properly denied for this reason alone.

Moreover, Kahn Respondents do not satisfy any of the requirements for obtaining leave to file a motion for reconsideration as set forth in Civil Local Rule 7-9(a). In order to obtain leave of Court to file a motion for reconsideration, the moving party must specifically show: (1) "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought [and] ... that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order"; (2) "[t]he emergence of new material facts or a change of law occurring after the time of such order"; or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civil L.R. 7-9(b).

Here, Kahn Respondents present no arguments showing that reconsideration is warranted under Civil Local Rule 7-9(b)(1), (2), or (3). For example, Kahn Respondents "point[] to no material difference [in fact] or change in law from that considered in the order granting" Wang's motion for PI. *Sebastian Brown Productions, LLC v. Muzooka, Inc.*, No. 15-CV-01720-LHK, 2016 WL 8114190, at *2 (N.D. Cal. July 5, 2016) (concluding such failure precludes the party from satisfying the requirements of Rule 7-9(b)(1) or (2)). Nor do Kahn Respondents "identify any 'failure by the Court to consider material facts or dispositive legal arguments' presented in the briefing" on the motion for PI and thus fail to show reconsideration is warranted under Civil Local Rule 7-9(b)(3). *Id.* (quoting Civil L.R. 7-9(b)(3)). Rather, all the arguments Kahn Respondents now present against imposition of the preliminary injunction, were "available to [Respondent] at the time of the Court's order." *Id.* As such, Kahn Respondents fail to show they are entitled to

United States District Court
Northern District of California

1   reconsideration under Civil Local Rule 7-9(b)(1), (2), or (3).  *Id.*  Kahn Respondents therefore fail

2   to meet the standard for reconsideration.

3       Kahn Respondents' failure to meet the standard for reconsideration is sufficient basis alone

4   to deny the instant motion.  Nonetheless, the Court addresses the merits of Kahn Respondents'

5   subject matter jurisdiction, personal jurisdiction, venue and transfer arguments in the instant

6   motion.

7       **C.  The Court Has Subject Matter Jurisdiction.**

8       In the Petition, Wang alleges that this Court has original jurisdiction under 9 U.S.C. § 203.

9   *See* Pet. at 2.  Kahn Respondents do not challenge this jurisdictional basis.  Instead, Kahn

10  Respondents contend this Court lacks subject matter jurisdiction because the agreement in

11  question delegates the question of arbitrability to an arbitrator, not this Court.  Opp'n at 27-31.

12      The Court has an "independent obligation" to determine whether subject matter

13  jurisdiction exists "even if the issue is neglected by the parties." *Allstate Ins. Co. v. Hughes*, 358

14  F.3d 1089, 1093 (9th Cir. 2004).  Accordingly, the Court first addresses whether it has subject

15  matter jurisdiction under 9 U.S.C. § 203 and then whether the Court must enforce the arbitration

16  provision under Rule 12(b)(1).

17      **1.  The Court Has Subject Matter Jurisdiction Under 9 U.S.C. § 203.**

18      Wang argues that "[t]his Court has original jurisdiction over this action under 9 U.S.C. §

19  203 because this is a civil action concerning an arbitration falling under the Convention on the

20  Enforcement and Recognition of Foreign Arbitral Awards" ("New York Convention").  Pet. at 2.

21  To fall under the New York Convention, "the award [or arbitration agreement] (1) must arise out

22  of a legal relationship (2) which is commercial in nature and (3) which is not entirely domestic in

23  scope."  *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.*, 887 F.2d 1357, 1362 (9th Cir.

24  1989); *see also LaPine v. Kyocera Corp.*¸ No. C 07-06132 MHP, 2008 WL 2168914, at *3 (N.D.

25  Cal. May 23, 2008) ("An arbitration agreement or arbitral award 'falls under' the Convention if it

26  'aris[es] out of a legal relationship, whether contractual or not, which is considered as

27                                          13

28

commercial,' provided that if the relationship is entirely between U.S. citizens, it must involve property or performance abroad or have some other reasonable relation with a foreign country." (quoting 9 U.S.C. § 202)).

The Ninth Circuit has yet to determine whether a court has jurisdiction over a petition to enjoin arbitration under the New York Convention.  The question is two fold.  First, whether the arbitration agreement in question falls under the New York Convention, such that the Court has jurisdiction under 9 U.S.C. § 203.  Second, whether Wang's choice of remedy, not explicitly provided for in the New York Convention, affects the Court's subject matter jurisdiction.

On the first point, the legal relationship here is a purported tax refund contract between Longstaff on behalf of Wang, a non-U.S. citizen, who resides in China, and Kahn Respondents, residents of Florida.  *See* Pet. at 2, 4-5.  The contract relates to state and federal tax withholding from the sale of two California properties owned by Wang.  *See id*.  Accordingly, the arbitration agreement appears to fall under the New York Convention because it is a commercial agreement between a United States resident and a non-U.S. citizen who resides outside the United States.  *See LaPine*, 2008 WL 2168914, at \*3 (concluding the arbitration agreement and arbitral award fell under the New York Convention because there was a commercial agreement "not entirely between citizens of the United States."); *see also CRT Capital Group v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 372 (S.D.N.Y. 2014) (finding an engagement letter between two corporations was "an arbitration agreement arising out of an international commercial agreement" because one entity was "a foreign entity").

The second question is more complicated.  The New York Convention does not explicitly authorize a court to enjoin pending arbitration.  The Convention states that courts may compel arbitration and appoint arbitrators, 9 U.S.C. § 206, or confirm arbitral awards falling under the New York Convention, *id.* § 207.  However, in the context of analyzing their own subject matter jurisdiction, several district courts have concluded that a court has subject matter jurisdiction under 9 U.S.C. § 203 to determine whether it can enjoin or stay an arbitration proceeding that falls

14

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE

1    under the New York Convention.  In *CRT Capital*, the district court distinguished between its

2    jurisdiction to hear the action and its remedial authority to enjoin an arbitration proceeding that

3    arises under the New York Convention.  63 F. Supp. 3d at 374-75.  The court in *CRT Capital*

4    explained that "[n]othing in § 206 or § 207 limits the subject matter jurisdiction of federal courts"

5    and treating these provisions as "jurisdictional provisions confuses the subject matter jurisdiction

6    of federal courts with their remedial authority."  *Id.* at 374.

7          In *DynaResource de Mexico, S.A. de C.V. v. Goldgroup Recourse, Inc*, the district court

8    similarly found it had subject matter jurisdiction under the New York Convention, by relying on

9    *CRT Capital*, to consider a claim seeking to stay an arbitration.  No. 14-cv-01527-MSK-KMT,

10   2015 WL 5693560, at *4-5 (D. Colo. Sept. 29, 2015).

11         The Court agrees with the reasoning in the *CRT Capital* and *DynaResource* decisions.  The

12   plain language of 9 U.S.C. § 203 vests the district court with jurisdiction over "[a]n action or

13   proceeding falling under" the New York Convention.  Section § 202 in turn provides the definition

14   of "[a]n arbitration agreement or arbitral award" that falls under the New York Convention.

15   Because Wang adequately alleges that the action here meets the requirements of § 202, and thus

16   "falls under" the New York Convention, the Court concludes it has jurisdiction under § 203.

17         Two additional decisions support the Court's conclusion.  First, the Ninth Circuit recently

18   interpreted the meaning of 9 U.S.C. § 202 and § 203 in *Al-Qarqani v. Chevron Corp.*, 8 F.4th

19   1018, 1024 (9th Cir. 2021).  There, the Ninth Circuit concluded that the requirement that a binding

20   arbitration exists in order to confirm an arbitration award under the New York Convention was not

21   jurisdictional.  *Id.* at 1024.  The Ninth Circuit declined to interpret § 202 and § 203 to limit the

22   definition of "legal relationship" that falls "under the Convention" to only instances where the

23   parties entered into a binding agreement to arbitrate.  *Id.*  Instead, the Ninth Circuit found that the

24   phrase in § 202 "'arising out of' parallels the more familiar grant of federal-question jurisdiction

25   in 28 U.S.C. § 1331, and . . . the two provisions should be read similarly."  *Id.*  Thus, the Ninth

26   Circuit explained that the court may have subject matter jurisdiction over a claim "aris[ing] under

27   15

28

1   federal law even if a court ultimately concludes that federal law does not provide a cause of

2   action." *Id.*

3        *Al-Qarqani* is relevant for two reasons.  First, it confirms that the absence of a binding

4   agreement to arbitrate, as alleged by Wang here, does not deprive the Court of subject matter

5   jurisdiction.  Second, in *Al-Qarqani* the Ninth Circuit explained that "only when Congress 'clearly

6   states that a threshold limitation on a statute's scope shall count as jurisdictional' should it be

7   treated as such."  8 F.4th at 1024 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)).

8   As discussed above, "[n]othing in § 206 or § 207 limits the subject matter jurisdiction of federal

9   courts." *CRT Capital*, 63 F. Supp. 3d at 374.  Accordingly, the reasoning in *Al-Qarqani* compels

10  the Court's conclusion that the potential limits in § 206 or § 207 are not jurisdictional.  Put

11  differently, the Court has subject matter jurisdiction to consider the Petition, even if the Court

12  ultimately concludes that Wang is not entitled to the specific remedy he seeks.  *See Al-Qarqani*, 8

13  F.4th at 1024-25 (explaining that a federal court may have subject matter jurisdiction even if

14  "federal law does not provide a cause of action."); *see also Industrial Risk. Inversiones y*

15  *Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH,* 921 F.3d 1291, 1301–02 (11th

16  Cir. 2019) (explaining that "[t]he relevant inquiry under § 203 is not whether a particular action or

17  proceeding is provided by the [New York] Convention . . . it is whether the 'action or proceeding

18  fall[s] under the Convention' itself.")

19       The second relevant decision is *Mitchell v. Tillett*, where the district court considered

20  whether a petition to vacate under the New York Convention was a valid remedy.  No. 15-cv-

21  04044-VC, 2016 WL 6436820, at *1 (N.D. Cal. Oct. 28, 2018).  The court in *Mitchell* explained

22  the question of whether "the Convention allows for vacatur at all" was an open question in the

23  Ninth Circuit, and as relevant here, considered this question on the merits, rather than in the

24  context of subject matter jurisdiction.  *Id.* at *1-2.  In so doing, *Mitchell* further supports the

25  Court's conclusion that the question of remedy is distinct from the Court's subject matter

26  jurisdiction under the New York Convention.

27                                                      16

28  Case No. 20-CV-08033-LHK
    ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
    INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
    JURISDICTION AND VENUE

United States District Court
Northern District of California

1        For all these reasons, the Court concludes it has subject matter jurisdiction to consider the

2   Petition under 9 U.S.C. § 203.  The Court now turns to Kahn Respondents' argument that the

3   Court lacks subject matter jurisdiction due to the nature of the binding arbitration agreement

4   between the parties.

### 2. The Court Has Subject Matter Jurisdiction to Determine Whether the Parties Formed a Contract.

6        Kahn Respondents move to dismiss the action due to lack of subject matter jurisdiction

7   under Federal Rule of Civil Procedure 12(b)(1).  According to Kahn Respondents, the Court lacks

8   subject matter jurisdiction because the RDS agreement "delegates questions of arbitrability to an

9   Arbitrator."  Mot. at 27-28.  Wang argues the arbitration provision is inapplicable for two reasons.

10  First, Wang argues a valid contract was never formed because he never signed the RDS

11  agreement, rather his signature on the document was the product of fraud by Kahn and Longstaff.

12  Mot. at 11-13.  Wang also contends that the RDS agreement delegates the question of arbitrability

13  to a court, not an arbitrator.  *Id.* at 13.

14       "[T]he Ninth Circuit has not yet expressly ruled on whether a motion to dismiss based on a

15  binding arbitration clause is subject to a motion brought under Rule 12(b)(1)."  *Munger v.*

16  *Cascade Steel Rolling Mills, Inc.*, 332 F. Supp. 3d 1280, 1287 (D. Or. 2018).  District courts in the

17  Ninth Circuit disagree whether Rule 12(b)(1) is the appropriate procedural mechanism.  Some

18  district courts have held that "a motion to dismiss under Rule 12(b)(1) for lack of subject matter

19  jurisdiction is a procedurally sufficient mechanism to enforce an arbitration provision."  *E.g.*,

20  *Gutierrez v. FriendFinder Networks Inc.*, No. 18-cv-05918-BLF, 2019 WL 1974900, at *2 (N.D.

21  Cal. May 3, 2019) (cleaned up); *see also Filimex, LLC v. Novoa Investments, LLC*, No. CV 05–

22  3792–PHX–SMM, 2006 WL 2091661, at *3 (D. Ariz. July 17, 2006) ("The Court will avoid a

23  'hypertechnical' ruling that would inevitably lead to duplicative litigation and will presently

24  consider the arbitrability of this dispute.").  Other district courts in this Circuit have held that the

25  "enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a

27                                              17

1   motion to dismiss under Rule 12(b)(1)." *Pinkerton Tobacco Co., LP v. The Art Factory AB*, No.:

2   2:20-cv-01322-SB-MRW, 2021 WL 541441, at *4 (C.D. Cal. Jan. 28, 2021) (collecting cases).

3        However, the Court need not determine whether Rule 12(b)(1) is a sufficient procedural

4   mechanism.  As discussed in more depth below, treating Kahn Respondents' motion to vacate

5   preliminary injunction and dismiss as a motion to compel arbitration creates several additional

6   threshold problems for the parties and the Court.

7        Below, the Court first explains the relevant arbitration case law and why the Court and not

8   the arbitrator must decide the contract formation issue.  The Court then considers the contract

9   formation issue, the parties' lack of arguments about contract formation, and the likely factual

10  dispute even had the parties presented such arguments.  Lastly, the Court explains why it will not

11  construe the instant motion as a motion to compel arbitration.

12              **a.   The Court Must Decide Contract Formation Issues.**

13       "Generally, in deciding whether to compel arbitration, a court determines two 'gateway'

14  issues: (1) whether the parties agreed to arbitrate; and (2) whether their agreement covers the

15  dispute brought before the court." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

16  (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  These gateway issues,

17  "validity and arbitrability[,] can be delegated to an arbitrator by agreement." *Ahlstrom v. DHI*

18  *Mortgage Co.*, No. 20-15114, 2021 WL 6133104, at *3 (9th Cir. Dec. 29, 2021); *see also Henry*

19  *Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("parties may agree to

20  have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of

21  'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement

22  covers a particular controversy." (cleaned up)).  "However, courts should not assume that the

23  parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they

24  did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (cleaned up).  The

25  party moving to compel arbitration bears the burden on each of these elements. *Ashbey v.*

26  *Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

27                                                      18

28  ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
    INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
    JURISDICTION AND VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    However, "arbitration is a matter of contract and a party cannot be required to submit to

2    arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns*

3    *Workers of Am.*, 475 U.S. 643, 648 (1986).  As such, "courts should order arbitration of a dispute

4    only where the court is satisfied that neither the formation of the parties' arbitration agreement nor

5    (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability

6    or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S.

7    287, 299 (2010).  "Where a party contests either or both matters, the court must resolve the

8    disagreement."  *Id.* at 299-300 (cleaned up); *see also Sanford v. MemberWorks, Inc.*, 483 F.3d

9    956, 962 (9th Cir. 2007) ("when one party disputes 'the making of the arbitration agreement,' the

10   Federal Arbitration Act requires that 'the court [ ] proceed summarily to the trial thereof' before

11   compelling arbitration under the agreement."  (quoting 9 U.S.C. § 4) (alteration in original)).

12   Thus, under Ninth Circuit law, "[i]ssues regarding the *validity* or *enforcement* of a putative

13   contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of

14   a contract as a whole must be determined by the court prior to ordering arbitration."  *Sanford*, 483

15   F.3d at 962; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.2 (2010) ("The issue

16   of the agreement's 'validity' is different from the issue whether any agreement between the parties

17   'was ever concluded . . . .'").  The Ninth Circuit recently reaffirmed this "well-settled principle"

18   and held that "parties *cannot* delegate issues of formation to the arbitrator."  *Ahlstrom*, 2021 WL

19   6133104, at *3 (emphasis added).  Rather, when a party challenges "the very existence of an

20   agreement to arbitrate, the district court *was required* to address [the party's] challenge and

21   determined whether an agreement existed."  *Id.* (emphasis added).

22   Although Kahn Respondents focus on the gateway question of delegation, Wang

23   challenges the existence of the contract.  According to Wang, he never signed the disputed

24   agreements or granted Longstaff the power of attorney to sign on Wang's behalf.  *See* Pet. at 5-6;

25   *see also* ECF No. 23-4 ("Wang Decl.") ¶ 16-21.  Wang alleges the power of attorney documents

26   were forged and thus Longstaff had no authority to sign on Wang's behalf.  *See* Pet. at 5-6; *see*

27                                                  19

*also* Wang Decl. ¶ 16-21.  Having failed to file a reply, Kahn Respondents fail to address Wang's argument.

The Court agrees with Wang.  The Petition challenges whether parties formed a contract because "mutual assent is necessary to the formation of a contract."  *Mendez v. LoanMe, Inc.*, No. 20-cv-00002-BAS-AHG, 2020 WL 6044098, at *3 (S.D. Cal. Oct. 13, 2020) (citing Cal. Civ. Code § 1550).  The Court applies California law because neither party argues for the application of a different state law and courts generally "apply ordinary state-law principles that govern the formation of contracts" to decide "whether the parties agreed to arbitrate a certain matter (including arbitrability)," *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The Court would reach the same conclusion even if the choice of law provision in the RDS agreement governed, because Florida's contract law also requires mutual assent.  *See, e.g.*, *Clark v. Clark*, NO. 11-14135-CIV-MARTINEZ/LYNCH, 2012 WL 13015054, at *2 (S.D. Fla. Feb. 1, 2012) (noting that Florida law requires that "[t]here must be mutual assent to the contract's formation.").  Because Wang challenges the formation of the contract, the Court and not the arbitrator, must first determine whether the parties formed a contract "prior to ordering arbitration."  *Sanford*, 483 F.3d at 962.

### b.  The Parties Fail to Present Arguments About Contract Formation.

Ordinarily, the Court would now proceed to determine whether a contract exists between the parties.  *See, e.g.*, *Ahlstrom*, 2021 WL 6133104, at *3 (noting that where a party contests contract formation "the court must resolve the disagreement" before ordering arbitration of a dispute).  However, *neither* party has advanced any contract formation arguments in the briefings.  As noted above, Kahn Respondents only argue that the parties delegated the question of arbitrability, a gateway question, to the arbitrator.  Mot. at 27-31.  However, as explained above, that argument misses the mark because Wang argues no contract was formed.

Moreover, Kahn Respondents' argument is refuted by the plain language of the RDS agreement that Kahn Respondents attached to the instant motion.  *See* ECF No. 48-1.  As Wang

20

United States District Court
Northern District of California

points out, Opp'n at 13, the RDS agreement states that the arbitration clause "does not include disputes about the validity, coverage or scope of this Dispute clause or any part of this Dispute Clause . . . All such disputes are for *a court and not an Arbitrator* to decide." *Id.* at 5 (emphasis added). Thus, the RDS agreement explicitly delegates the gateway questions to the courts, not an arbitrator. Kahn Respondents ignore this provision and instead unpersuasively argue that "the RDS agreement's specifying incorporation of the arbitration rules and the FAA demonstrates clear and unmistakable evidence of the parties' intent to delegate arbitrability to the arbitrator." Mot. at 30. Again, the plain language of the RDS agreement refutes Kahn Respondents' argument. Immediately below the delegation of the gateway questions to the courts, the RDS agreement states that "arbitration rules that conflict with this Dispute Clause *do not apply*." *Id.* (emphasis added). Thus, incorporation of the arbitration rules cannot be "clear and unmistakable evidence" here because the parties explicitly decided that arbitration rules that conflict with the delegation of the gateway questions to the courts "do not apply."

Lastly, even if Kahn Respondents' interpretation that the RDS agreement delegates formation issues to the arbitrator was correct, the Ninth Circuit in *Ahlstrom* explicitly rejected this argument. *See* 2021 WL 6133104, at *3 (rejecting the argument that "parties may also agree to delegate issues of formation to an arbitrator"). As such, even if Kahn Respondents' delegation argument were relevant to determine the Court's subject matter jurisdiction, it still fails.

Turning to Wang's arguments, the Court also finds that Wang fails to advance any meaningful arguments about the RDS agreement formation. Wang's opposition to the instant motion only addresses the threshold issue, arguing that the "court, not an arbitrator, must determine the contract's validity." Opp'n at 12. Wang advances no further argument about how the Court should rule on the formation of the RDS agreement.

In the absence of any argument by either party, the Court declines to manufacture arguments for the parties. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("As a general rule, our system is designed around the premise that parties represented by competent

21

1   counsel know what is best for them, and are responsible for advancing the facts and argument

2   entitling them to relief." (internal citation and quotation marks omitted)).

3           **c.  There Is Likely a Factual Dispute About the Formation of the Disputed
                Agreements.**

4

5           Even if the Court were to analyze whether the parties formed a contract, the parties'

6   versions of events, supported by evidence, are diametrically opposed and thus require an

7   evidentiary hearing or a jury trial to resolve.  *See Chime Inst. v. Haney, No. 2:13-CV-05762-SVW*

    *(RZx)*, 2013 WL 12114616, at *4 (C.D. Cal. Oct. 28, 2013) ("Given the factual nature of this

8   dispute, a limited jury trial must be held to determine the validity of the arbitration clause.");

9   *Fuqua v. Kenan Advantage Grp., Inc.*, 3:11-CV-01463-ST, 2012 WL 2861613 (D. Or. Apr. 13,

10  2012) ("This is a credibility issue that cannot be resolved based on competing affidavits.

11  Therefore, prior to resolving [the] motion, an evidentiary hearing must be held to determine

12  whether a valid Arbitration Agreement exists.").

13          It is undisputed that Wang never signed the PDRF agreement or RDS agreement.

14  However, "nonsignatories of arbitration agreements may be bound by the agreement under

15  ordinary contract and agency principles."  *Letizia v. Prudential-Bache Sec., Inc.*, 802 F.2d 1185,

16  1187 (9th Cir.1986).  Here, the parties dispute whether Wang is bound as a non-signatory to the

17  agreement.  Specifically, the parties dispute whether Longstaff had power of attorney to sign on

18  Wang's behalf.  Wang alleges the power of attorney was forged.  *See* Pet. at 5-6.  In support,

19  Wang provides his own declaration, *see* Wang Decl. ¶ 16-21, and a declaration of a handwriting

20  expert, *see* ECF No. 23-4 ("Fisher Decl.") ¶ 16-18.

21          On the other hand, Kahn Respondents provide (1) a signed acknowledgement between

22  Kahn and Wang, which states that Wang has "authorized Attorney Longstaff to receive my [tax]

23  refunds and settle any fees associated with this process," ECF No. 48-2; and (2) Kahn's

24  declaration, Mot. at 40.  Wang disputes the meaning of the signed acknowledgment.  Wang Decl.

25  ¶ 18-21.

26

27                                              22

28

This factual dispute is material given that a forged contract shows a lack of mutual assent, a basic requirement for all valid contracts.  *See Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("Every contract requires mutual assent."); *Cornejo v. Spenger's Fresh Fish Grotto*, No. C 09–05564 MHP, 2010 WL 1980236, at *4 (N.D. Cal. May 17, 2010) ("State–law contract defenses, including that one's signature to a contract was forged, can be sufficient to invalidate an arbitration agreement.").

Where a factual dispute about the formation of the contract exists, "the court must conduct a limited jury trial unless the party opposing arbitration does not demand a jury." *Gonzalez v. Food Management Partners, Inc.*, No. 19-CV-08496-ODW (ASx), 2020 WL 4437267, *3 (C.D. Cal. Aug. 3, 2020); *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."); *see also* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof.").

However, the right to a limited jury trial can be forfeited.  The party opposing arbitration has to demand a jury trial "on or before the return day of the notice of application." *Mendez*, 2020 WL 6044098, at *6 (quoting 9 U.S.C. § 4).  "Courts confronted with the issue have generally determined that 'the return day of the notice of application,' by which a plaintiff must file a demand for jury trial, is the date on which the plaintiff's opposition to a petition to compel arbitration is due." *Clifford v. Trump*, No. CV-18-02217-SJO (FFMx), 2018 WL 5263189, at *2 (C.D. Cal. Mar. 29, 2018) (citing cases).

Understandably, given the lack of clarity in Kahn Respondents' instant motion on this issue, Wang did not demand a jury trial in his opposition to the instant motion.  Thus, if the Court were to construe Kahn Respondents' motion to vacate preliminary injunction and dismiss as a motion to compel arbitration, Wang would forfeit his right to a jury trial on the disputed issue of whether the parties formed a valid contract.

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE

United States District Court
Northern District of California

1          Kahn Respondents would thus benefit from (1) failing to oppose Wang's motion for

2   preliminary injunction, (2) filing the instant motion that does not comply with the Civil Local

3   Rules, (3) filing the instant motion that fails to satisfy the requirements for a motion for

4   reconsideration, (4) failing to file a reply in support of the instant motion, (5) not clearly asking

5   the Court to compel arbitration, (6) presenting *no* arguments on whether a valid contract was

6   formed between the parties, and (7) relying solely on one argument against subject matter

7   jurisdiction that is plainly contradicted by Kahn Respondents' own evidence.  The Court declines

8   to reward such motion practice.

9          Moreover, the parties' December 8, 2021 joint case management statement, filed after the

10  briefing on the instant motion, shows that Kahn Respondents do not view the instant motion as a

11  motion to compel arbitration.  In the joint case management statement, Kahn Respondents stated

12  that they "*intend to bring* a motion to compel arbitration" and any future scheduling dates "need to

13  await the court's ruling on the pending Motion to vacate . . . *and* Kahn Respondents' motion to

14  compel arbitration."  ECF No. 64 at 16, 18 (emphasis added).  As such, the Court sees no reason

15  to construe the instant motion as a motion to compel arbitration.

16         To sum up, the Court finds it has subject matter jurisdiction to consider the Petition under

17  9 U.S.C. § 203.  The Court also, at minimum, has subject matter jurisdiction to determine whether

18  the parties entered into the PDRF and RDS agreements before ordering arbitration.  Kahn

19  Respondents' arguments to the contrary are unpersuasive for the reasons discussed above.  *See* p.

20  20-21, *supra.*  The Court therefore concludes it has subject matter jurisdiction and declines to

21  construe the instant motion as a motion to compel arbitration for the reasons discussed above.

22         Accordingly, the Court DENIES Kahn Respondents' motion to vacate preliminary

23  injunction and dismiss under Federal Rule of Civil Procedure 12(b)(1).

24         The Court now considers whether it has personal jurisdiction over Kahn Respondents.

25      **D.  The Court Has Personal Jurisdiction Over Kahn Respondents.**

26         Kahn Respondents move to dismiss the Petition for lack of personal jurisdiction.  Mot. at

27  Case No. 20-CV-08033-LHK

28  ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
    INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
    JURISDICTION AND VENUE

United States District Court
Northern District of California

1    15. Kahn Respondents argue that the Court has no general or specific jurisdiction over Kahn or

2    Forensic Professionals Group USA ("FPG").  Specifically, Kahn Respondents argue there is no

3    general jurisdiction because FPG, owned and operated by Kahn out of his Florida home, has no

4    commercial footprint in California, and Kahn is not a California resident.  Mot. at 15-24.  Kahn

5    Respondents also argue there is no specific jurisdiction because they "(i) did not 'purposefully

6    direct' their activities towards California, or engage in a transaction with a Californian; and (ii) the

7    claims at issue do not arise out of any interaction or even competition between Defendants and a

8    Californian." *Id.*

9         Wang argues the Court has personal jurisdiction because there is specific jurisdiction over

10   Kahn Respondents.  Wang does not argue that the Court has general jurisdiction over Kahn

11   Respondents.  Thus, Wang effectively concedes that the Court lacks general jurisdiction over

12   Kahn Respondents.   Wang contends there is specific jurisdiction because (1) Kahn Respondents

13   directed activities toward California; (2) Wang's claims arose out of Kahn Respondents' contact

14   with California; and (3) exercising jurisdiction over Kahn Respondents would not offend

15   traditional notions of fair play and substantial justice.  Opp'n at 13-18.

16        To determine the propriety of asserting personal jurisdiction over a defendant, the Court

17   first examines whether such jurisdiction is permitted by the applicable state's long-arm statute and

18   comports with the demands of federal due process.  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &*

19   *Clements, Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003).  California's long-arm statute, Cal. Civ.

20   Proc. Code § 410.10, is coextensive with federal due process requirements, and therefore the

21   jurisdictional analyses under state law and federal due process are the same.  *See* Cal. Civ. Proc.

22   Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with

23   the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

24   647 F.3d 1218, 1223 (9th Cir. 2011).

25        For a court to exercise personal jurisdiction over a defendant consistent with due process,

26   that defendant must have "certain minimum contacts" with the relevant forum "such that the

27                                                            25

28   ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
     INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
     JURISDICTION AND VENUE

United States District Court
Northern District of California

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant.  *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists where a defendant is physically present or where a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citation omitted).  If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant's "contacts with the forum give rise to the cause of action before the court."  *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017).  In ruling on a motion to dismiss for lack of personal jurisdiction, a court may consider "evidence presented in affidavits to assist it in its determination."  *Id.* at 922.

Because Wang effectively concedes that the Court lacks general jurisdiction over Kahn Respondents and the Court concludes below that Kahn's and FPG's contacts with California give rise to specific jurisdiction, "the Court need not address general jurisdiction, which has an 'exacting standard.'"  *Vanity.com, Inc. v. Vanity Shop Grand Forks, Inc.*, No. C 12–02912 SI, 2012 WL 4755041, at *3 (N.D. Cal. Oct. 4, 2012) (quoting *Schwarzenegger*, 374 F.3d at 801); *see also GT Securities, Inc. v. Klastech GmbH*, No. C–13–03090 JCS, 2014 WL 2928013, at *8 (N.D. Cal. June 27, 2014) ("because the Court finds that there are sufficient contacts with the forum related to the claim to support its exercise of specific jurisdiction, the Court need not decide the question of general jurisdiction over" defendant).

26

### 1. The Court Has Specific Personal Jurisdiction Over Kahn and FPG.

For specific personal jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. The plaintiff has the burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.*

Because Kahn's and FPG's "contacts with" California "must be assessed individually," *In re Boon Global Ltd.*, 923 F. 3d 643, 651 (9th Cir. 2019), the Court briefly explains the relationship between Kahn and FPG and the applicable law about imputing jurisdictional contacts between individuals and corporations. Kahn declares that he is the owner and operator of FPG. Mot. at 39. As the owner and operator of FPG, Kahn's contacts can be imputed to FPG "for purposes of determining jurisdiction." *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) (imputing to a company the forum contacts of its executive vice-president). In addition, "[f]or claims sounding in tort, a corporate officer can be subject to jurisdiction based on his own sufficient individual contacts with the forum." *Id.* at 652; *see also Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522-23 (9th Cir. 1989) (considering owners' forum contacts, including acts done on behalf of the corporation, for tort based claims).

The Court now considers whether it has specific jurisdiction for each Kahn Respondent under the Ninth Circuit's three-prong test.

### a. Kahn and FPG Each Purposefully Directed Activities into California.

The first prong of the Ninth Circuit's three-prong test for personal jurisdiction requires that the defendant either purposefully directed its activities at the forum or purposefully availed itself of the privilege of doing business in the forum. This is because under Ninth Circuit law, courts

27

1    "apply different purposeful availment tests to contract and tort cases." *Ziegler*, 64 F.3d at 473.

2    Wang alleges that he "is the victim of a multi-faceted scheme concocted and carried out by

3    Kahn, FPG, Wang's former counsel, Longstaff" and others "to defraud him in connection with"

4    the sale of the Palo Alto properties and "portions of the tax refunds" Wang was entitled to receive

5    from the state of California and the federal government.  Pet. at 1.  As a result, Wang seeks to

6    enjoin an arbitration proceeding arising from the PDRF agreement and RDS agreement.  Wang

7    alleges that he never signed either agreement.  In totality, these allegations appear to sound in tort

8    rather than contract.  Moreover, the parties make no explicit representation as to which test should

9    govern.  Therefore, the purposeful direction test will be used as this case appears to sound in tort.

10   *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 974 F.3d 1064, 1069 (9th Cir. 2017) ("Where, as

11   here, a case sounds in tort, we employ the purposeful direction test."); *see also Lang v. Morris*,

12   823 F. Supp. 2d 966, 970 (N.D. Cal. 2011) (explaining that "there is no absolute rule prohibiting

13   the application of either test.").

14   Under Ninth Circuit precedents, "the purposeful direction . . . requirement for specific

15   jurisdiction is analyzed in intentional tort cases under the . . . test derived from *Calder v. Jones*

16   . . . ." *Dole Food Co.*, 303 F.3d at 1111.  To establish purposeful direction, a plaintiff must satisfy

17   a 3-prong test from the United States Supreme Court's opinion in *Calder v. Jones*: (1) the

18   defendant must have committed an intentional act; (2) the defendant's act was expressly aimed at

19   the forum state; and (3) the defendant knew the brunt of the harm was likely to be suffered in the

20   forum state.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*,

21   465 U.S. 783, 788-89 (1984)).  "Failing to sufficiently plead any one of these three elements [from

22   *Calder*] is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp.

23   3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d

24   1124, 1128-29 (9th Cir. 2010)).

25   The Court now analyzes each of the three prongs of the *Calder* test as applied to Kahn and

26   FPG to determine whether Kahn and FPG purposefully directed their activities to California.

27   28

Case No. 20-CV-08033-LHK
28   ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
     INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
     JURISDICTION AND VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

### i.   Kahn and FPG each committed several intentional acts.

Kahn Respondents each committed several intentional acts.  The Ninth Circuit construes "'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger v. Fred Marin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2003).  Under Ninth Circuit case law, the "threshold of what constitutes an intentional act is relatively low."  *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1232-33 (N.D. Cal. 2014).

Kahn Respondents argue that Wang "cannot establish that the Respondents committed an (1) intentional act (2) expressly aimed at this forum" because all "of the Respondents' contacts were in the State of Florida."  Mot. at 20.  Not so.  "[T]he defendant need not have been physically present in the jurisdiction to conduct the activity giving rise to the cause of action."  *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).  Below the Court first summarizes the relevant allegations, then considers whether these acts were intentional, and finally whether Kahn's intentional acts can be imputed to FPG.

In the Petition, Wang alleges that: (1) Kahn communicated with two California residents in California, Longstaff (Wang's former attorney) and Xiong (Wang's brother-in-law and authorized agent); (2) these communications related to the alleged scheme to defraud Wang of his money from the sale of two California properties and associated tax refund from the California Franchise Tax Board through the PDRF agreement and the RDS agreement; (3) as part of these communications, "Kahn solicited from Longstaff power of attorney documents purporting to authorize Longstaff to sign the RDS [agreement] on [Wang's] behalf"; (4) Longstaff forged the power of attorney documents in California using California notaries; (5) Kahn Respondents then "filed fraudulent tax returns for Wang with the California Franchise Tax Board, and directed that the California Franchise Tax Board" send the tax refund directly to Kahn Respondents; (6) the California Franchise Tax Board sent Wang's $136,000 state tax refund to Kahn Respondents; and (7) Kahn physically visited California to carry out the terms of the RDS agreement and PDRF

29

1     agreement.  Pet. at 2-3.

2          Allegations (1), (3), (5), and (7) are relevant here.  The Ninth Circuit has held that

3     communicating by speaking, calling, letter writing, or e-mailing is an intentional act.  *See, e.g.*,

4     *Axiom Foods, Inc.*, 874 F.3d at 1069 (e-mailing is an intentional act); *Picot v. Weston*, 780 F.3d

5     1206, 1214 (9th Cir. 2015) (speaking with another person is an intentional act); *Brainerd v. Govs.*

6     *of the Univ. of Alberta*, 873 F.2d 1257, 1258-59 (9th Cir. 1989) (two telephone calls and

7     responding to a letter were intentional activities).  In addition, the "threshold of what constitutes

8     an intentional act is relatively low."  *AirWair*, 73 F. Supp. 3d at 1232-33.  In light of this Ninth

9     Circuit law, the Court concludes that Kahn's communications with Longstaff, Xiong, and the

10    California Franchise Tax Board are all intentional acts.  Kahn filing Wang's state tax returns with

11    the California Franchise Tax Board was also an intentional act.  *Cf. Axiom Foods, Inc.,* 874 F.3d at

12    1069 (finding e-mailing a newsletter was an intentional act); *Brainerd*, 873 F.2d at 1258-59 (9th

13    Cir. 1989) (finding that writing a letter is an intentional activity).

14         Although some of the allegations state that Kahn Respondents, rather than Kahn,

15    communicated with Longstaff and the California Franchise Tax Board, a reasonable inference can

16    be made that Kahn directed the communications.  Kahn declares that FPG's "business operations .

17    . . take place *exclusively* from [his] home in Florida," Mot. at 39 (emphasis added).[3]  The PDF and

18    RDS agreements were signed by Kahn as principal for FPG.  ECF No. 1-2, 1-1.  The RDS

19    agreement also lists Kahn's e-mail and his personal cellphone as points of contact.  ECF No. 1-2 at

20    3.  These uncontroverted facts, in conjunction with no mention of any other FPG employees by

21    Kahn or Wang, permit the reasonable inference that Kahn directed the alleged communications,

22    and pursuant to the PDF and RDS agreements, filed Wang's tax returns with the California

23    Franchise Tax Board.  *See Du Pont v. Prudential Ins. Co.*, No. CV 18-9638-DMG (ASx), 2019

24    WL 4417494, at *7 (C.D. Cal. May 29, 2019) (reasonable to infer that a trustee directed a trust's

25

26    ───────────────
      [3] Neither Kahn, nor Wang, state that FPG has other employees.

27                                                      30

28    Case No. 20-CV-08033-LHK
      ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
      INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
      JURISDICTION AND VENUE

United States District Court
Northern District of California

1    payments).  Pet. at 2.

2         Lastly, Kahn's visit to California was also an intentional act.  *See Impossible Foods Inc. v.*

3    *Impossible X LLC*, No. 21-cv-02419-BLF, 2021 WL 5331444, at *6 (N.D. Cal. Nov. 16, 2021)

4    (travel to California was "intentional conduct"); *Cf. Walden v. Fiore*, 571 U.S. 277, 289 (2014)

5    (noting that travelling to the forum state was a jurisdictionally relevant contact in intentional tort

6    context).  Although Kahn declares that he has not travelled to California to transact business with

7    Wang, Mot. at 39, the Court does not find this declaration directly controverts Wang's factual

8    allegation that Kahn travelled to California to meet with Longstaff.  *Unocal*, 248 F.3d at 922

9    ("Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes

10   of a 12(b)(2) motion to dismiss").

11        Turning to FPG, each intentional act by Kahn discussed above can be imputed to FPG.

12   *See, e.g.*, *Ziegler*, 64 F.3d at 475 (executive vice-president's mailing a letter to plaintiff in

13   California was imputed to corporation); *Axiom*, 874 F.3d at 1069 (employee sending e-mail was

14   intentional act by corporation); *Impossible Foods*, 2021 WL 5331444 (company owner's travel to

15   California was viewed as company's "intentional conduct").  Thus, the Court concludes that FPG

16   committed several intentional acts through Kahn.

17        Accordingly, Wang has satisfied the first prong of the *Calder* purposeful direction test as

18   to both Kahn and FPG.

19             **ii.   Kahn and FPG's intentional acts were expressly aimed at California.**

20        As to the "express aiming" requirement, "[a]ctions may be directed at the forum state even

21   if they occurred elsewhere.  However, 'random, fortuitous, or attenuated contacts' are insufficient

22   to create the requisite connection with the forum." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136,

23   1142 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Burger King v. Rudzewicz*, 471

24   U.S. 462, 475 (1985)).  "Communications with an individual located in California are activities

25   'directed' at California." *Du Pont v. Prudential Ins. Co.*, No. CV 18-9638-DMG (ASx), 2019 WL

26   4417494, at *7 (C.D. Cal. May 29, 2019).

27                                                            31

28   ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
     INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
     JURISDICTION AND VENUE

United States District Court
Northern District of California

1    Wang alleges that Kahn intentionally communicated with California residents located in

2    California, such as Longstaff or Xiong, and with California, through the California Franchise Tax

3    Board.  In both circumstances, Kahn directed communications at California, the forum state,

4    satisfying the "express aiming" prong.  *See Brainerd*, 873 F.3d at 1259 (communications with the

5    state university were communications directed to the state); *Du Pont*, 2019 WL 4417494, at *7

6    (relevant communications by nonresident defendant to individual located in forum state satisfied

7    express aiming requirement); *see also Walden*, 571 U.S. at 285 ("a defendant's contacts with the

8    forum State may be intertwined with his transactions or interactions with . . . other parties.").

9    Kahn's visit to California to meet with Longstaff, about the RDS agreement, is similarly

10   intentional conduct "expressly aimed at California."  *Impossible Foods*, 2021 WL 5331444, at *6.

11   As such, the Court concludes that all of Kahn's intentional acts discussed above, including the

12   filing of tax returns with the California Franchise Tax Board, were directed at California.

13   Kahn's actions can be imputed to FPG.  *See, e.g.*, *id.* (company owner's intentional

14   conduct aimed at California imputed to company's contacts with California).  Because all of

15   Kahn's intentional acts discussed above were directed to California, the Court concludes that

16   FPG's intentional acts were also directed at California.

17   Accordingly, Wang has satisfied the second prong of the *Calder* purposeful direction test

18   as to both Kahn and FPG.

19   **iii.  There is sufficient harm suffered in California.**

20   Lastly, Wang must show that "a jurisdictionally sufficient amount of harm is suffered in

21   the forum state."  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,

22   1210 (9th Cir. 2006) (en banc).  Wang alleges that the forged RDS agreement and PDRF

23   agreement have caused Kahn Respondents to file inaccurate tax returns that will subject Wang to

24   "over $400,000 in additional tax liability, as well as interest and possible penalties" imposed in

25   part by the state of California.  Pet. at 6.  In addition, Wang alleges Kahn Respondents obtained

26   Wang's $136,000 tax refund from the California Franchise Tax Board directly and

27

28
Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
JURISDICTION AND VENUE

United States District Court
Northern District of California

1   "misappropriated" this refund.  Pet. at 3.

2        Kahn Respondents do not address this prong of the *Calder* test in the instant motion.

3   Moreover, by failing to file a reply in support of the instant motion, Kahn Respondents fail to

4   respond to Wang's arguments.

5        Assuming Wang's allegations are true, and Kahn Respondents do not present contrary

6   evidence, these allegations are sufficient to show that Wang suffered harm in California.  As such,

7   Wang has sufficiently alleged all three elements of *Calder*'s purposeful direction test as to both

8   Kahn and FPG.

9        Thus, the Court finds that Kahn and FPG purposefully directed their activities at

10  California.

### b.  The Claim Arises Out of California-Related Activities.

12       The Court next assesses whether Wang's claim "arise[s] out of or result[s] from" Kahn

13  Respondents' "forum-related activities." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

14  1019 (9th Cir. 2002). "In the Supreme Court's phrasing, a plaintiff's claims must 'arise out of or

15  relate to the defendant's contacts with the forum.'" *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972,

16  983 (9th Cir. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

17  1026 (2021).  Kahn Respondents argue that "[t]he source of all the alleged activities involving

18  Kahn Respondents took place in Florida" and thus the required nexus between Wang's claims and

19  Respondents' contacts with California is missing. Mot. at 21.

20       The Court disagrees.  Wang's Petition to enjoin the pending arbitration arises from Kahn's

21  and FPG's "forum-related activities."  As discussed above, Wang alleges that: (1) Kahn

22  communicated with two California residents in California, Longstaff (Wang's former attorney)

23  and Xiong (Wang's brother-in-law and authorized agent); (2) these communications related to the

24  alleged scheme to defraud Wang of his money from the sale of two California properties and

25  associated tax refund from the California Franchise Tax Board through the PDRF agreement and

26  the RDS agreement; (3) as part of these communications, "Kahn solicited from Longstaff power of

27                                                33

1    attorney documents purporting to authorize Longstaff to sign the RDS [agreement] on [Wang's]

2    behalf"; (4) Longstaff forged the power of attorney documents in California using California

3    notaries; (5) Kahn Respondents then "filed fraudulent tax returns for Wang with the California

4    Franchise Tax Board, and directed that the California Franchise Tax Board" send the tax refund

5    directly to Kahn Respondents; (6) California Franchise Tax Board sent Wang's $136,000 state tax

6    refund to Kahn Respondents; and (7) Kahn physically visited California to carry out the terms of

7    the RDS agreement and PDRF agreement.  Pet. at 2-3.

8         Kahn's California-contacts are imputed to FPG.  *See, e.g.*, *Ziegler*, 64 F.3d at 475

9    (executive vice-president's forum contacts imputed to corporation).  In the absence of the alleged

10   forged contracts, and ensuing arbitration, Wang would not have filed the Petition in this Court.

11        As such, Wang has shown that Kahn and FPG purposefully directed their activities toward

12   California and that Wang's claim arises from these California-related activities.  The burden now

13   shifts to Kahn Respondents "to 'present a compelling case' that the exercise of jurisdiction would

14   not be reasonable.  *Schwarzenegger*, 374 F.3d at 802 (quotation omitted).  The Court considers the

15   Kahn Respondents' arguments below.

16                    **c.   The Exercise of Personal Jurisdiction Would Be Reasonable.**

17        Once the plaintiff has satisfied the first two prongs, "the defendant must come forward

18   with a compelling case that the exercise of jurisdiction would not be reasonable." *Boschetto v.*

19   *Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  In determining reasonableness, the Court looks to

20   seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's

21   affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with

22   the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

23   (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

24   plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

25   *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

26        Kahn Respondents fail to present a compelling case and make only unpersuasive cursory

                                                      34

27

United States District Court
Northern District of California

1   arguments for these factors.  *See* Mot. at 22-24.  The Court briefly addresses each factor below.

2   **i.  Purposeful Injection Weighs in Favor of Jurisdiction.**

3   The first factor weighs in favor of Wang.  "The purposeful interjection factor in the

4   reasonableness analysis is 'analogous to the purposeful direction' factor."  *Ayla*, 11 F.4th at 984.

5   As discussed above, Kahn and FPG purposefully directed their activities toward California.  *See* p.

6   27-33, *supra*.  Although they bear the burden, Kahn Respondents fail to address this factor in the

7   instant motion.  Having failed to file a reply in support of the instant motion, Kahn Respondents

8   also fail to rebut arguments in Wang's opposition brief that this factor weighs in favor of

9   jurisdiction.  As such, this factor weighs in favor of jurisdiction.

10  **ii.  Burden on Kahn Respondents Weighs Against Jurisdiction.**

11  The second factor weighs slightly in favor of Kahn Respondents.  Kahn Respondents argue

12  they are residents of Florida "who did not conduct any business in or involving California related

13  to this case."  Mot. at 23.  However, the associated burdens "do not outweigh the contacts on

14  which" Wang's claim is premised.  *Ayla*, 11 F.4th at 984 ("When minimum contacts have been

15  established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will

16  justify even the serious burdens placed on the alien defendant." (citation omitted)).  Accordingly,

17  this factor weighs slightly against jurisdiction.

18  **iii. Kahn Respondents Fail to Show there is a Conflict with the Sovereignty of
        California and Florida**.

19
20  The third factor is neutral.  Kahn Respondents fail to show there is any conflict with the

21  sovereignty of the states, and this factor is generally implicated only when the defendant is a

    foreign national.  *See, e.g.*, *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)
22
    (explaining that "litigation against an alien defendant creates a higher jurisdictional barrier than
23
    litigation against a citizen from a sister state because important sovereignty concerns exist.")
24
    Kahn Respondents argue that there is a conflict "because doing so would permit any person who
25
    runs a business to drag any defendant into California for the sole purposes of litigation."
26

27                                                    35

28

1    However, this assertion is not supported by relevant case law or the facts.

2         Here, Wang alleges that: (1) Kahn communicated with two California residents in

3    California, Longstaff (Wang's former attorney) and Xiong (Wang's brother-in-law and authorized

4    agent); (2) these communications related to the alleged scheme to defraud Wang of his money

5    from the sale of two California properties and associated tax refund from the California Franchise

6    Tax Board through the PDRF agreement and the RDS agreement; (3) as part of these

7    communications, "Kahn solicited from Longstaff power of attorney documents purporting to

8    authorize Longstaff to sign the RDS [agreement] on [Wang's] behalf"; (4) Longstaff forged the

9    power of attorney documents in California using California notaries; (5) Kahn Respondents then

10   "filed fraudulent tax returns for Wang with the California Franchise Tax Board, and directed that

11   the California Franchise Tax Board" send the tax refund directly to Kahn Respondents; (6) the

12   California Franchise Tax Board sent Wang's $136,000 state tax refund to Kahn Respondents; and

13   (7) Kahn physically visited California to carry out the terms of the RDS agreement and PDRF

14   agreement.  Pet. at 2-3.

15        Kahn Respondents fail to show in the instant motion how there is any conflict between the

16   sovereignty of California and Florida on these facts.  Having failed to file a reply, Kahn

17   Respondents also fail respond to arguments in Wang's opposition brief that this factor is not

18   relevant here, Opp'n at 17.

19        Accordingly, the Court concludes this factor is neutral.

20              **iv.  California's Interests Weigh in Favor of Jurisdiction.**

21        The fourth factor weighs in favor of jurisdiction.  Wang argues that "California has a

22   strong interest in adjudicating this dispute because Respondents defrauded the California

23   Franchise Tax Board" and because the state "has a strong interest in protecting California property

24   owners, including those who sell their property and pay taxes to the state."  Opp'n at 16.  Kahn

25   Respondents fail to present any argument on this factor in the instant motion and failed to file a

26   reply.  The Court agrees with Wang.  California has "an interest in torts allegedly committed

27                                              36

28

*United States District Court*
*Northern District of California*

within its borders (namely, preventing them)." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Group*, 905 F.3d 597, 608 (9th Cir. 2018).  Thus, this factor favors jurisdiction.

### v. The Most Efficient Judicial Resolution of the Controversy is Likely Neutral.

The fifth factor is likely neutral.  In considering this factor, courts look at "the location of the evidence and witnesses." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).  However, nearly twenty years ago the Ninth Circuit explained that "this factor is 'no longer weighed heavily given the modern advances in communication and transportation.'" *Id.* (quoting *Panavision International v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir.1998)).

Kahn Respondents argue that the "most efficient and convenient resolution of this suit would occur in Florida because the great majority of documents, evidence and witnesses are located there."  Mot. at 24.  Accordingly, "Kahn Respondents would be burdened by having to conduct discovery and litigate cross country away from the evidence."  *Id.*  Wang points out that "[w]itnesses are located both in California and Florida" and disputes whether "the great majority of documents, evidence and witnesses" are located in Florida.  Opp'n at 16-17.

The salient issue here is whether Wang entered into a contract with Kahn Respondents. The relevant evidence includes the potentially forged documents notarized in Santa Clara County, California, and the potential testimony of at least Longstaff and Xiong, both of whom are California residents.  In addition, the testimony of the relevant California based notaries may also be relevant.  As such, some significant portion of the evidence and some witnesses are located in California.  The Court concludes that this factor is neutral.

### vi. The Convenience and Effectiveness of Relief Available to Wang Weighs in Favor of Jurisdiction.

This factor weighs slightly in favor of jurisdiction.  If California is not the proper forum, Wang would be forced to litigate in Florida, a state to which he has no contacts.  Wang argues that he has purchased real estate, has family, hired Longstaff, and has filed tax returns in California.

37

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE

United States District Court
Northern District of California

United States District Court
Northern District of California

Opp'n at 17.  Thus, although Wang does not reside in California, California has some import to Wang.  Kahn Respondents do not address this factor in the instant motion and failed to file a reply. The Court finds this factor weighs slightly in favor of jurisdiction.  *Wixen Music UK Ltd. v. Transparence Entm't Group Inc.*, No. 2:21-cv-02663-ODW (MRWx), 2021 WL 6065690, at *5 (C.D. Cal. Dec. 22, 2021) (finding this factor weighed "somewhat in favor of" jurisdiction even though plaintiff was a non-resident plaintiff suing a non-resident defendant).

### vii. Existence of an Alternate Forum is Not Relevant Here.

The existence of an alternate forum is only relevant when defendants presented a compelling case that the current forum is unreasonable.  *See Ayla*, 11 F.4th at 984-85 ("whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." (cleaned up)).  Here, Kahn Respondents have "not made that showing."  *Id.*

On balance, the Court concludes that these factors weigh in favor of jurisdiction.  Thus, exercising personal jurisdiction over Kahn Respondents would comport with fair play and substantial justice.

For the reasons above, the Court concludes that exercising personal jurisdiction over Kahn Respondents would be reasonable and thus satisfies the demands of due process.  Accordingly, the Court DENIES Kahn Respondents' motion to vacate preliminary injunction and dismiss under Federal Rule of Civil Procedure 12(b)(2).  The Court next considers whether venue is proper in the Northern District of California.

### E.  Venue is Proper

Kahn Respondents move to dismiss the action for improper venue under Federal Rule of Civil Procedure 12(b)(3).  Because Wang brought the Petition under the New York Convention, the Court looks to both the New York Convention venue statute and the relevant portions of the general venue statute.  *See KVEN OJSC v. Thunderbolt Enterprises, Ltd.*, No. 15-cv-02304-LB, 2015 WL 9583351, at *2 (N.D. Cal. Dec. 10, 2015) (looking to New York Convention venue provision and general venue provision).  Under the New York Convention, venue is proper in any

38

court where "the controversy between the parties could be brought."  9 U.S.C. § 204.  The general

venue statute provides in relevant part that venue is proper in any judicial district where "a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  "Venue may be

proper in multiple districts so long as a 'substantial part' of the underlying events took place in

each of those districts."  *Kremen v. Cohen*, No. 5:11–cv–05411–LHK, 2012 WL 44999, at *9

(N.D. Cal. Jan. 7, 2012); *see also Neff v. Towbin Dodge LLC*, No. 2:20-cv-00261-JAM-DMC,

2020 WL 6802188, at *2 (E.D. Cal. Nov. 19, 2020) (collecting cases).  Moreover, the venue

statute "does not require that a majority of the events occur in the district or that events in the

district predominate over events in other districts."  *Kolay Flooring Int'l, LLC v. De La Fuente*,

Case No. 8:18-cv-00108-JLS-JDE, 2019 WL 4264378, *5 (C.D. Cal. May 1, 2019) (citation and

internal quotation marks omitted).  "An action filed in a district that satisfies 28 U.S.C. § 1391

may not be dismissed under Federal Rule of Civil Procedure 12(b)(3)."  *Atl. Marine Const. Co. v.

U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55-56 (2013).

Wang bears the burden to show venue is proper.  *See Piedmont Label Co.*, 598 F.2d at 496

("Plaintiff had the burden of showing that venue was properly laid in the Northern District of

California.").  Wang argues that venue is proper because a substantial part of the events giving rise

to the Petition to enjoin arbitration, ECF No. 1, occurred in this judicial district.  Opp'n at 19-20.

Specifically, the two properties Wang sold, and for which he sought California and federal tax

refunds, were in Palo Alto, California, which is in this judicial district.  Pet. at 4.  The disputed

RDS agreement and PDRF agreement relate to the sale of the two Palo Alto, California properties.

*Id.* at 4-5.  These agreements were also allegedly fraudulent executed in California and allegedly

fraudulently notarized by Santa Clara, California notaries based in this judicial district.  Opp'n at

19-20.  These disputed agreements also relate to Kahn Respondents' filing of tax returns with the

state of California on behalf of Wang.  *Id.*

Conversely, the instant motion fails to present *any* argument as why venue is improper.

39

United States District Court
Northern District of California

1    Rather, Kahn Respondents' limited arguments are directed more to transferring the action pursuant

2    to 28 U.S.C. § 1404.  Mot. at 24-26.  The Court will address those arguments in the following

3    section.  In addition, having failed to file a reply, Kahn Respondents fail to rebut any arguments in

4    Wang's opposition brief.

5           The Court agrees with Wang.  The underlying action seeks to enjoin Kahn Respondents

6    from arbitration based on agreements Wang alleges he did not sign.  *See generally* ECF No. 1.

7    Wang's arguments that a substantial portion of the underlying events relating to the PDRF and

8    RDS agreements took place in this district are well taken.  Kahn Respondents have offered *no*

9    arguments in rebuttal.

10          The Court thus concludes that venue in this district is proper, and Kahn Respondents'

11   motion to vacate preliminary injunction and dismiss under Federal Rule of Civil Procedure

12   12(b)(3) is DENIED.

13        **F.  Kahn Respondents Fail to Show Transfer Is Warranted**

14          In the alternative, Kahn Respondents seek to transfer the action to the United States

15   District Court for the Southern District of Florida.  Mot. at 24-27.  Kahn Respondents, as the

16   moving party, bear the burden to show transfer is warranted.  *See Jones*, 211 F.3d at 499 (noting

17   the nonmoving party failed to meet its burden of showing the alternate forum "was the more

18   appropriate forum for the action").  The Court concludes that Kahn Respondents fail to meet this

19   "heavy burden of proof."  *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal.

20   1988) (noting that the nonmoving party bear a "heavy burden of proof to justify the necessity of

21   the transfer.")

22          Kahn Respondents must make two showings to the Court in order to justify transfer.  First,

23   the transferee forum must be one in which the case "might have been brought."  *Hoffman v. Blaski*,

24   363 U.S. 335, 344 (1960).  "In determining whether an action 'might have been brought' in a

25   district, the court looks to whether the action initially could have been commenced in that district."

26   *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

27                                                        40

28   Case No. 20-CV-08033-LHK
     ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
     INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
     JURISDICTION AND VENUE

United States District Court
Northern District of California

1    Second, Kahn Respondents must persuade the Court that considerations of "convenience

2  of parties and witnesses" and "the interest of justice" weigh in favor of transfer. *Earth Island Inst.*

3  *v. Quinn*, 56 F. Supp. 3d 1110, 1117 (N.D. Cal. 2014). The Ninth Circuit has identified a number

4  of specific but non-exhaustive factors which "the court may consider" in analyzing those

5  overarching statutory considerations. *See Jones*, 211 F.3d at 498-99 (listing 11 factors the court

6  may consider).

7    Kahn Respondents fail at the second step. Even if the action could have been brought in

8  the Southern District of Florida, Kahn Respondents fail to show the "convenience" factors support

9  transfer, as required under § 1404(a). In fact, Kahn Respondents' *only* argument for transfer is

10  that plaintiff's choice of forum should be "given little weight." Mot. at 26. However, this does

11  not show why the convenience factors *support* transfer because giving *any* weight to a plaintiffs'

12  choice of forum cuts against transfer. More importantly, Kahn Respondents must still convince

13  the Court that other factors weigh in favor of transfer.

14    Kahn Respondents present no arguments in the instant motion regarding the factors the

15  Court may consider. Conversely, Wang argues in opposition to the instant motion that several

16  factors cut against transfer. Opp'n at 21-22. For example, Wang argues that the convenience of

17  the parties and witnesses does not favor transfer because transferring the action to Florida "would

18  merely shift the inconvenience rather than eliminate it" because relevant witnesses, such as

19  Longstaff and Xiong are both in California. Opp'n at 21. Wang also points out that the PDRF and

20  RDS agreements were negotiated and executed by Longstaff in California, and that the relevant

21  evidence is located in both California and Florida. *Id.* Having failed to file a reply, Kahn

22  Respondents fail to rebut any of Wang's arguments.

23    Because Kahn Respondents have made *no* arguments showing that any factor weighs in

24  favor of transfer in the instant motion and failed file a reply, the Court concludes Kahn

25  Respondents have failed to make the required showing under § 1404(a). *See Duke v. Flying J,*

26  *Inc.*, 178 F. Supp. 3d 918, 920-21 (N.D. Cal. 2016) (denying motion to transfer under § 1404(a)

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY
INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER
JURISDICTION AND VENUE

when the sole argument presented to the court was that "it would be an inconvenience for [the party] to travel approx. 3000 miles to appear in California court" and "it would also be an inconvenience for possible witnesses to travel to CA." (cleaned up)).

Accordingly, the Court DENIES Kahn Respondents' the motion to transfer.

## IV. CONCLUSION

For the foregoing reasons the Court DENIES Kahn Respondents' motion to vacate the order granting a preliminary injunction and to dismiss for lack of personal jurisdiction, subject matter jurisdiction, and venue.

**IT IS SO ORDERED.**

Dated: January 4, 2022

_Lucy H. Koh_
_____
LUCY H. KOH
United States Circuit Judge[4]

---

[4] Sitting by designation on the United States District Court for the Northern District of California.

Case No. 20-CV-08033-LHK
ORDER DENYING DEFENDANT'S MOTION TO VACATE THE ORDER GRANTING A PRELIMINARY INJUNCTION AND TO DISMISS FOR LACK OF PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE